UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 22-1123

_____

_____

UNITED STATES,
Appellee,

v.

STEPHEN DeBERARDINIS,
Defendant-Appellant.

_____

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JOINT APPENDIX

_____

Torey Cummings, Asst. U.S. Attorney
Donald Lockhart, Asst. U.S. Attorney
Moakley U.S. Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Zainabu Rumala
Assistant Federal Public Defender
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210

TABLE OF CONTENTS

Docket Sheet ....................................................................................................1

Indictment (D.E. 1) .........................................................................................12

Transcript of Initial Appearance
    (Sept. 29, 2021) ......................................................................................21

Transcript of Status Conference
    (Oct. 4, 2021) .........................................................................................37

Transcript of Detention Hearing
    (Oct. 8, 2021) .........................................................................................49

Transcript of Detention Hearing
    (Nov. 23, 2021) ......................................................................................83

Transcript of Detention Hearing
    (Dec. 22, 2021) ......................................................................................94

Transcript of Hearing Before Burroughs, J.
    (Jan. 27, 2022) ......................................................................................110

Defense Exhibit
    (Email correspondence in West Roxbury Docket #1906CR660 ) .............140

Defense Exhibit
    (West Roxbury Docket #1706CR556) ......................................................143

Defense Exhibit
(West Roxbury Docket #1906CR660) ......................................................148

Defense Exhibit
(Letter from Lindsey Walsh, D.E. 15) ........................................................152

Defense Exhibit
(Physician Letter, D.E. 17) .......................................................................154

Defense Exhibit
(Letter of Support from David Langill, D.E. 17) .........................................155

Defense Exhibit
(Letter of Support from Keith Fowler, D.E. 17) ..........................................156

Defense Exhibit
(Physician Letter, D.E. 24) .......................................................................157

Defense Exhibit
(Physician Letter, D.E. 28) .......................................................................158

Defense Exhibit
(Email Correspondence with Plymouth County Corr. Facility, D.E. 28) ..159

Defense Exhibit
(Letter from Stephen DeBerardinis, D.E. 33) .............................................162

Defense Exhibit
(Letter from Lindsey Walsh, D.E. 44) ........................................................165

Defense Exhibit
(West Roxbury Docket #1906CR001273, D.E. 44) ...................................168

Government Exhibit 1
    (Facebook Excerpt) ..................................................................................173

Government Exhibit 2
    (Facebook Excerpt, D.E. 49) ...................................................................175

Government Exhibit 3
    (Weapons Photo, D.E. 49) .......................................................................177

Government Exhibit 4
    (List of Weapons, D.E. 49) ......................................................................178

Government Exhibit 5
    (Suffolk County Restraining Order Hearing Transcript, D.E. 49) .............183

Government Exhibit 6
    (Photos of Stephen DeBerardinis, D.E. 49) ..............................................230

Government Exhibit 8
    (Universal Hub Article, D.E. 49) .............................................................232

Appeal of Magistrate Judge Detention Order (D.E. 32)........................................235

Notice of Appeal (D.E. 52).................................................................................237

APPEAL,CASREF,CUSTODY,VICTIM

# United States District Court
## District of Massachusetts (Boston)
## CRIMINAL DOCKET FOR CASE #: 1:21-cr-10292-ADB-1

Case title: USA v. DeBeradinis                              Date Filed: 09/28/2021

Assigned to: Judge Allison D. Burroughs
Referred to: Magistrate Judge Marianne B.
Bowler

Appeals court case number: 22-1123 USCA
- First Circut

**Defendant (1)**

**Stephen M. DeBerardinis**                 represented by   **Jessica P. Thrall**
                                                            Federal Public Defender Office
                                                            51 Sleeper Street, 5th Flr.
                                                            Boston, MA 02110
                                                            (617) 223-8061
                                                            Email: Jessica_Thrall@fd.org
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Public Defender or*
                                                            *Community Defender Appointment*

**Pending Counts**                                          **Disposition**

18 U.S.C. § 875(c)-TRANSMITTING IN
INTERSTATE AND FOREIGN
COMMERCE A THREAT TO INJURE
THE PERSON OF ANOTHER
(1)

18 U.S.C. § 1512(b)(3)- TAMPERING
WITH A WITNESS AND VICTIM BY
INTIMIDATION, THREATS, AND
CORRUPT PERSUASION
(2)

18 U.S.C. § 1512(d)(2)- TAMPERING
WITH A WITNESS AND VICTIM BY
HARRASMENT
(3)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                    **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                           **Disposition**

None

---

**Plaintiff**

**USA**                                    represented by    **Scott Garland**
                                                            United States Attorney's Office
                                                            John J. Moakley U.S. Courthouse
                                                            Suite 9200
                                                            Boston, MA 02210
                                                            617-748-3290
                                                            Fax: 617-748-3664
                                                            Email: scott.garland@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Assistant US Attorney*

                                                            **Torey B. Cummings**
                                                            United States Attorney's Office MA
                                                            1 Courthouse Way
                                                            Suite 9200
                                                            Boston, MA 02210
                                                            (617) 748-3281
                                                            Email: torey.cummings@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Assistant US Attorney*

                                                            **Nadine Pellegrini**
                                                            United States Attorney's Office
                                                            1 Courthouse Way
                                                            Suite 9200
                                                            Boston, MA 02210
                                                            617-748-3261
                                                            Fax: 617-748-3951
                                                            Email: nadine.pellegrini@usdoj.gov
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2021 | 1 | SEALED INDICTMENT as to Stephen M. DeBerardinis (1) count(s) 1, 2, 3. (Attachments: # 1 JS45)(Montes, Mariliz) (Main Document 1 replaced on 9/28/2021) (Montes, Mariliz). (Entered: 09/28/2021) |

| | | |
|---|---|---|
| 09/28/2021 | 2 | MOTION to Seal as to Stephen M. DeBerardinis by USA. (Montes, Mariliz) (Entered: 09/28/2021) |
| 09/28/2021 | 3 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 2 Motion to Seal as to Stephen M. DeBerardinis (1) (Montes, Mariliz) (Entered: 09/28/2021) |
| 09/28/2021 | 5 | ELECTRONIC NOTICE of Case Assignment as to Stephen M. DeBerardinis; Judge Allison D. Burroughs assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Marianne B. Bowler. (Danieli, Chris) (Entered: 09/28/2021) |
| 09/28/2021 | 6 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. Order Referring Case to Magistrate Judge Marianne B. Bowler Reason for referral: full pretrial proceedings as to Stephen M. DeBerardinis (Montes, Mariliz) (Entered: 09/28/2021) |
| 09/29/2021 | | Case unsealed as to Stephen M. DeBerardinis (Belpedio, Lisa) (Entered: 09/29/2021) |
| 09/29/2021 | | Attorney update in case as to Stephen M. DeBerardinis. FPD Attorney Jessica Thrall added. (Belpedio, Lisa) (Entered: 09/29/2021) |
| 09/29/2021 | | Arrest of Stephen M. DeBerardinis (Belpedio, Lisa) (Entered: 09/29/2021) |
| 09/29/2021 | 7 | ELECTRONIC NOTICE OF HEARING as to Stephen M. DeBerardinis<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Initial Appearance set for 9/29/2021 12:30 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. (Belpedio, Lisa) (Entered: 09/29/2021) |
| 09/29/2021 | 8 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Initial Appearance as to Stephen M. DeBerardinis held on 9/29/2021. Case called, counsel, PO Dailey and defendant appear by video. After colloquy, the court finds that the defendant knowingly and voluntarily waived his right to be physically present in the courtroom and hearing proceeds by video. Defendant notified of rights, charges and maximum penalties. FPD Jessica Thrall is appointed provisionally pending a financial affidavit being filed, government moves for detention and request a 10 day continuance, Arraignment/Detention Hearing set for 10/4/2021 03:00 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. Defendant remanded. On the record, court instructs parties regarding the provisions of the Due Process Protections Act. Written order to issue.(Attorneys present: Cummings, Garland, Thrall. )Court Reporter Name and Contact or digital recording information: Lee Marzilli at leemarz@aol.com.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. |

| | | |
|---|---|---|
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |
| | | For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. |
| | | (Belpedio, Lisa) (Entered: 09/29/2021) |
| 09/30/2021 | 9 | Arrest Warrant Returned Executed on 9/29/2021 as to Stephen M. DeBerardinis. (McDonagh, Christina) (Entered: 09/30/2021) |
| 10/04/2021 | 10 | ELECTRONIC NOTICE OF RESCHEDULING as to Stephen M. DeBerardinis This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. Status Conference/Arraignment set for 10/4/2021 12:30 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. (Belpedio, Lisa) (Entered: 10/04/2021) |
| 10/04/2021 | 11 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Status Conference as to Stephen M. DeBerardinis held on 10/4/2021. Case called, counsel PO Marcy & defendant appear by video. After colloquy, the court finds that the defendant knowingly and voluntarily waived his right to be physically present in the courtroom, and hearing proceeds by video. Government reports on status of state cases and Arraignment/Detention Hearing set for 10/12/2021 02:00 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler.(Attorneys present: Cummings, Garland, Thrall. )Court Reporter Name and Contact or digital recording information: Linda Walsh at lwalshsteno@gmail.com. This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. (Belpedio, Lisa) (Entered: 10/04/2021) |
| 10/06/2021 | 12 | ELECTRONIC NOTICE OF RESCHEDULING as to Stephen M. DeBerardinis |

004

| | | |
|---|---|---|
| | | This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>By agreement of counsel, Arraignment/Detention Hearing set for 10/8/2021 11:00 AM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. (Belpedio, Lisa) (Entered: 10/06/2021) |
| 10/08/2021 | 13 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Arraignment/Detention Hearing as to Stephen M. DeBerardinis (1) Count 1,2,3 held on 10/8/2021. Case called, counsel, PO Dailey & defendant appear by video. After colloquy, the court finds that the defendant knowingly and voluntarily waives his right to be physically present in the courtroom and hearing proceeds by video. Government proceeds by proffer, government exhibits 1-5 are admitted and made part of the record, defendant's exhibits A, B & C are admitted and made part of the record, Counsel argue detention, matter taken under advisement. Defendant notified of charges, maximum penalties and waives the reading of the indictment. Not Guilty Plea entered by Stephen M. DeBerardinis on counts 1-3. Government estimates calling 10 witnesses and trial lasting no more than one week. Status Conference set for 11/22/2021 02:45 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. COUNSEL ARE DIRECTED TO APPEAR BY PHONE by calling 888-675-2535 approximately five minutes prior to the conference, using Access Code 6641794. If, for some reason, the call is disconnected, dial back in. NOTE that yours may not be the first case called, but please remain on the line until it is. Defendant agrees to exclude the time through that date in the interest of justice and government will file an assented to motion. On the record, court instructs parties regarding the provisions of the Due Process Protections Act. Written order to issue. (Attorneys present: Cummings, Garland, Thrall. )Court Reporter Name and Contact or digital recording information: Kathleen Silva at kathysilva@verizon.net. (Belpedio, Lisa) (Entered: 10/08/2021) |
| 10/08/2021 | 14 | Magistrate Judge Marianne B. Bowler: Order Pursuant to Federal Rule of Criminal Procedure 5 entered as to Stephen M. DeBerardinis. (Belpedio, Lisa) (Entered: 10/14/2021) |
| 11/08/2021 | 15 | Letter (non-motion) from Lindsey Walsh and Family as to Stephen M. DeBerardinis (McDonagh, Christina) (Entered: 11/08/2021) |
| 11/12/2021 | 16 | Assented to MOTION to Exclude *Time Under the Speedy Trial Act* as to Stephen M. DeBerardinis by USA. (Attachments: # 1 Text of Proposed Order)(Cummings, Torey) (Entered: 11/12/2021) |
| 11/12/2021 | 17 | MOTION for Release from Custody as to Stephen M. DeBerardinis. (Attachments: # 1 Exhibit Doctor Letter, # 2 Exhibit Letter of Support 1, # 3 Exhibit Letter of Support 2) (Thrall, Jessica) (Entered: 11/12/2021) |
| 11/17/2021 | 18 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 16 Assented to MOTION to Exclude Time Under the Speedy Trial Act as to Stephen M. DeBerardinis (1) (Belpedio, Lisa) (Entered: 11/17/2021) |

| 11/17/2021 | 19 | Magistrate Judge Marianne B. Bowler: ORDER ON EXCLUDABLE DELAY as to Stephen M. DeBerardinis. Time excluded from September 29, 2021 until November 22, 2021. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. (Belpedio, Lisa) (Entered: 11/17/2021) |
|---|---|---|
| 11/17/2021 | 20 | Joint MOTION to Continue *Status Conference* to November 23, 2021 as to Stephen M. DeBerardinis by USA. (Cummings, Torey) (Entered: 11/17/2021) |
| 11/18/2021 | 21 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 20 Motion to Continue as to Stephen M. DeBerardinis (1). The parties are directed to contact Deputy Clerk Lisa Belpedio regarding the time of the hearing. (Bowler, Marianne) (Entered: 11/18/2021) |
| 11/19/2021 | 22 | ELECTRONIC NOTICE OF HEARING as to Stephen M. DeBerardinis  This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.  Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.  For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.  Status Conference set for 11/23/2021 01:30 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. (Belpedio, Lisa) (Entered: 11/19/2021) |
| 11/22/2021 | 23 | STATUS REPORT *Joint* by USA as to Stephen M. DeBerardinis (Cummings, Torey) (Entered: 11/22/2021) |
| 11/22/2021 | 24 | APPENDIX/EXHIBIT by Stephen M. DeBerardinis 17 MOTION for Release from Custody filed by Stephen M. DeBerardinis (Thrall, Jessica) (Entered: 11/22/2021) |
| 11/23/2021 | 25 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Status Conference as to Stephen M. DeBerardinis held on 11/23/2021. Case called, counsel, PO Dailey & defendant appear by video. Defendant waives covid colloquy and agrees to appear by video. Counsel request additional time, further Status Conference set for 1/26/2022 03:00 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. COUNSEL ARE DIRECTED TO APPEAR BY PHONE by calling 888-675-2535 approximately five minutes prior to the conference, using Access Code 6641794. If, for some reason, the call is disconnected, dial back in. NOTE that yours may not be the first case called, but please remain on the line until it is. Defense counsel agrees to exclude time through that date in the interest of justice and government will file an assented motion to exclude. Motion Hearing as to Stephen M. DeBerardinis held on 11/23/2021 re 17 MOTION for Release from Custody filed by Stephen M. DeBerardinis. Defense Exhibit A admitted in support of hearing, counsel argue. Matter taken under advisement pending additional information about medication documentation. Defendant remanded back to the US Marshals. (Attorneys present: Garland, Cummings, Thrall. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio-recordings . For a transcript of this proceeding, contact Katelyn Coppola by email at mad_transcripts@mad.uscourts.gov. (Belpedio, Lisa) (Entered: 11/28/2021) |

| 11/24/2021 | 26 | Transcript of Detention Hearing as to Stephen M. DeBerardinis held on October 8, 2021, before Magistrate Judge Marianne B. Bowler. Court Reporter Name and Contact Information: Kathleen Silva at kathysilva@verizon.net The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 12/15/2021. Redacted Transcript Deadline set for 12/27/2021. Release of Transcript Restriction set for 2/22/2022. (Coppola, Katelyn) (Entered: 11/29/2021) |
|---|---|---|
| 11/24/2021 | 27 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 11/29/2021) |
| 12/01/2021 | 28 | Second MOTION for Release from Custody as to Stephen M. DeBerardinis. (Attachments: # 1 Exhibit Doctor Letter, # 2 Exhibit PCCF Medication)(Thrall, Jessica) (Entered: 12/01/2021) |
| 12/15/2021 | 29 | RESPONSE to Motion by USA as to Stephen M. DeBerardinis re 28 Second MOTION for Release from Custody , 17 MOTION for Release from Custody (Cummings, Torey) (Entered: 12/15/2021) |
| 12/21/2021 | 30 | ELECTRONIC NOTICE OF HEARING ON MOTION as to Stephen M. DeBerardinis 28 Second MOTION for Release from Custody : This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. Motion Hearing set for 12/22/2021 02:30 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. (Belpedio, Lisa) (Entered: 12/21/2021) |
| 12/22/2021 | 31 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Motion Hearing as to Stephen M. DeBerardinis held on 12/22/2021 re 28 Second MOTION for Release from Custody filed by Stephen M. DeBerardinis. Case called, counsel, PO Dailey & defendant appear by video. After colloquy, the court finds that defendant knowingly and voluntarily waives his right to be physically present in the courtroom and hearing proceeds by video. Counsel argue motion, motion is denied for reasons and stated on the record in open court, and defendant is ordered detained, electronic order to issue, defendant remanded to the custody of the US Marshals. (Attorneys present: Garland, Thrall. )Court Reporter Name and Contact or digital recording information: Linda Walsh at lwalshsteno@gmail.com. (Belpedio, Lisa) (Entered: 12/23/2021) |
| 12/31/2021 | 32 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Stephen M. DeBerardinis (Thrall, Jessica) (Entered: 12/31/2021) |
| 01/03/2022 | 33 | Letter (non-motion) regarding Request for Release, Consideration as to Stephen M. DeBerardinis. (McManus, Caetlin) (Entered: 01/03/2022) |

| 01/06/2022 | 34 | Transcript of Motion Hearing as to Stephen M. DeBerardinis held on December 22, 2021, before Magistrate Judge Marianne B. Bowler. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 1/27/2022. Redacted Transcript Deadline set for 2/7/2022. Release of Transcript Restriction set for 4/6/2022. (Coppola, Katelyn) (Entered: 01/10/2022) |
| --- | --- | --- |
| 01/06/2022 | 35 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 01/10/2022) |
| 01/11/2022 | 36 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered as to Stephen M. DeBerardinis. Hearing on Appeal of Magistrate Judge's Detention Order set for 1/27/2022 10:00 AM in Remote Proceeding : Boston before Judge Allison D. Burroughs. Defendant to file any additional briefs by 1/18/22, govt. to file a reply brief by 1/25/22.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Hearing on Appeal of Detention Order set for 1/27/2022 10:00 AM in Remote Proceeding : Boston before Judge Allison D. Burroughs.) (Folan, Karen) (Entered: 01/11/2022) |
| 01/12/2022 | 37 | Letter (non-motion) from C.M. as to Stephen M. DeBerardinis (McManus, Caetlin) (Entered: 01/12/2022) |
| 01/24/2022 | 38 | Assented to MOTION for Protective Order as to Stephen M. DeBerardinis by USA. (Attachments: # 1 Proposed Protective Order)(Cummings, Torey) (Entered: 01/24/2022) |
| 01/25/2022 | 39 | STATUS REPORT *and Request to Postpone Status Conference* by USA as to Stephen M. DeBerardinis (Cummings, Torey) (Entered: 01/25/2022) |
| 01/25/2022 | 40 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 38 Motion for Protective Order as to Stephen M. DeBerardinis (1). (Bowler, Marianne) (Entered: 01/25/2022) |
| 01/25/2022 | 41 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered as to Stephen M. DeBerardinis. Taken as a motion to continue, Docket Entry # 19 is ALLOWED. The status conference is continued until March 24, 2022 at 2:45 PM. The parties are directed to file a separate motion to exclude the time. (Bowler, Marianne) (Entered: 01/25/2022) |
| 01/25/2022 | 42 | Magistrate Judge Marianne B. Bowler: PROTECTIVE ORDER as to Stephen M. DeBerardinis (Belpedio, Lisa) (Entered: 01/25/2022) |
| 01/26/2022 | 43 | ELECTRONIC NOTICE OF HEARING as to Stephen M. DeBerardinis Status Conference set for 3/24/2022 02:45 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler.. COUNSEL ARE DIRECTED TO APPEAR BY PHONE by |

| | | calling 888-675-2535 approximately five minutes prior to the conference, using Access Code 6641794. If, for some reason, the call is disconnected, dial back in. NOTE that yours may not be the first case called, but please remain on the line until it is. (Belpedio, Lisa) (Entered: 01/26/2022) |
|---|---|---|
| 01/26/2022 | 44 | MOTION for Release from Custody as to Stephen M. DeBerardinis. (Attachments: # 1 Exhibit Letter from Lindsey Walsh, # 2 Exhibit West Roxbury Docket)(Thrall, Jessica) (Entered: 01/26/2022) |
| 01/26/2022 | 45 | Magistrate Judge Marianne B. Bowler: ORDER OF DETENTION as to Stephen M. DeBerardinis (Belpedio, Lisa) (Entered: 01/26/2022) |
| 01/27/2022 | 46 | Electronic Clerk's Notes for proceedings held before Judge Allison D. Burroughs: Motion Hearing regarding detention as to Stephen M. DeBerardinis held on 1/28/2022. Colloquy regarding defendant's right to be physically present for hearing. Defendant waives right and court proceeds with hearing by video. Govt. will file response to motion within a week. Defense will let court know if they would like to file a reply. Defendant objects to exhibit 8. Oral arguments by the parties. Court takes matter under advisement. (Attorneys present: Garland, Thrall. )Court Reporter Name and Contact or digital recording information: Joan Daly at joanmdaly62@gmail.com. (Folan, Karen) Modified on 3/18/2022 to correct date of hearing (Folan, Karen). (Entered: 01/28/2022) |
| 01/28/2022 | 49 | Governmenet EXHIBITS from Motion Hearing. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7 redacted, # 7 Exhibit 8)(Folan, Karen) (Entered: 02/15/2022) |
| 02/03/2022 | 47 | RESPONSE to Motion by USA as to Stephen M. DeBerardinis re 44 MOTION for Release from Custody (Cummings, Torey) (Entered: 02/03/2022) |
| 02/08/2022 | 48 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered finding as moot 28 Motion for Release from Custody as to Stephen M. DeBerardinis (1)and finding as moot 17 Motion for Release from Custody as to Stephen M. DeBerardinis (1) in light of Docket Entry # 45. (Bowler, Marianne) (Entered: 02/08/2022) |
| 02/16/2022 | 50 | Assented to MOTION for Excludable Delay from November 22, 2021 to March 24, 2022 as to Stephen M. DeBerardinis by USA. (Attachments: # 1 Proposed Order)(Cummings, Torey) (Entered: 02/16/2022) |
| 02/17/2022 | 51 | Judge Allison D. Burroughs: Order entered. MEMORANDUM AND ORDER on Defendant's Appeal of Detention Order.<br><br>Magistrate Judge Bowler's conclusion was well-reasoned and amply supported by the evidence before her, and upon *de novo* review, the Court agrees that pretrial detention is warranted. DeBerardinis' motion, [ECF No. 44 ], is therefore <u>DENIED</u>.<br><br>**SO ORDERED.**<br><br>(McManus, Caetlin) (Entered: 02/17/2022) |
| 02/18/2022 | 52 | NOTICE OF APPEAL re: 51 Memorandum and Order by Stephen M. DeBerardinis (Fee Status: IFP granted). NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 3/10/2022. (Thrall, Jessica)** |

| | | **Modified on 2/22/2022 to add CM/ECF Document Link to Order Being Appealed as Counsel Failed to Follow the CM/ECF NextGen Prompts When Filing the Notice of Appeal (DaSilva, Carolina).** **(Entered: 02/18/2022)** |
|---|---|---|
| 02/18/2022 | 53 | Certified and Transmitted Abbreviated Electronic Record on Appeal as to Stephen M. DeBerardinis to US Court of Appeals re 52 Notice of Appeal. (Warnock, Douglas) (Entered: 02/18/2022) |
| 02/22/2022 | 54 | USCA Case Number as to Stephen M. DeBerardinis 22-1123 for 52 Notice of Appeal filed by Stephen M. DeBerardinis. (Dore, Samantha) (Entered: 02/22/2022) |
| 02/24/2022 | 55 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 50 Motion to Exclude as to Stephen M. DeBerardinis (1) (Folan, Karen) (Entered: 02/24/2022) |
| 02/24/2022 | 56 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. ORDER ON EXCLUDABLE DELAY as to Stephen M. DeBerardinis. Time excluded from 11/22/21 until 3/24/22. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. (Folan, Karen) (Entered: 02/24/2022) |
| 03/10/2022 | 57 | Transcript of Status Conference as to Stephen M. DeBerardinis held on October 4, 2021, before Magistrate Judge Marianne B. Bowler. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 3/31/2022. Redacted Transcript Deadline set for 4/11/2022. Release of Transcript Restriction set for 6/8/2022. (Coppola, Katelyn) (Entered: 03/12/2022) |
| 03/10/2022 | 58 | Transcript of Status Conference as to Stephen M. DeBerardinis held on November 23, 2021, before Magistrate Judge Marianne B. Bowler. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 3/31/2022. Redacted Transcript Deadline set for 4/11/2022. Release of Transcript Restriction set for 6/8/2022. (Coppola, Katelyn) (Entered: 03/12/2022) |
| 03/10/2022 | 59 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 03/12/2022) |
| 03/10/2022 | 60 | Transcript of Initial Appearance as to Stephen M. DeBerardinis held on September 29, 2021, before Magistrate Judge Marianne B. Bowler. Court Reporter Name and Contact Information: Lee Marzilli at leemarz@aol.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 3/31/2022. Redacted Transcript Deadline set for 4/11/2022. Release of Transcript Restriction set for 6/8/2022. (Coppola, Katelyn) (Entered: 03/15/2022) |
| 03/10/2022 | 61 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 03/15/2022) |
| 03/21/2022 | 65 | Transcript of Detention Hearing as to Stephen M. DeBerardinis held on January 27, 2022, |

|  |  |  |
|---|---|---|
|  |  | before Judge Allison D. Burroughs. COA Case No. 22-1123. Court Reporter Name and Contact Information: Joan Daly at joanmdaly62@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 4/11/2022. Redacted Transcript Deadline set for 4/21/2022. Release of Transcript Restriction set for 6/20/2022. (Coppola, Katelyn) (Entered: 03/25/2022) |
| 03/21/2022 | 66 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 03/25/2022) |
| 03/23/2022 | 62 | Letter (non-motion) regarding Discovery as to Stephen M. DeBerardinis (Thrall, Jessica) (Entered: 03/23/2022) |
| 03/24/2022 | 63 | NOTICE OF ATTORNEY APPEARANCE Nadine Pellegrini appearing for USA. (Pellegrini, Nadine) (Entered: 03/24/2022) |
| 03/24/2022 | 64 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Status Conference as to Stephen M. DeBerardinis held on 3/24/2022. Case called, counsel appear by telephone, counsel request additional time, further( Status Conference set for 5/24/2022 02:45 PM in Remote Proceeding : Boston before Magistrate Judge Marianne B. Bowler. COUNSEL ARE DIRECTED TO APPEAR BY PHONE by calling 888-675-2535 approximately five minutes prior to the conference, using Access Code 6641794. If, for some reason, the call is disconnected, dial back in. NOTE that yours may not be the first case called, but please remain on the line until it is. Defendant agrees to exclude the time in the interest of justice and government will file an assented to motion. (Attorneys present: Pellegrini, Thrall. )Court Reporter Name and Contact or digital recording information: Alice Moran at alice.moran@verizon.net. (Belpedio, Lisa) (Entered: 03/25/2022) |
| 03/25/2022 | 67 | Joint MOTION for Excludable Delay from March 24, 2022 to May 24, 2022 as to Stephen M. DeBerardinis by USA. (Pellegrini, Nadine) (Entered: 03/25/2022) |

011

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

STEPHEN M. DeBERARDINIS,

Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Criminal No.    1:21-CR-10292

Violations:

Count One: Transmitting in Interstate and
Foreign Commerce a Threat to Injure the Person
of Another
(18 U.S.C. § 875(c))

Count Two: Tampering with a Witness and
Victim by Intimidation, Threats, and Corrupt
Persuasion
(18 U.S.C. § 1512(b)(3))

Count Three: Tampering with a Witness and
Victim by Harassment
(18 U.S.C. § 1512(d)(2))

Forfeiture Allegation:
(18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461)

INDICTMENT

At all times relevant to this Indictment:

1.      Victim 1 was a 34-year-old white woman, whose identity is known to the grand

jury. Victim 2 was a 37-year-old Black man, whose identity is known to the grand jury. Both

lived within the District of Massachusetts.

2.      In late December 2020, Victim 1 announced her engagement to Victim 2 on

Facebook. Facebook is a social media website that operates in interstate and foreign commerce.

It allows its users to post text, photographs, and video, to view the posts, to comment on them, and

to reply to those comments. Facebook also allows its users to communicate via private messages,

1

012

similar to text messages, and via audiovisual and audio-only telephone calls, all through Facebook Messenger. Each communication sent or received through Facebook travels through computer servers located outside the District of Massachusetts, even if all of the parties to the communication are located within the District of Massachusetts.

3.     The engagement announcement included photographs of Victim 1 and Victim 2. Other photos that Victim 1 posted to her Facebook account also included photographs of the couple together. It was apparent from the photographs that Victim 1 is a white woman and that Victim 2 is a Black man.

4.     Victim 1's Facebook friends could view the photos of the couple on Facebook, and so could the Facebook friends of her Facebook friends.

5.     One of the people who could view the photos of the couple was Defendant STEPHEN M. DeBERARDINIS, a 44-year-old white male who lived in Dedham/Hyde Park, Massachusetts. DeBERARDINIS was a Facebook friend of some of Victim 1's Facebook friends, but he was not Victim 1's or Victim 2's friend, Facebook friend, or business associate.

6.     On or about January 6, 2021, at approximately 8:53 PM, Defendant DeBERARDINIS sent Victim 1 a message via Facebook Messenger stating, "EWWWWWWWW YOUR A NIGGER FUCKER FUCKING DIRTY ASS WHITE TRASH."[1]

7.     Victim 1 and Victim 2 saw this message. Victim 1 then allowed Victim 2 to use her Facebook account to send communications. At approximately 8:55 PM, Victim 2 tried to call DeBERARDINIS using Victim 1's Facebook Messenger account.

---

[1] DeBERARDINIS's communications are set forth verbatim.

2

8. DeBERARDINIS did not answer the call, but instead responded within a minute, "DONT FUCKING CALL ME!!!!! YOUR WHITE TRASH AND A DIRTY COCK SUCKER."

9. In response, the victims configured Victim 1's Facebook account to block DeBERARDINIS from contacting her and then unblocked him shortly thereafter in order to search Facebook for any connections to him.

10. At approximately 8:56 PM, DeBERARDINIS messaged Victim 1's account, "FUCKIN NASTY ASS."

11. Victim 2, through Victim 1's account, responded within a minute, "Don't worry, I'm reporting you to the cops."

12. At approximately 8:57 PM, DeBERARDINIS responded, "YOU WANT ME TO GIVE YOU THERE PHONE NUMBER HAHAHAHA".

13. Victim 1 and Victim 2 did not respond. Yet two minutes later, at approximately 8:59 PM, DeBERARDINIS threatened to harm Victim 1 if she called the police, sending her account this picture of brass knuckles surrounded by the text, "SNITCHES GET STITCHES":



3

14.    Concerned with DeBERARDINIS's threat, Victim 1 and Victim 2 tried to learn more about him online. At approximately 9:15 PM, Victim 2, through Victim 1's account, wrote, "Are you still trying to buy stolen guns online? Guess what, they are coming for you again."

15.    At approximately 9:18 PM, DeBERARDINIS responded, "OOOOO WOW YOU KNOW HOW TO GOOGLE NAMES" and "ILL SEND YOUBA NIGGERS DICK TO SUCK LOL". He then renewed his threats of violence at approximately 9:21 PM, saying, "Read up more on me lol... you will see how me and my crew burn niggers alive", followed by, "And white whores like you well.... get rape and killed THAN we cut off body parts and mail them to your family lol".

16.    At approximately 9:23 PM, Victim 2, through Victim 1's account, responded, "Hi buddy t[h]reats against me or my girlfriend will not be taken lightly. This will be reported to the cops.I promise you."

17.    DeBERARDINIS responded a few minutes later, "LMAO OK NIGGA" and then, approximately a minute later, "The COPS hahahaha".

18.    DeBERARDINIS knew and intended that his communications would be interpreted as threats and harassment.

19.    Victim 1 and Victim 2 did in fact interpret DeBERARDINIS's communications as threats and harassment.

20.    Victim 1 and Victim 2 reported DeBERARDINIS to the police and the police contacted federal law enforcement.

4

COUNT ONE

Transmitting in Interstate and Foreign Commerce a Threat to
Injure the Person of Another
(18 U.S.C. § 875(c))

The Grand Jury charges:

21.    The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1 through 20 of this Indictment.

22.    On or about January 6, 2021, in the District of Massachusetts and elsewhere, the defendant,

STEPHEN M. DeBERARDINIS,

intentionally transmitted in interstate and foreign commerce communications containing a threat to injure the person of another, for the purpose of issuing a threat and knowing that his communication would be interpreted as a threat.

All in violation of Title 18, United States Code, Section 875(c).

Special Finding

23.    The Grand Jury realleges and incorporates by references the allegations in paragraphs 21 and 22 above, and further charges that:

The defendant intentionally selected the victims as the object of his threat because of the actual and perceived race and color of Victim 1 and Victim 2.

5

## COUNT TWO
Tampering with a Witness and Victim by Intimidation, Threats, and Corrupt Persuasion
(18 U.S.C. § 1512(b)(3))

The Grand Jury further charges:

24.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 20 of this Indictment.

25.     On or about January 6, 2021, in the District of Massachusetts, the defendant,

### STEPHEN M. DeBERARDINIS,

did knowingly intimidate, threaten, and corruptly persuade, and attempt to intimidate, threaten, and corruptly persuade, Victim 1 and Victim 2 by sending Victim 1's Facebook account one and more Facebook Messenger messages commencing at or about 8:59 PM, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a Federal offense.

All in violation of Title 18, United State Code, Section 1512(b)(3).

6

## COUNT THREE
Tampering with a Witness and Victim by Harassment
(18 U.S.C. § 1512(d)(2))

The Grand Jury further charges:

26.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 20 of this Indictment.

27.     On or about January 6, 2021, in the District of Massachusetts, the defendant,

### STEPHEN M. DeBERARDINIS,

did intentionally harass and attempt to harass Victim 1 and Victim 2 by sending Victim 1's Facebook account one and more Facebook Messenger messages commencing at or about 8:59 PM, and did thereby hinder, delay, prevent, and dissuade, and attempt to hinder, delay, prevent, and dissuade, Victim 1 and Victim 2 from reporting to a law enforcement officer the commission and possible commission of a Federal offense.

All in violation of Title 18, United State Code, Section 1512(d)(2).

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

28.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1512, set forth in Counts 2 and 3, the defendant,

### STEPHEN M. DeBERARDINIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

29.     If any of the property described in Paragraph 28, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant—

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 28 above.

8

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

SCOTT L. GARLAND
TOREY B. CUMMINGS
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: September 28, 2021
Returned into the District Court by the Grand Jurors and filed.

Lisa Belpedio at 12:17 p.m.
DEPUTY CLERK

9

020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,            )
                                     )
               Plaintiff             )
                                     )
          -VS-                       ) Criminal No. 21-10292-ADB
                                     ) Pages 1 - 15
STEPHEN M. DeBERARDINIS,             )
                                     )
               Defendant             )


**INITIAL APPEARANCE VIA VIDEO**


BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE



A P P E A R A N C E S:

    SCOTT GARLAND, ESQ. and TOREY B. CUMMINGS, ESQ.,
Assistant United States Attorneys, Office of the United States
Attorney, 1 Courthouse Way, Room 9200, Boston, Massachusetts,
02210, for the Plaintiff.

    JESSICA P. THRALL, ESQ., Federal Public Defender Office,
51 Sleeper Street, 5th Floor, Boston, Massachusetts, 02110,
for the Defendant.

                              United States District Court
                              1 Courthouse Way
                              Boston, Massachusetts  02210
                              September 29, 2021, 1:28 p.m.





                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
                United States District Court
                1 Courthouse Way, Room 7200
                   Boston, MA  02210
                   leemarz@aol.com

P R O C E E D I N G S

THE CLERK:  The United States District Court is now in session, the Honorable Marianne B. Bowler presiding.  Today's date is September 29, 2021, in the case of the United States v. Stephen DeBerardinis, Criminal Action No. 21-10292-ADB.

The parties are reminded that any photography, recording, or rebroadcasting of court proceedings may result in sanctions, as deemed appropriate or necessary by the Court.

Will counsel please identify themselves for the record starting with the government.

MS. CUMMINGS:  Good afternoon, your Honor.  Torey Cummings on behalf of the United States.

MR. GARLAND:  Good afternoon.  Scott Garland on behalf of the United States.

THE COURT:  Thank you.

MS. THRALL:  Good afternoon, your Honor.  Jessica Thrall on behalf of Mr. DeBerardinis.

THE COURT:  And I'd like to know the correct pronunciation.  Is that it, Mr. DeBerardinis?

THE DEFENDANT:  Yes, it is, your Honor.  It's DeBerardinis.

THE COURT:  Thank you very much.

THE DEFENDANT:  Thank you.

THE COURT:  Good afternoon.  I am Magistrate Judge Bowler.  Can you see me and can you hear me?

THE DEFENDANT: Yes, I can, your Honor.

THE COURT: This is your initial appearance in Federal Court. We're here because you have been named in a federal criminal indictment. At this hearing, you are appearing today via video link. Let me begin by describing the arrangements that have been set up for this hearing. Your lawyer, the prosecutor, the courtroom deputy, the court reporter, the probation officer, and the Court are all in different locations today. If you have any trouble with either the video or audio connection -- that is, if you cannot see or hear what's happening -- please speak up immediately or wave your hand. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: We'll stop the proceeding immediately and correct the technical problem. And if you want something repeated, just let me know, and I will arrange for it. Do you understand?

THE DEFENDANT: Yes, I do. Thank you.

THE COURT: You're welcome. And if you need to speak with your attorney at any time during this proceeding, just speak up or raise your hand and let me know, and I will arrange for the two of you to speak privately. Do you understand?

THE DEFENDANT: Yes, your Honor. Thank you.

THE COURT: You're welcome. I also want you to know that the court reporter is making a record of this proceeding,

and if we need a transcript, it can be prepared.

I want to explain something to you about why you are appearing today via video link for this hearing. You have the right to be physically present in open court for this hearing, but you can waive that right. Before I ask you whether or not you intend to waive your right to be physically present, you should know the following: Our normal procedure, until 18 months ago, was to have all defendants physically present in the courtroom for this type of hearing. Today is September 29, 2021, and as I am sure you are aware, we are still in the midst of a pandemic caused by the coronavirus. In the Federal Court, we are attempting as best we can to protect the health and safety of everyone. For instance, if you were brought to the courthouse today, you might be transported in close quarters with other people. The transportation of defendants to and from the courthouse for court proceedings increases the health risks for everyone involved, including defendants, lawyers, court personnel, security officers, and drivers. Then, when you arrive at the courthouse, you could be placed in a cell with other people, possibly exposing you to the virus. So we are trying to protect everyone from getting sick and passing the virus to other people, while at the same time we're trying to move forward and conduct proceedings like this in the safest possible manner for everyone involved.

To minimize the health risks, we are giving defendants

the option of appearing via video link.  At this point it is voluntary.  You do not have to appear by video, so I'm going to go through some questions with you to make sure that you understand your right to appear in person and to make sure that you understand you can waive that right.  Do you understand everything I have said up to this point?

THE DEFENDANT:  Yes, your Honor, I have.

THE COURT:  Thank you.

THE DEFENDANT:  Thank you.

THE COURT:  Do you understand that you have the right to be physically present in open court for this hearing?

THE DEFENDANT:  Yes, I do.

THE COURT:  And have you discussed the fact that you are appearing at this hearing via video link with your attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  And do you understand that you have the right to consult with your attorney privately at any time during this hearing?

THE DEFENDANT:  Yes, I do.

THE COURT:  All you have to do is let me know, and I will arrange for the two of you to speak.  Do you understand?

THE DEFENDANT:  Yes, I do.

THE COURT:  And do you understand that the courtroom is not closed, it is still public, so even though you are

appearing by video, your family members and other supporters have the right to attend this hearing electronically? Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you agree to waive your right to appear in person today and instead agree to appear by video?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.

THE DEFENDANT: Thank you.

THE COURT: Ms. Thrall, have you discussed the waiver with your client, and is there any reason why I should not accept his waiver?

MS. THRALL: We have discussed it, and there's no reason not to accept it.

THE COURT: Thank you. I find that the defendant has voluntarily and knowingly waived his right to appear at this hearing in person. I find that requiring the defendant to be present would jeopardize the public health and safety of those who would be present with the defendant during the court proceeding and during his transportation to and from the courthouse. I further find that additional delay would jeopardize the interests of justice because it is necessary to conduct this hearing promptly to protect the constitutional and legal rights of the defendant. I accept the waiver, and we will now proceed with the defendant's initial appearance.

We are here because you have been charged in a federal criminal indictment.  At this hearing, I will advise you of your constitutional and legal rights.  I will tell you about the charges against you and the penalties this Court could impose, if you are found guilty.

You have been charged in Count 1 with transmitting in interstate commerce a threat to injure the person of another, in violation of 18 United States Code, Section 875(c); in Count 2, with tampering with a witness and victim by intimidation, threats, or corrupt persuasion, in violation of 18 United States Code, Section 1512(b)(3); and in Count 3 with tampering with a witness and a victim by harassment, in violation of 18 United States Code, Section 1512(d)(2).

You're also subject to the forfeiture allegations of 18 United States Code, Section 981(a)(1)(C) and 28 United States Code, Section 2461.

What are the maximum penalties, please?

MS. CUMMINGS:  Your Honor, thank you.  The maximum penalty for a violation of Count 1, Section 875(c), is five years in prison, three years of supervised release, a fine of up to $250,000, restitution, and a $100 mandatory special assessment.

With respect to Count 2, violation of Section 1512(b)(3), the penalties are the same, except that the maximum prison term is 20 years, and the penalties also include

forfeiture.

With respect to Count 3, Section 1512(d)(2), the penalties are the same as in Count 1, except that the maximum prison term is three years with one year of supervised release, and the penalties also include forfeiture.

We are unaware, your Honor, of any mandatory minimum terms of imprisonment.

THE COURT:  Thank you.  I'll tell you about your right to counsel, and I'll consider conditions of release pending further court proceedings, whether or not you should be detained or what amount of bail should be set.  This is not a trial, and you will not be called upon to answer the charges at this time.  If at any time I say something you don't understand, please interrupt me and say so.  Is that clear?

THE DEFENDANT:  Yes, your Honor.  Thank you.

THE COURT:  You're welcome.  As a first step in this hearing, I am going to tell you about your constitutional rights.  You have the right under the Constitution of the United States to remain silent.  Any statement made by you may be used against you in court, and you have the right not to have your own words used against you.  You may consult with an attorney prior to any questioning, and you may have the attorney present during questioning.  Counsel will be appointed without charge if you cannot afford counsel.

If you choose to make a statement or to answer

questions without the assistance of counsel, you may stop answering at any time.  This right means you do not have to answer any questions put to you by law enforcement agents or by the Assistant United States Attorneys, Ms. Cummings or Mr. Garland.  I want to make it clear, you're not prohibited from making statements, but that if you do, they can be used against you.  You're not required to make a statement at this initial appearance, and any statement you do make may be used against you.

Finally, if I ask you any questions in this hearing or in any future hearing which you think might incriminate you, you have the right not to answer.

Do you understand everything I've said about your right to remain silent?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  As I said earlier, you have the right to retain counsel, to be represented by counsel, and to have the assistance of counsel at every critical stage of these proceedings.  You have the right to an attorney at this initial appearance, during any questioning, at any lineup, and at all proceedings in court.  You also have the right to have this Court assign counsel if you cannot obtain counsel or cannot afford counsel.  Can you afford an attorney?

THE DEFENDANT:  No, I cannot, your Honor.

THE COURT:  I'll provide you with a financial

affidavit. The information you put in the financial affidavit regarding your financial resources will assist me in determining whether or not you're eligible for the appointment of counsel. I remind you, the affidavit is filed under the pains and penalties of perjury, which means that if the information you put in the affidavit is false, you could be prosecuted for perjury, and, if convicted, be subject to a fine of up to $250,000 and/or five years in jail. In addition, if there is a change in your financial status during the pendency of this action, you have an obligation to inform the Court.

I am going to ask you some questions now for the sole purpose of bail. I will ask that you be sworn. None of these questions is designed to incriminate you, and if you do not wish to answer, you do not have to, and you may confer with your counsel before answering any questions.

MS. THRALL: Your Honor, we're going to hold off on the questions for now. I do think that we're going to do a Pretrial Services interview, so he may end up answering the questions in the end, but I want to talk to my client about them.

THE COURT: Thank you.

All right, what is the government seeking?

MS. CUMMINGS: Your Honor, the government is moving for detention. Would you like me to go over the grounds at this time?

THE COURT: Most certainly.

MS. CUMMINGS: Your Honor, we move based on Section 3142(f)(1) as danger to the community; pursuant to 3142(f)(1)(A), as the offense involves a crime of violence; pursuant to Section 3142(f)(1)(D), the defendant has been convicted of two or more violent offenses.

I will note for your Honor that we're not certain of that one yet, but we believe that we can confirm it.

We move under Section 3142(f)(2)(A), risk of flight, including nature of the offense, weight of the evidence, on probation or parole at the time, criminal history, record of defaults, and expected sentence. We further move under Section 3142(f)(2)(B), risk of obstructing justice and threatening a witness, including obstructing and attempting to obstruct justice, threatening, injuring, intimidating a witness or juror or attempting to do so.

The United States moves the Court for a continuance of the detention hearings on two grounds: first, for the three-day continuance under Section 3142(f)(2), but also for the ten-day continuance under Section 3142(d)(1)(A) so that we can notify the Norfolk County court because he is currently on release pending a trial in that court.

THE COURT: All right, Ms. Thrall, what's your preference?

MS. THRALL: Thank you, your Honor. We would request

a detention hearing be scheduled.  I've reached out to Probation to do the Pretrial Services interview, which I think we're doing tomorrow morning, and then I wanted to confer with the Court about potential availability for a detention hearing.

THE COURT:  Well, the government has the right to three days.  That would take us to Monday.

MS. CUMMINGS:  Your Honor, we've also asked under 3142(d)(1)(A) for the additional ten days because we're required to notify the State Court where he's currently on pretrial release.

THE COURT:  Well, what's your position, Ms. Thrall?

MS. THRALL:  Your Honor, I think that -- I understand the statute allowing for ten days.  I think Wednesday afternoon?  I don't understand why it would take an entire ten days to notify what I think is the West Roxbury District Court, who could probably be notified this afternoon.  So my preference is to maybe schedule this for Monday; and maybe if the government has some challenge notifying the State Court, I guess they could make that request then, but I just don't understand why it would take ten days to make a phone call.

MS. CUMMINGS:  Your Honor, we're happy to notify the court this afternoon.  My understanding is that the court may take some action, and the reason for the statute is to allow that court time to take whatever actions they may choose to take.  And I'm not -- I have no control over that or no

prediction on how long they might take.

THE COURT:  Well, shall I put it on for Monday at 3:00 o'clock for a status conference?

MS. CUMMINGS:  That's fine with me, your Honor.

MS. THRALL:  Your Honor, I'm available Monday; I'm available Monday at 3:00.  I would request that we schedule this for a detention hearing on Monday at 3:00, and if there's some reason to convert it to a status conference, the government could bring that to the Court's attention.  I just don't want to have my client waiting any longer than possible.

THE COURT:  All right, but the government does have the right to the ten-day continuance, so we'll schedule it for Monday, and then we'll see where we are on Monday.

MS. THRALL:  Thank you.

THE COURT:  And I would hopefully have some report from the State Court so that we would know.

MS. CUMMINGS:  Yes, your Honor.

MS. THRALL:  Can I ask a question with respect to the government's contention that one of the three charged counts is a crime of violence?  Which one is the government saying is a crime of violence?

MS. CUMMINGS:  Certainly the 8253 count, threats of violence, are crimes of violence.

THE COURT:  So which count?

MS. CUMMINGS:  The Count 1.  Excuse me.

THE COURT:  Count 1.

MS. THRALL:  Thank you.

THE COURT:  All right, so 3:00 o'clock on Monday, which is October the 4th.

Do you want to do the arraignment now, Ms. Thrall, or on Monday?

MS. THRALL:  No, your Honor.  On Monday.

THE COURT:  All right.  All right, at this time I would like to read into the record a statement pursuant to the Due Process Protections Act.  "Pursuant to the Due Process Protections Act, Public Law 116-182, 134 Sta. 894 (October 21, 2020) and Rule 5(f) of the Federal Rules of Criminal Procedure, this Court issues the following order:

"The United States is reminded of its obligation to disclose in a timely manner all exculpatory evidence to the defendant; that is, all evidence that is favorable to the defendant or tends to cast doubt on the United States' case, as required by *Brady* v. Maryland, 373 U.S. 83 (1963) and its progeny.  Specific categories of exculpatory evidence that must be provided to the defense are set out in Local Rule 116.2. The failure to comply with this order may result in consequences, including but not limited to the reversal of any conviction, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and/or sanctions by the court."

034

A written form of this order will appear as a separate and distinct docket entry in the record of this case.

Anything else from the government?

MS. CUMMINGS:  No.  Thank you, your Honor.

THE COURT:  Ms. Thrall?

MS. THRALL:  No.  Thank you, your Honor.

THE COURT:  All right, we stand in recess, and to all, stay well and stay safe.

MS. THRALL:  Thank you.

MS. CUMMINGS:  You too, your Honor.

MR. GARLAND:  Thank you, your Honor.

(Adjourned, 1:49 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 15 inclusive, was recorded by me stenographically at the time and place aforesaid in Criminal No. 21-10292-ADB, United States of America v. Stephen M. DeBerardinis, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

Dated this 10th day of March, 2022.

/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER

036

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                )
UNITED STATES OF AMERICA,        )
                                )
          Plaintiff,             )
                                )  Criminal Action
v.                               )  No. 1:21-cr-10292-ADB-1
                                )
STEPHEN M. DEBERARDINIS,         )
                                )
          Defendant.             )
                                )
```

BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

STATUS CONFERENCE
Via Zoom

October 4, 2021
12:38 p.m.

John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210

Linda Walsh, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, Massachusetts 02210
lwalshsteno@gmail.com

APPEARANCES:

On Behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    By: AUSA Torey B. Cummings
        AUSA Scott Garland
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    617-748-3281
    torey.cummings@usdoj.gov

On Behalf of the Defendant:

    FEDERAL PUBLIC DEFENDER OFFICE
    By: Jessica P. Thrall, Esq.
    51 Sleeper Street, 5th Floor
    Boston, Massachusetts 02110
    617-223-8061
    jessica_thrall@fd.org

            Proceedings reported and produced
             by computer-aided stenography.

P R O C E E D I N G S

THE CLERK:  The United States District Court is now in session, the Honorable Marianne B. Bowler presiding.  Today's date is October 4th, 2021, in the case of the United States versus Stephen DeBerardinis, Criminal Action Number 21-10292-ADB.

The parties are reminded that any photography, recording, or rebroadcasting of court proceedings may result in sanctions as deemed appropriate or necessary by the Court.

Will counsel please identify themselves for the record, starting with the Government.

MS. CUMMINGS:  Good afternoon, Your Honor.  Torey Cummings on behalf of the United States.

THE COURT:  Thank you.

MR. GARLAND:  Good afternoon, Your Honor.  Scott Garland on behalf of the United States.

THE COURT:  Thank you.

MS. THRALL:  Good afternoon, Your Honor.  Jessica Thrall on behalf of Stephen DeBerardinis.

THE COURT:  Thank you very much.

Good morning, Mr. DeBerardinis.  I'm Magistrate Judge Bowler.  Can you see me and can you hear me?

THE DEFENDANT:  Yes.  Good morning.

THE COURT:  Good morning.  We're here for a hearing, and you're appearing today via video link.  Let me begin by

describing the arrangements that have been set up for this hearing.

Your lawyer, the prosecutor, the courtroom deputy, the probation officer, and the Court are all in different locations today. If you have any trouble with either the video or audio connection, please speak up immediately or wave your hand.

Do you understand?

THE DEFENDANT: Yes, Your Honor. Thank you.

THE COURT: You're welcome. We'll stop the proceeding immediately and correct the technical problem. And if you want anything repeated, just let me know, and I will arrange for it.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you want something repeated, again, just let me know. And if you need to speak to your attorney at any time during this proceeding, just speak up or wave your hand and let me know, and I will arrange for the two of you to speak privately.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I also want you to know that the court reporter is making a record of this proceeding, and if we need a transcript, it can be prepared.

I want to explain something to you about why you are appearing today via video link for this hearing. You have the

right to be physically present in open court for this hearing, but you can waive that right.  Before I ask you whether or not you intend to waive your right to be physically present, you should know the following.

Our normal procedure, until just over 18 months ago, was to have all defendants physically present in the courtroom for this type of hearing.

Today is October 4th, 2021.  And as I am sure you are aware, we are still in the midst of a pandemic caused by the coronavirus.  Since the outset of the pandemic, state and federal authorities have declared states of emergency.

And in the federal court we are doing the best we can to protect the health and safety of everyone.  For example, if you had been brought to the courthouse today, you might be transported in close quarters with other people.  The transportation of defendants to and from the courthouse for court proceedings increases the health risks for everyone involved, including defendants, lawyers, court personnel, security officers, and the drivers.  Then, when you arrive at the courthouse, you could be placed in a cell with other people in close contact, possibly exposing you to the virus.

So we're trying to protect everyone from getting sick and passing the virus to other people, while at the same time we're trying to move forward and conduct proceedings like this in the safest possible manner for everyone involved.

To minimize the health risk, among other things, we're giving defendants the option of appearing via video link.  At this point it is voluntary.  You do not have to appear by video.  So I'm going to go through some questions with you to make sure that you understand your right to appear in person and to make sure that you understand you can waive that right.

Do you understand everything I've said up to this point?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you have the right to be physically present in open court for this hearing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have you discussed the fact that you're appearing at this hearing via video link with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that you have the right to consult privately with your attorney at any time during this hearing?

THE DEFENDANT:  Yes.

THE COURT:  All you have to do is let me know by speaking up or waving your hand, and I will arrange for the two of you to speak privately.

Do you understand?

THE DEFENDANT:  Sorry.  Yes, Your Honor.

THE COURT: And do you understand that the courtroom is not closed? It is still public. So even though you are appearing by video, your family members and other supporters have the right to attend this hearing electronically.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree to waive your right to appear in person and instead agree to appear by video today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Ms. Thrall, have you discussed the waiver with your client, and is there any reason why I should not accept his waiver?

MS. THRALL: Yes, we discussed it, and there's no reason not to accept it.

THE COURT: Thank you.

I find that the defendant has knowingly and voluntarily waived his right to appear at this hearing.

I find that requiring the defendant to be present would jeopardize the public health and safety of those who would be present with the defendant during the court proceeding and during his transportation to and from the courthouse.

I further find that additional delay would jeopardize the interests of justice because it is necessary to conduct this hearing promptly to protect the constitutional and legal rights of the defendant.

I accept the waiver, and we will now proceed with the hearing.

All right.  First, I'd like an update from the government.

MS. CUMMINGS:  Yes, Your Honor.  Good afternoon.

The defendant is out on pretrial release with respect to two different cases pending in two different state courts. We have been able to reach officials in both cases.  One of them has told me that they do not intend to take any action. The other one told me, as recently as this morning, that they are still waiting and have not yet made a determination on that.

THE COURT:  And for the record, could you tell us the two courts?

MS. CUMMINGS:  Yes, Your Honor.

It's West Roxbury District Court and Dedham District Court.

THE COURT:  And it's West Roxbury is no action?

MS. CUMMINGS:  Correct.

THE COURT:  And did they give you any idea of the schedule?

MS. CUMMINGS:  They did not, Your Honor.

THE COURT:  All right.  Ms. Thrall, under these circumstances the government does have the right to the ten days.

MS. THRALL:  I understand, Your Honor.  I understand the rule.  I conferred with the government about the likelihood that they would be taking this position over the weekend.

I do object for the record.  I do believe that both attorneys for the Government took immediate and appropriate steps to notify the state courts.  And I don't believe that Mr. DeBerardinis should be detained further, and that this hearing should be delayed further, just because one of the two courts can't decide what they want to do.

You know, these are not new allegations in the sense that the allegations before the court are alleged to have happened many, many months ago.  Mr. DeBerardinis was in the community, at his home with his family, which is our proposed release plan, for this entire time before his arrest a few days ago without any incidents.

So I just -- I appreciate the technicality here, but where both U.S. Attorneys in this case were prompt and made very explicit efforts to reach out to the courts in question and the court just can't decide, I don't think that's an appropriate reason to delay our detention hearing.

THE COURT:  Well, the statute provides for ten days for the Court to act.  Do you have any case law to support it?

MS. THRALL:  No, Your Honor.  I am saying I understand the technicality.  But what we have is not the Dedham Court saying, We need time because we are going to move to revoke his

bail.  They're not saying that.  They're just saying, We don't know what we want to do.  And I don't think that's an appropriate use of this time period.

THE COURT:  Does the government want to respond?

MS. CUMMINGS:  Your Honor, I think I said everything that we need to say at this point.  I have done my best to get an answer from them.  And, you know, I spoke to the person in Dedham as recently as this morning, and they weren't able to provide me with a response.  I asked that they provide me as soon as they have any further information.

THE COURT:  Well, I think the statutes provide for the ten days, so I think I'm bound.

Do you want to pick a date now, which would be ten days from the initial appearance?

Don't all speak at once.

MS. THRALL:  Ten days from September 29th?

THE COURT:  Right.

MS. CUMMINGS:  I believe that's October 15th, if I counted correctly, because of the holiday.  No.  I'm sorry.  I think it's the 14th.

MS. THRALL:  I am away October 13th, 14th, and 15th, and I am not available.  I can be available on the 12th or the 18th depending on the timing.

MS. CUMMINGS:  I apologize.  I'm away on the 12th.

THE COURT:  Well, Mr. Garland can cover you.

MR. GARLAND:  Your Honor, I am definitely available on the 12th.

THE COURT:  All right.  October the 12th at 2:00 p.m. Anything else from the government?

MS. CUMMINGS:  Not from me, Your Honor.

Mr. Garland?

MR. GARLAND:  Your Honor, we'd ask to move to exclude the time, both from the initial to today and then to the date of the hearing that you've set as well.

THE COURT:  In agreement, Ms. Thrall?

MS. THRALL:  Yes, I think it's excludable.

THE COURT:  All right.  And you want to wait until the 12th for the arraignment?

MS. THRALL:  Yes, please.

THE COURT:  All right.  We'll have a detention hearing and arraignment on October the 12th at 2:00 p.m.

Hearing nothing else, we stand in recess.  To all, stay well and stay safe.

MR. GARLAND:  Thank you, Your Honor.

MS. CUMMINGS:  Thank you, Your Honor.

MS. THRALL:  Thank you, Your Honor.

(Adjourned at 12:50 p.m.)

CERTIFICATE OF OFFICIAL REPORTER


I, Linda Walsh, Registered Professional Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter, to the best of my skill and ability.

Dated this 9th day of March, 2022.


/s/ Linda Walsh

Linda Walsh, RPR, CRR

Official Court Reporter

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,            )
                    Plaintiff,       )
                                     )
vs.                                  )  No. 21-CR-10292-ADB
                                     )
STEPHEN M. DeBERARDINIS,             )
                    Defendant.       )


BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
DETENTION HEARING BY VIDEOCONFERENCE


John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210


October 8, 2021
11:20 a.m.


Kathleen Mullen Silva, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 7209
Boston, Massachusetts 02210
E-mail: kathysilva@verizon.net

Mechanical Steno - Computer-Aided Transcript



APPEARANCES:




        United States Attorney's Office

        AUSA Torey B. Cummings

        AUSA Scott Garland

        John Joseph Moakley U.S. Courthouse

        Boston, Massachusetts 02210

        for the Government


        Federal Public Defender Office

        Jessica P. Thrall, Esq.

        51 Sleeper Street, 5th Floor

        Boston, Massachusetts 02210

        617.223.8061

        for Defendant

3

INDEX


E X H I B I T S


Exhibit No.                                                    Received

Government
1-5                ....................................    11


Defendant
A-C                ....................................    13

051

P R O C E E D I N G S

THE CLERK:  The United States District Court is now in session, the Honorable Marianne B. Bowler presiding.  Today's date is October 8, 2021 in the case of the United States v. Stephen DeBerardinis, Criminal Action No. 21-10292-ADB.

The parties are reminded that any photographing, recording or rebroadcasting of court proceedings may result in sanctions as deemed appropriate or necessary by the court.

Will counsel please identify themselves for the record, starting with the government.

MS. CUMMINGS:  Good morning, Your Honor.  Torey Cummings on behalf of the United States.

THE COURT:  Thank you.

MR. GARLAND:  Good morning, Your Honor.  Scott Garland on behalf of the United States.

THE COURT:  Thank you.

MS. THRALL:  Good morning, Your Honor.  Jessica Thrall on behalf of Stephen DeBerardinis.

THE COURT:  Thank you very much.

Good morning, Mr. DeBerardinis.  I'm Magistrate Judge Bowler.  Can you hear me and can you see me?

THE DEFENDANT:  Yes.

THE COURT:  We're here for your detention hearing and you're appearing via video link.  Let me begin by describing the arrangements that have been set up for this hearing.  Your

lawyer, the prosecutors, the courtroom deputy, the court reporter, the probation officers, and the court are all in different locations today.  If you have any trouble with either the video or audio connection at any time, speak up or raise your hand immediately.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We'll stop the proceeding and correct the technical problem, and if you want anything repeated, just let me know and I will arrange for it.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And if you need to speak with your attorney at any time during this proceeding, just speak up or wave your hand and let me know and I will arrange for the two of you to speak privately.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  I also want you to know that the court reporter is making a record of this proceeding and if we need a transcript, it will be prepared.

I want to explain something to you about why you are appearing via video link today.  You have the right to be physically present in open court for this hearing, but you can waive that right.  Before I ask you whether or not you intend to waive your right to be physically present, you should know the following: Our normal procedure until just over 18 months ago was to have all defendants physically present in the

courtroom for this type of hearing.  Today is October 8, 2021, and as I am sure you are aware, we are still in the midst of a pandemic caused by the coronavirus.

In the federal court we are attempting as best we can to protect the health and safety of everyone.  For example, if you were brought to the courthouse today you might be transported in close quarters with other people.  The transportation of defendants to and from the courthouse for court proceedings increases the health risks for everyone involved, including defendants, lawyers, court personnel, security officers and the drivers.  Then, when you arrive at the courthouse, you could be placed in a cell in close proximity to other people, possibly exposing you to the virus. So we're trying to do everything to protect everyone from getting sick and passing the virus to other people while at the same time we're trying to move forward and conduct proceedings like this in the safest possible manner for everyone involved.

To minimize the health risks, among other things, we're giving defendants the option of appearing via video link. At this point it is voluntary.  You do not have to appear by video.  So I'm going to go through questions with you to make sure that you understand your right to appear in person and to make sure you understand you can waive that right.

Do you understand everything I've said up to this point?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.

Do you understand that you have the right to be physically present in open court for this hearing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have you discussed the fact that you're appearing at this hearing via video link with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that you have the right to consult privately with your attorney at any time during this hearing?  All you have to do is let me know, and I will arrange for it.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the courtroom is not closed?  It is still public.  So even though you are appearing by video, your family members and other supporters have the right to attend this hearing electronically.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you agree to waive your right to appear in person today and instead agree to appear by video?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.

Ms. Thrall, have you discussed the waiver with your

client and is there any reason why I should not accept his waiver?

MS. THRALL: No, Your Honor. We are prepared to proceed by video.

THE COURT: Thank you. I find that the defendant has knowingly and voluntarily waived his right to appear at this hearing in person. I find that requiring the defendant to be present would jeopardize the public health and safety of those who would be present with the defendant during the court proceeding and during his transportation to and from the courthouse. I further find that additional delay would jeopardize the interests of justice because it is necessary to conduct this hearing promptly to protect the constitutional and legal rights of the defendant. I accept the waiver and we will now proceed with the detention hearing.

Ms. Cummings, are you ready to proceed?

MS. CUMMINGS: I am, Your Honor.

Before I start, I just want to let the court know that I believe that victims are observing today's proceedings.

THE COURT: Thank you.

MS. CUMMINGS: In addition, Your Honor, I have a statement from the victims that sets forth their position on detention. I'm happy to read it now or hold it to the end of my proffer, whatever the court prefers.

THE COURT: I think at the end of your proffer.

MS. CUMMINGS:  Yes, Your Honor.

Your Honor, I'd like to walk through the government's exhibits very briefly and I'm happy to provide more detail in my argument as to how each of these exhibits support the government's argument for detention.

Government's Exhibit 1 contains excerpts from the defendant's Facebook account.  These messages containing racial epithets and bias are just some of the many similar posts and messages in the defendant's Facebook account.  This exhibit is relevant to the strength of the government's evidence as well as the defendant's likelihood of retaliation against witnesses.

Exhibit 2, Your Honor, also contains excerpts from the defendant's Facebook account.  In this exhibit at the top of the second page, the defendant states that he doesn't need to lie unless it's to the law.  This exhibit is relevant to the defendant's likelihood of compliance with court orders.

Exhibit 3 contains photos of weapons that the defendant posted to his Facebook account.  Pictured are some of the very weapons that he threatened to hurt the victims with in this case.  This exhibit is relevant to the defendant's dangerousness and to the strength of the government's evidence.

Exhibit 4 shows that in the search of the defendant's home, law enforcement found over 70 knives, 22 brass knuckles, and a number of other weapons.  This is relevant to the strength of the evidence, as well as to the defendant's

dangerousness.

Exhibit 5 is a transcript from a hearing in Suffolk County related to a restraining order that was taken out against Mr. DeBerardinis. In this hearing the plaintiff testified under oath that Mr. DeBerardinis told her and a very close female relative that they should be gang raped and kill themselves. This was after the plaintiff testified that Mr. DeBerardinis came to her house with a gun. The defendant denied these things, but the trial judge explicitly found the plaintiff credible and the defendant, Mr. DeBerardinis, not credible and granted the plaintiffs in that case a lifetime restraining order.

I direct the court specifically to pages 5 and 6, 9, 24 and 27 through 29 of that transcript which discuss the things that I just talked about.

This exhibit, Your Honor --

THE COURT: Could you reiterate the pages again. Pages 5, 6, 9.

MS. CUMMINGS: Yes, Your Honor. 24 and 27 through 29.

THE COURT: Thank you.

MS. CUMMINGS: Yes, Your Honor.

This transcript is relevant to the defendant's risk of retaliation against witnesses as well as his inability to comply with court orders.

Exhibit 6, Your Honor, is a summary of the defendant's

criminal record.  This is relevant to his dangerousness, his risk of flight in terms of his past failure to comply with court orders, and his risk of threatening witnesses and obstructing justice.

MS. THRALL:  Your Honor, we object to so much of Exhibit 6 as it is a summary written by the government, and would propose that the court just review Mr. DeBerardinis's criminal record instead.

THE COURT:  All right.  Are you offering all of the exhibits at this time?

MS. CUMMINGS:  Yes, Your Honor.

THE COURT:  All right.  I'll take Exhibits 1 through 5, and as for Exhibit 6 I will not take it based on the defendant's objection.  I have the criminal record as prepared for me by the Probation Department and I'll rely on that.

MS. CUMMINGS:  Yes, Your Honor.

**(Exhibit Nos. 1-5** received into evidence.)

MS. CUMMINGS:  Your Honor, would you like me to go into my argument now or would you like defense counsel to speak about her exhibits first?

THE COURT:  Is that the extent of your proffer?

MR. CUMMINGS:  No, Your Honor.  I have argument as to all of the exhibits.

THE COURT:  All right.  But is that the extent of the evidence you are offering?

MS. CUMMINGS:  Oh, yes Your Honor.

THE COURT:  Then I'll hear the defendant.  Ms. Thrall.

MS. THRALL:  Thank you, Your Honor.  We have -- I believe it's three exhibits that I sent to your clerk yesterday.  Two are dockets from the West Roxbury District Court, and one is an email between the West Roxbury assistant district attorney assigned to one of Mr. DeBerardinis's open cases.

THE COURT:  I have the exhibits.

MS. THRALL:  Okay.  So those are my three exhibits.  I also have a verbal proffer to make concerning comments made by one of the task force officers during the arrest of Mr. DeBerardinis.  This is information that the government and I have conferred about, and I can just simply talk about it in my argument.

THE COURT:  All right.  Why don't you, for the sake of the record, go through your exhibits one by one so we know what they are.

MS. THRALL:  Sure.

Exhibit 1 is the docket -- I'm sorry, Exhibit 1 can be the email concerning Docket No. 1906CR0660 between the ADA and defense counsel in West Roxbury.

THE COURT:  Do you have a date, please?

MS. THRALL:  Sure.  That is Thursday, October 7.

Exhibit 2 is the docket for Commonwealth v.

DeBerardinis, 1706CR556.

And Exhibit 3 is docket 1906CR660, Commonwealth v. DeBerardinis. That's the open West Roxbury case.

THE COURT: All right. And are you offering the exhibits at this time?

MS. THRALL: I am.

THE COURT: All right. Defendant Exhibits --

MS. CUMMINGS: Your Honor, I'd like to object, please, to the email exchange with the ADA on the basis of relevance.

THE COURT: Overruled. So since the government's exhibits are numbered, yours will be lettered Defendant's Exhibits A, the email, B and C, the two dockets. They are admitted and made part of the record for the purpose of this hearing.

**(Exhibits A-C received into evidence.)**

THE COURT: All right. Ms. Thrall.

MS. THRALL: Thank you, Your Honor. Do you want me to proceed first?

THE COURT: Yes, please.

MS. THRALL: Your Honor, we are asking that Mr. DeBerardinis be released on some stringent conditions of pretrial supervision. We are proposing that he be released to the family home where he has resided for his entire life in Hyde Park. That address has been provided to the Probation Department. He lives there with his mother, his sister Dawn

and his fiancée Lindsay.  I can see his mother on the Zoom right now.  She's under the name on the Zoom of his sister Dawn Marie.

We are asking that the court impose electronic monitoring and that the court fashion conditions with the Probation Department for some very significant mental health concerns that we have for Mr. DeBerardinis.  We believe that with electronic monitoring, with control of his Internet access, which I believe the probation department can also condition, and mental health treatment, Mr. DeBerardinis can be released and the concerns that the government has for the safety of the public can be mitigated.

Your Honor, there's a couple factors that are interesting about this case and about Mr. DeBerardinis's history.  I attached Exhibit 2, the 2017 West Roxbury docket, for this detention hearing because that is the program in the West Roxbury District Court where Mr. DeBerardinis has participated before in what is often called mental health court but is technically called Recovery with Justice.  And this is a specialized court session that allows defendants who have serious mental health or co-occurring mental health or substance use disorders to have a court session dedicated to focusing on their needs as an alternative to incarceration.  It is a program that links people with community-based services through probation.  It meets I believe monthly, and I put the

docket on the record, because as I was trying to follow it, that's what I think happens there, where people come in and the court makes sure that their mental health needs are being addressed.

And --

THE COURT:  I think your client wants to speak to you for a moment.  We'll put you quickly in a breakout room.

MS. THRALL:  Thank you.

(Discussion held off the record.)

MS. THRALL:  Thank you, Your Honor.

Mr. DeBerardinis was correcting me.  The program meets every week, and Mr. DeBerardinis did that program for about a year and graduated from the program.  So it is --

UNIDENTIFIED SPEAKER:  Push them back as far as possible.  We're waiting on returns.

THE COURT:  Who was that?  Where did that voice come from, do we know?

MS. THRALL:  It wasn't from Mr. DeBerardinis or me, Your Honor.

THE COURT:  I would ask everyone else to refrain from speaking during the proceeding.

MS. THRALL:  So it is a court that is very specialized, and it is in the community where Mr. DeBerardinis lives.  We're not disputing that he has a very significant record.  His record is largely driven by his struggles with his

mental health.  And the bail report that was written by the pretrial services department for Your Honor for this hearing catalogues Mr. DeBerardinis's very serious mental health history, including schizophrenia, including a litany of issues that he receives many, many psychiatric medications for.  Most of those medications he is not able to receive at the Plymouth County Jail.  Frankly, I don't think it's a product of Plymouth per se.  I believe most prison facilities would not authorize a person who is detained there to have those psychiatric medications.  He needs them to stabilize his mental health.

THE COURT:  What were the dates that he was enrolled in this program?

MS. THRALL:  Your Honor, that -- I'm pulling up Exhibit 2.  One second.  So if I'm looking at Exhibit 2, I believe it's five pages.  So he pled to that charge in July of 2017 and one of the special conditions that was placed was an evaluation for mental health, and then in August of -- August of 2017, that was the beginning of his participation in Recovery with Justice, the mental health court.

So August 2017 for about a year.

THE COURT:  It would seem in reviewing the criminal record that at least six restraining orders have entered since that time, so the program didn't do much good.

MS. THRALL:  There is not one sort of perfect way of intervening in someone's mental health history or path forward.

I'm not proposing that this mental health court is going to or could manage all of Mr. DeBerardinis's mental health needs. That's why I'm proposing a combination of factors here, one of which is ankle bracelet and electronic monitoring, one of which is limiting his access to the Internet, and one of which is getting back into this mental health program.

I think that having accountability in the courts and accountability with judicial officers and probation folks is a component of mental health, you know, success for Mr. DeBerardinis.  It's not just one thing.

Now, the relevance of the email between Mr. DeBerardinis's lawyer in state court and the West Roxbury prosecutor, the relevance of that email is because it addresses a disposition for the 2019 West Roxbury case that the government I think would argue is a factor in detention and a factor that suggests some dangerousness.

Attorney Thaler is Mr. DeBerardinis's lawyer in West Roxbury.  I have been conferencing this case with him all week. They have a trial date, I think next week, for that West Roxbury case, and that's why negotiations were going on about a possible disposition.  I think it's telling that the prosecutor in West Roxbury, who knows Mr. DeBerardinis, who has the same criminal record in front of him that you have, Your Honor, and knows his history, probably has even been potentially present for some of these restraining order hearings -- this is a small

court.  It's a small court with maybe one or two judges and a small DA's office.  They are recommending that Mr. DeBerardinis enter into this mental health court again because the need is still there.

So I think that that's relevant for a couple of factors.  The West Roxbury DA's office when approached by the government about this case and whether or not to revoke Mr. DeBerardinis's bail declined to do so, and after all of that engaged in these discussions with his state counsel to have him back into this recovery court.  And all of that, Your Honor, coupled with the fact that Mr. DeBerardinis's currently at Plymouth, can't access all of the medication that he needs, is a very strong factor in favor of releasing him, partly so that he can stay medication compliant and partly because it's not just Your Honor's conditions of release that he would be required to participate in.  He's likely also going to have supervision in West Roxbury.

Now, I say "likely" because this is all, as the email says, subject to the approval of Judge Coffey in the West Roxbury District Court.  But these things are all potentially lined up for him.  And coupled with electronic monitoring and not having access to the Internet, I believe the potential danger is incredibly small once those factors are all set in place.

I do want to bring up facts and circumstances relevant

to the arrest in this case and the allegations in this case. I don't have the specifics of exactly when the people who received these messages -- I don't know exactly when or what day they reported these messages to the authorities. I'm presuming it was relatively close in time to when they received the messages. Despite that, Mr. DeBerardinis was not arrested by anybody for these alleged threats until September 29, and the fact that there was not any interactions after that and nothing actually happened I think really puts the true nature of these comments into some perspective. Mr. DeBerardinis wasn't scooped up the day after the comments were made. He was arrested many, many, many months later. And that was a choice that was made by whatever investigating authorities, whether it was local police or the FBI, and I believe it's a choice that's reflective of the fact that Mr. DeBerardinis is not a danger to his community.

In fact, and this is the verbal proffer I wanted to make, Your Honor, one of the task force officers, who the government has identified to me but I won't share the name on the Zoom, one of the task force officers involved in the arrest of Mr. DeBerardinis told the government that Mr. DeBerardinis had emotional mental health issues. I think he referred to him as an emotionally disturbed person, which is sort of a police term of art, and that he did not believe he was violent. And for that information to be coming from a police officer, a

person who is part of the arrest of Mr. DeBerardinis, who has known him --

THE COURT:  To whom did he say he didn't think he was violent?

MS. THRALL:  I believe either to the U.S. Attorneys or to the other officers involved in the arrest.

THE COURT:  And what is your source of this?

MS. THRALL:  The government.  Mr. Garland and Ms. Cummings told me in a discovery letter.  I don't believe this is disputed and I told the government that I would be summarizing this.

THE COURT:  All right.

MS. THRALL:  So I think to the Court's point, this is not coming from Mr. DeBerardinis.  This is coming from the government.

And you know, this task force officer is a person who is a local Boston police officer who I believe knows Mr. DeBerardinis, not in a social setting necessarily but because of his previous interactions with the police.  And so for that person to be going out on a limb, frankly, and saying that my client is not violent I think really speaks volumes, coupled with the choice not to arrest him for so long.

I absolutely do not mean to minimize the real fear and seriousness of the comments that were made here.  I don't minimize those at all.  I believe that any person receiving

those messages would be justifiably upset and scared and report them to authorities.  That's a reasonable reaction.  But I am comparing it with an actual danger that anything said in those comments would come to fruition.

And that's the piece that I believe is missing from the government's allegations of dangerousness, is the idea that anybody was going to act on anything that was said there.  It's just not true.  And part of the reason we know it's not true is because it didn't happen ever, and then a decision was made to arrest Mr. DeBerardinis on September 29.

And you know, I think that the entire bigger picture here, when you look at Mr. DeBerardinis's mental health history, with his strong family support, you know, behind his mother, Your Honor, is sitting his fiancée and his newborn.  I mean, this is a man who deeply loves his family, who has struggled with mental health issues for a long time, and I'm very concerned that if he continues to be detained his mental health is going to deteriorate from the lack of proper care.

And so for all of those reasons we really believe that a package of very strictly organized conditions, including electronic monitoring and control of his access to the Internet, will really manage any safety concerns that the Court has and provide an opportunity for Mr. DeBerardinis to get some help, and that's ultimately what we are looking for.

THE COURT:  Well, I have serious concern and I have

somebody that has -- I have a criminal record that's extensive, and I have 13 different restraining orders by 12 different people, at least six of them since he's been in this mental health program.  I don't think I've ever seen that many restraining orders before, including one earlier by his own mother.

So let me hear from the government.

MS. CUMMINGS:  Thank you, Your Honor.  There is no condition or combination of conditions that will reasonably assure the appearance of this defendant and the safety of the community and, therefore, the government is requesting that the Court detain this defendant.

First, Your Honor, there's clear and convincing evidence that the defendant is a danger to the community, specifically his criminal record shows that he has been convicted of at least 64 separate charges.  He committed the instant crimes while on pretrial release from two different courts.  He has violated probation in at least 18 different cases, and, as Your Honor recognized, he's had a number of restraining orders taken out against him.  Notably the defendant has been convicted for threatening people with violence in the past, as well as for stalking, following, bomb hoax and arson of a dwelling.

This defendant is a recidivist who repeatedly commits crimes.  Other people have testified under oath about the

defendant's dangerousness.  The plaintiff, in a Suffolk County hearing transcript that is the Government's Exhibit 5, testified that she lives in fear of the defendant every day. Twelve people have sought and achieved 13 restraining orders against him because they were afraid that this defendant might harm them in some way.  This shows he has a long history of violence and harassment, and the victims in this case are afraid that the defendant might find them and harm them.

The defendant has been charged with a crime of violence under Section 3142(f)(A)(1).  He's been charged with sending threats to injure a person.  That charge carries -- it has an element within the offense that has threatened use of physical force against the person of another.  The indictment charges that the defendant threatened to cut the victim's body parts up and send them to her family and that he would use brass knuckles to give the victims stitches if they went to the police and that he would burn the victims alive.

In addition, Your Honor, a preponderance of the evidence shows that the defendant is a risk of flight, a risk of obstructing justice and of threatening witnesses.  The government concedes that this defendant appears to have strong family ties and does not appear to be a risk to flee the country, but risk of flight is not just about fleeing the country.  It's about following court orders.  And this defendant cannot be trusted to comply with court orders.

His criminal record shows that he's had plenty of experience with the court system but he cannot stop committing crimes even while he's out on probation. His record shows that when he's held accountable for his criminal actions, he repeatedly violates terms of probation, he defaults, and he violates abuse prevention orders. He's violated probation more than 20 times. In fact, he committed the instant crimes while he was on pretrial release.

The defendant also has a history of dishonesty. He's been convicted of a number of crimes related to veracity, including making false 911 calls, impersonating police officers. He's been convicted for a number of -- of those things several times.

The defendant, as shown in Exhibit 2, has written on Facebook that he lies to the law. A Suffolk County judge in Exhibit 5 explicitly found that this defendant was not credible. The defendant's ability to be truthful is really important here because if the court is going to let him out on conditions, he would have to promise to deal honestly with lawful authority, and that includes Your Honor and probation. And his past behavior shows that he doesn't engage with people and with authorities in an honest way.

The defendant has failed to obey court orders on numerous occasions in the past. He's violated probation in more than half of his cases. No matter what conditions are

imposed on him he can't seem to stop committing crimes.

Your Honor, the defendant's expected sentence is also a factor in contributing to his risk of flight and his risk of obstructing justice.  Based on the defendant's extensive criminal record, he is in Criminal History Category V and our preliminary calculations show a guideline range of 77 to 96 months before acceptance of responsibility and 57 to 71 months after acceptance of responsibility.  The possibility of facing a significant sentence further supports the government's position that this defendant is a risk of flight.

Your Honor, I'd like to now focus on the risk that the defendant will be obstruct justice and threaten witnesses. First, the grand jury found probable cause to believe that the defendant attempted to obstruct justice in this very case.  He was charged with two counts of obstructing justice. Threatening a witness is also at the very heart of the charges in this case.  He faces two -- excuse me.  He has been charged with sending threats to injure a person, as well as attempting to obstruct with threats and intimidation.  As I said earlier, the defendant has been previously convicted of threatening people.  In Exhibit 5, the plaintiff in the restraining order case testified under oath that the defendant threatened her and a family member with a gun and another time sent text messages to them invoking gang rape and killing oneself.

The defendant knows what threats are and how people

respond to them and now he faces serious federal charges for threatening victims in this case.  I mentioned our preliminary guideline calculations just a moment ago.  With the possibility of a significant term of incarceration, the defendant has even more of a reason to retaliate against the victims who reported him to law enforcement for these threats.  The victims are very afraid of him.  They are very afraid of what he might do to them.  And the defendant probably knows who the victims are based on the information in the indictment and the discovery in this case to date.  We know from the defendant's criminal record that he goes after people even when he's told not to, that he's been convicted repeatedly for doing just that, particularly with respect to the restraining orders that Your Honor mentioned and his violation of those on six occasions.

The defendant's Facebook account is replete with racial epithets and discriminatory statements regarding black people.  Some examples of this are in the indictment.  Others are in the government's Exhibit 1.  The defendant may be even more likely to retaliate here knowing that one of his accusers is black.

Another factor that supports the government's argument for detention is the strength of the evidence against him.  The grand jury found probable cause to believe that he threatened the victims and attempted to obstruct justice.  We have a lot of evidence that the Facebook account belongs to him based on

pictures, telephone numbers, IP address.

I want to turn very briefly to address the arguments that Ms. Thrall made. If it is, in fact, Your Honor, the case that the defendant has a mental health condition, that doesn't change the fact that he has a long history of repeatedly committing crimes, some of which are violent, and of violating court orders over and over again. When he's not incarcerated, this defendant is dangerous.

At this time the government has no information from a health care provider regarding the defendant's alleged mental health conditions or medications. You know, it appears that the defendant has not adequately addressed his mental health problems in the past. As Your Honor pointed out, even though he attended this program apparently from August 2017 to August 2018, he committed crimes and violated restraining orders after that time, including committing the crimes for which he's charged for in this court.

Mental health cannot be an excuse for a long-term failure to comply with the law and take responsibility for one's actions. Detention facilities, you know, where he is in Plymouth or elsewhere, have a duty to provide mental health treatment, including medications as appropriate. He's only been there a short time. So it may be that the facility needs time to evaluate or obtain his records. But I'm sure he will receive treatment while detained and that is not a reason, Your

Honor, to release him.

Ms. Thrall argued that the actions of an assistant district attorney support releasing the defendant on conditions pending trial. Prosecutors negotiate plea bargains for many different reasons. We don't know the underlying facts of that state case or the circumstances around its prosecution. It's also wholly separate from the federal charges the defendant faces here. So I submit to the court that the ADA's potential actions in that unrelated case have no bearing here.

Finally, the charges here were based on an incident that happened on January 6. Certainly we have no evidence at this time that the defendant threatened or harmed the victims after that date, but the situation has changed now. Federal charges have been brought and a significant prison sentence is a possibility. There's certainly more reason for the defendant to be angry at the victims for putting him in this position.

THE COURT: All right. Do you have a victim statement to read?

MS. CUMMINGS: Yes, Your Honor. Would you like me to read it now?

THE COURT: If you could read it into the record and please, for the benefit of the court reporter, not too quickly.

MS. CUMMINGS: Yes, Your Honor.

To Whom it May Concern: First off, we would like to thank the FBI for doing such diligent work on this case.

Although it seemed at times nothing was going to happen, we kept faith in the system and the system worked as it was meant to. Pertaining to this individual, my family and I will feel a lot safer if this individual is held until trial. I think he's not only a danger to our family, but I believe also to our community. I hope you consider our well-being and safety when making the decision if this individual should be released. Thank you.

THE COURT: All right. Anything else?

MS. CUMMINGS: No. Thank you, Your Honor.

THE COURT: All right. Ms. Thrall, I think your client wants to speak to you.

MS. THRALL: Yes, thank you.

(Discussion held off the record.)

MS. THRALL: Thank you, Your Honor.

THE COURT: Anything, short rebuttal?

MS. THRALL: Your Honor, you know, I appreciate the government's comments. We take them very seriously. We appreciate that this is a very serious case.

I still don't understand how, if this level of danger existed in January, how it took eight, nine months for Mr. DeBerardinis to be arrested at the home that he has lived in his entire life. And I just -- I have to emphasize that because I don't hear an explanation that doesn't really seriously undermine the government's argument.

THE COURT:  All right.  Are you ready to proceed with arraignment?

MS. THRALL:  Yes.  Mr. DeBerardinis is prepared to plead not guilty and we would waive --

THE COURT:  Have you reviewed the indictment with your client?

MS. THRALL:  I have read him the charges, yes.

THE COURT:  And have you explained the nature of it to him?

MS. THRALL:  Yes.

THE COURT:  And does he understand it?

MS. THRALL:  I believe so, but I'll let him answer that.

THE COURT:  And is he prepared to be arraigned here today?

MS. THRALL:  He is.

THE COURT:  And does he waive the reading of the indictment in its entirety?

MS. THRALL:  We do.

THE COURT:  And Ms. Cummings, the maximum penalty?

MS. CUMMINGS:  Your Honor, the maximum penalty for the charge of 18 U.S.C. Section 875(c) is five years in prison, three years of supervised release, a fine of up to $250,000, restitution, and a $100 mandatory special assessment.

For the charge of a violation of Section 1512(b)(3),

the penalties are the same, except that the maximum prison term is 20 years, and the penalties also include forfeiture.

The maximum penalty for Section 1512(d)(2) is the same as the first one, except that the maximum prison term is three years with one year of supervised release and the penalties also include forfeiture.

We are unaware of any mandatory minimum terms of imprisonment.

THE COURT:  All right.  Ms. Belpedio, will you proceed with the arraignment.

THE CLERK:  As to Count One charging you with transmitting in interstate and foreign commerce a threat to injure the person of another in violation of 18 U.S.C. Section 875, how do you plead, guilty or not guilty?

THE DEFENDANT:  Not guilty.

THE CLERK:  As to Count Two charging you with tampering with a witness and victim by intimidation, threats, and corrupt persuasion in violation of 18 U.S.C. Section 1512, how do you plead, guilty or not guilty?

THE DEFENDANT:  Not guilty.

THE CLERK:  And as to Count Three charging you with tampering with a witness and victim by harassment in violation 18 U.S.C. Section 1512, how do you plead, guilty or not guilty?

THE DEFENDANT:  Not guilty.

THE CLERK:  Thank you.

THE DEFENDANT:  Thank you.

THE COURT:  All right.  How many witnesses does the government intend to call and what's the probable length of trial?

MS. CUMMINGS:  Your Honor, at this time I defer to Mr. Garland on that one, if you don't mind.

MR. GARLAND:  Your Honor, we anticipate calling approximately ten witness.  We believe that the trial would take no more than a week.

THE COURT:  All right.  We'll have an initial status conference on November 22 at 2:45.

At this time I'd like to read into the record a statement pursuant to the Due Process Protections Act.

Pursuant to the Due Process Protections Act, Public Law 116-182, 134 Stat. 894 (October 21, 2020) and Rule 5(f) of the Federal Rules of Criminal Procedure, this court issues the following order: the United States is reminded of its obligations to disclose in a timely manner all exculpatory evidence to the defendant, that is, all evidence that is favorable to the defendant or tends to cast doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  Specific categories of exculpatory evidence that must be provided to the defense are set forth in Local Rule 116.2.  The failure to comply with this order may result in consequences, including, but not limited to, the

reversal of any conviction, the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and/or sanctions by the court.

A written form of this order will appear as a separate docket entry in the record of this case.

I will take the matter of detention under advisement. Hearing nothing else, we stand --

MS. CUMMINGS:  Your Honor, excuse me.  I'd like to move to extend the time, please, under the Speedy Trial Act.

THE COURT:  So noted.  Any objection, Ms. Thrall?

MS. THRALL:  No, Your Honor.

THE COURT:  File a motion, an assented-to motion then to exclude the time.

And as I started to say, I will take the matter of detention under advisement.

MS. THRALL:  Thank you, Your Honor.

THE COURT:  Hearing nothing else, to all, stay well and stay safe.

MS. CUMMINGS:  Thank you, Your Honor.

MR. GARLAND:  Thank you, Your Honor.

(Proceedings adjourned at 12:14 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS    )

I certify that the foregoing is a correct transcript from the record of proceedings taken October 8, 2021 in the above-entitled matter to the best of my skill and ability.

/s/ Kathleen Mullen Silva                    11/24/21

Kathleen Mullen Silva, RPR, CRR                    Date
Official Court Reporter

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )  Criminal Action
v.                                  )  No. 1:21-cr-10292-ADB-1
                                    )
STEPHEN M. DEBERARDINIS,            )
                                    )
          Defendant.                )
                                    )


BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE


STATUS CONFERENCE


November 23, 2021


John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210


Linda Walsh, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, Massachusetts 02210
lwalshsteno@gmail.com

APPEARANCES:

On Behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    By: AUSA Scott Garland
       AUSA Torey B. Cummings
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    617-748-3290
    scott.garland@usdoj.gov


On Behalf of the Defendant:

    FEDERAL PUBLIC DEFENDER OFFICE
    By: Jessica P. Thrall, Esq.
    51 Sleeper Street, 5th Floor
    Boston, Massachusetts 02110
    617-223-8061
    jessica_thrall@fd.org


           Proceedings recorded by sound recording and
            produced by computer-aided stenography.

<u>INDEX</u>

<u>E X H I B I T S</u>

<u>DESCRIPTION</u>                           <u>RECEIVED</u>

<u>DEFENDANT EXHIBITS</u>

   A      Letters of support.............................     8

* * * *

P R O C E E D I N G S

(Recording begins at 1:34:14)

THE CLERK:  The United States District Court is now in session, the Honorable Marianne B. Bowler presiding.  Today's date is November 23rd, 2021, in the case of the United States versus Stephen DeBerardinis, Criminal Action Number 21-10292.

The parties are reminded that any photography, recording, or rebroadcasting of court proceedings may result in sanctions as deemed appropriate or necessary by the Court.

Will counsel please identify themselves for the record, starting with the government.

MR. GARLAND:  Good afternoon, Your Honor.

Scott Garland on behalf of the United States.

THE COURT:  Thank you.

MS. CUMMINGS:  Torey Cummings on behalf of the United States.

THE COURT:  Thank you.

MS. THRALL:  Good afternoon, Your Honor.

Jessica Thrall on behalf of Stephen DeBerardinis. Mr. DeBerardinis is in custody at the Plymouth County House of Correction, and he's appearing over Zoom.  We consent to proceeding by Zoom.

THE COURT:  Thank you.  Are you telling me that it's not necessary to go through the colloquy then?

MS. THRALL:  I don't think that you need to, Your

Honor.

THE COURT:  Do you understand what that means, Mr. DeBerardinis?

Usually I ask a series of questions at the outset reminding you of your right to appear in person for this hearing.  However, your counsel has indicated that you agree to go forward by Zoom, that you do understand that you have a right to have this in person but you are willing to proceed by Zoom today; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Then we will waive the formal reading of the colloquy.

The government has no objection?

MS. CUMMINGS:  No, Your Honor.

THE COURT:  All right.  Well, first of all, I'd like to deal with the status conference.  The case is on for a status conference.  We last spoke of this on October the 8th. I have had the opportunity to review docket entry 23, which is the status report, and it appears to me from that that you're looking for another date in approximately 60 days?

Government; is that correct?

MS. CUMMINGS:  Yes, Your Honor.

THE COURT:  Where is the -- where is the background noise coming from?

MS. THRALL:  Your Honor, I think it's actually coming

from the area behind Mr. DeBerardinis in Plymouth.  And I don't know if Ms. Belpedio has the ability to mute the jail.

THE COURT:  Okay.  Mr. DeBerardinis, if at any time you want to speak or you want to speak to your lawyer or you want to be with your lawyer in private, just wave your hand to me, okay?  I'll be watching for it.

All right.  So I would set a further status conference in this case for January -- how about January 26th at 3:00 p.m.?  Does that work for counsel?

MR. GARLAND:  It does, Your Honor, for the government.

MS. CUMMINGS:  Yes, Your Honor.

MS. THRALL:  Yes, Your Honor.  There have already been four productions of discovery made by the government, which are quite voluminous, and I do think that this is a case that's going to take some time to review, so I think that's entirely appropriate.

THE COURT:  All right.  And do you agree to exclude the time from today until the 26th of January in the interests of justice?

MS. THRALL:  We do.

THE COURT:  All right.  And would the government file an assented-to motion to that effect.

MS. THRALL:  And, Your Honor, if I may, part of the issue, and part of why I requested permission to convene over Zoom, is in part because of the voluminous discovery and the

fact that Mr. DeBerardinis continues to be detained without a decision on our request to release him.

Since we were here in October, I think it was October 8th for our detention hearing, I have filed four supplemental documents for the Court's consideration, two of which are letters of support of Mr. DeBerardinis from retired law enforcement personnel and two letters are from medical personnel, one from his mother's doctor and one from his doctor, identifying the specific medical issues that he has and risks to him being incarcerated and specific medical needs that his mother needs attention to and support around in which he was providing daily support for her.

And so I'm very concerned -- given his mental health and his physical health and the role that he plays in his family, I'm very concerned about his continued detention.  And I'm asking that the Court release him and give us an opportunity to continue evaluating this case, reviewing the discovery, and letting Mr. DeBerardinis do that from the comfort of his home on the conditions that we had proposed originally.

THE COURT:  I would take all of the letters -- there are four letters -- and have them admitted for the purpose of this hearing as Defendant's Exhibit A as a packet.  Is that satisfactory?

MS. THRALL:  Yes.  And they're already on the docket,

Your Honor.

THE COURT:  Yes, I know, but I want them as an exhibit to this hearing.

MS. THRALL:  Thank you.

(Defendant Exhibit A received in evidence.)

THE COURT:  All right.

All right.  Does the government want to be heard in opposition?

MS. CUMMINGS:  Your Honor, the government maintains its position on detention given the defendant's extensive criminal history, the 13 restraining orders, and the many violations on his criminal record.  In the interests of protecting the community and the victims, we ask that the government -- or excuse me -- we ask that you, Your Honor, continue to detain the defendant.

THE COURT:  All right.  Well, as to the question of the medications, first of all, I have this letter from a doctor at the Brigham who mentions medications but doesn't tell me what the medications were.  So I have no way of knowing whether or not he is getting the medication that he was taking prior to his incarceration and what is being provided to him at Plymouth so I have no way of judging that.

MS. THRALL:  And, Your Honor, Mr. DeBerardinis's medications, I believe, are listed in the bail report.  And I can confer with Mr. DeBerardinis and report back to the Court

which ones are being provided and which ones are not.

THE COURT:  All right.  Well, it's one thing to have them in the bail report, but I would like to know from the prescribing doctor rather than --

MS. THRALL:  Sure.  We will follow up with the doctor.

THE COURT:  So I need to have that, and I need to know from the medical records at Plymouth, which you can obtain, what he is getting at Plymouth.

But based on everything that is before this Court at this time, I am not inclined to release the defendant.  I do think that he presents a danger to the community by clear and convincing evidence.  And I will go into further detail -- and I may change my mind when I see these medical records, but without the absolute documentation, the medical prescriptions he was taking at the time he was arrested, and under whose direction each one of those medications came from, I can't make a decision.  I'll give you the fastest hearing, as soon as you can provide me with the documentation.

All right.  So docket entry 17 remains under advisement.  And as soon as you have that information, we'll give you a prompt hearing, and we will see to it that Mr. DeBerardinis is available by Zoom for that hearing.

MS. THRALL:  Thank you, Your Honor.

THE COURT:  Anything else, Ms. Thrall?

MS. THRALL:  No, Your Honor.  I do need to confer with

Mr. DeBerardinis.  I think we need to sign a form.  I can fax things over to Plymouth.

THE COURT:  Okay.  You can have 10 or 15 minutes with him now before we go to our next hearing.

MS. THRALL:  Thank you.

THE COURT:  All right.  We stand in recess.  Please stay well and stay safe during the Thanksgiving holidays.

MS. THRALL:  Thank you.

MR. GARLAND:  Thank you, Your Honor.

THE COURT:  You're welcome.

(Recording ends at 1:43:06)

092

CERTIFICATE OF OFFICIAL REPORTER

I, Linda Walsh, Registered Professional Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the audio-recorded proceedings held in the above-entitled matter, to the best of my skill and ability.

Dated this 13th day of January, 2022.

/s/ Linda Walsh

Linda Walsh, RPR, CRR

Official Court Reporter

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,            )
                                    )
          Plaintiff,                 )
                                    )  Criminal Action
v.                                   )  No. 1:21-cr-10292-ADB-1
                                    )
STEPHEN M. DEBERARDINIS,             )
                                    )
          Defendant.                 )
                                    )



         BEFORE THE HONORABLE MARIANNE B. BOWLER
             UNITED STATES MAGISTRATE JUDGE


                     MOTION HEARING
                       Via Zoom


                  December 22, 2021
                     2:32 p.m.


       John J. Moakley United States Courthouse
                 One Courthouse Way
              Boston, Massachusetts 02210







                  Linda Walsh, RPR, CRR
                 Official Court Reporter
       John J. Moakley United States Courthouse
            One Courthouse Way, Room 5205
              Boston, Massachusetts 02210
                lwalshsteno@gmail.com

APPEARANCES:

On Behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    By: AUSA Scott Garland
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts 02210
    617-748-3290
    scott.garland@usdoj.gov


On Behalf of the Defendant:

    FEDERAL PUBLIC DEFENDER OFFICE
    By: Jessica P. Thrall, Esq.
    51 Sleeper Street, 5th Floor
    Boston, Massachusetts 02110
    617-223-8061
    jessica_thrall@fd.org

ALSO PRESENT:  Jennifer Daily, Probation




           Proceedings reported and produced
            by computer-aided stenography.

P R O C E E D I N G S

THE CLERK:  The United States District Court is now in session, the Honorable Marianne B. Bowler presiding.  Today's date is December 22nd, 2021, in the case of the United States versus Stephen DeBerardinis, Criminal Action Number 21-10292-ADB.

The parties are reminded that any photography, recording, or rebroadcasting of court proceedings may result in sanctions as deemed appropriate or necessary by the Court.

Will counsel please identify yourselves for the record, starting with the government.

MR. GARLAND:  Good afternoon, Your Honor.

Scott Garland on behalf of the United States.

THE COURT:  Thank you.

MS. THRALL:  Good afternoon, Your Honor.

Jessica Thrall on behalf of Stephen DeBerardinis, who is present with us on Zoom.

THE COURT:  Thank you.

Good afternoon, Mr. DeBerardinis.

THE DEFENDANT:  Good afternoon.

THE COURT:  I'm Magistrate Judge Bowler.  Can you see me and can you hear me?

THE DEFENDANT:  Yes.

THE COURT:  We're here for a hearing on your second motion for release, and you're appearing in Court today via

4

video link.

Let me begin by describing the arrangement that has been set up for this hearing.  Your lawyer, the prosecutor, the courtroom deputy, the court reporter, the probation officer, and the Court are all in different locations today.

If you have any trouble with either the audio or video connection; that is, if you cannot see or hear what's happening, please speak up immediately or wave your arm.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We'll stop the proceeding immediately and correct the technical problem.  And if you need something repeated, just let me know, and I will arrange for it.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.  Thank you.

THE COURT:  You're welcome.

And if you need to speak with your attorney, just raise your hand and speak up and let me know, and I will arrange for the two of you to speak privately.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  I also want you to know that the court reporter is making a record of this proceeding, and if we need a transcript, it can be prepared.

I want to explain something to you about why you are

097

appearing via video link today for this hearing.  You have the right to be physically present in open court for this hearing, but you can waive that right.

Before I ask you whether or not you intend to waive your right to be physically present, you should know the following:

Our normal procedure, until 22 months ago, was to have all defendants physically present in the courtroom for this type of hearing.  Today is December 22nd, 2021, and as I am sure you are aware, we are still in the midst of a pandemic caused by the coronavirus.  Since the outset of the pandemic, federal and state authorities have declared states of emergency.

And in the federal court, we're doing the best we can to maintain the safety and health of everyone.  If you were brought into the courthouse today, you might be transported in close quarters with other people, possibly exposing you to the virus.  Then in the courthouse you could be, again, in a cell in close quarters.  So we're trying to protect everyone from getting sick and passing the virus to other people, while at the same time we are trying to conduct proceedings like this in the safest possible manner for everyone involved.

To minimize the health risks, among other things, we are giving defendants the option of appearing via video link. At this point it is voluntary.  You do not have to appear by

video.  So I'm going to go through some questions with you to make sure that you understand your right to appear in person and to make sure that you understand you can waive that right.

Do you understand everything I have said up to this point?

THE DEFENDANT:  Yes, Your Honor.  Thank you.

THE COURT:  You're welcome.

Do you understand that you have the right to be physically present in court for this hearing?

THE DEFENDANT:  Yes.

THE COURT:  And have you discussed the fact that you're appearing at this hearing via video link with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that you have the right to consult privately with your attorney at any time during this hearing?  All you have to do is speak up or wave your hand and let me know, and I will arrange for the two of you to speak privately.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.  Thank you.

THE COURT:  You're welcome.

And do you understand that the courtroom is not closed?  It is still public.  So even though you are appearing by video link, your family members and other supporters have

the right to attend this hearing electronically.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you agree to waive your right to appear in person today and agree to appear by video?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.

THE DEFENDANT:  You're welcome.

THE COURT:  And, Ms. Thrall, have you discussed the waiver with your client, and is there any reason why I should not accept his waiver?

MS. THRALL:  No reason not to accept it, Your Honor. We're prepared to proceed by Zoom.

THE COURT:  Thank you.

I find that the defendant has knowingly and voluntarily waived his right to appear at this hearing in person.

I find that requiring the defendant to be present would jeopardize the public health and safety of those who would be present with the defendant during the court proceeding and during his transportation to and from the courthouse.

I further find that additional delay would jeopardize the interests of justice because it is necessary to conduct this hearing promptly to protect the constitutional and legal rights of the defendant.

I accept the defendant's waiver, and we will now proceed with the hearing.

We're here for a hearing on docket entry number 28, which is the defendant's second motion for release.  We have opposition, docket entry number 29.

So, Ms. Thrall, we'll hear you.

MS. THRALL:  Thank you, Your Honor.

These proceedings have sort of taken place in separate parts.  Beginning from Mr. DeBerardinis's initial appearance and arrest, we have been asking the Court to release him on a set of conditions that include residing with his mother, Shirley DeBerardinis, who is present on the Zoom right now and who I've been in at least weekly contact with since Mr. DeBerardinis's arrest, allow him to return to that home, and to have some conditions placed, specifically an ankle bracelet, and monitoring of any computers or potentially a requirement that he not have any access to the Internet at all.

I think the Court is fairly familiar with the options that the Probation Department has in terms of how they can secure devices that Mr. DeBerardinis would not have access to or they can monitor devices if the Court chooses that he should have access.

But despite that -- but despite those restrictions, Your Honor, we think that placing those restrictions on him will both provide the Court with comfort that there's no safety

101

issues or danger to the community, and that Mr. DeBerardinis can be trusted to return to court.  He is a lifelong resident of Massachusetts.  He has been living in his family home basically his whole life.  He is incredibly close with his mother, with other family members.

One of the people who wrote a letter in support of Mr. DeBerardinis, Keith Fowler, is also present on this Zoom, and there are -- Mr. Fowler in particular, but other people who have written on behalf of Mr. DeBerardinis, have a law enforcement background.  And these are people who have said, We understand what these charges are.  The charges are serious. But we know Mr. DeBerardinis, and we know that he can be trusted to appear in court and is not in any way a danger to the community.

Mr. DeBerardinis's fiancée, Lindsay, is present on the Zoom as well.  They parent two children together, her stepson and their own son together, Mario, who is going to turn one I think in two days.  I think he's a Christmas baby.  And Mr. DeBerardinis just wants to be home with his family.

We absolutely appreciate the seriousness of this case. It is alarming accusations that we take very, very seriously. But Mr. DeBerardinis has maintained his innocence since the moment of his arrest, and there are a lot of very good factors to suggest that he can be trusted to return.

And one of the things that I have said every time that

102

we have talked about this case, that I continue to believe is such a compelling factor, is that these allegations came in early January of 2020, and the government did not seek to arrest Mr. DeBerardinis until September, some eight, nine months later. And there were no issues. There were no safety concerns for the alleged victims. In that time frame, Mr. DeBerardinis didn't do anything. He didn't run, he didn't threaten anybody, nothing happened after the conduct that's alleged and the date of his arrest.

And I think that that really shows exactly what would happen if Mr. DeBerardinis was arrested now, which is nothing. He's going to go home. He's going to live with his family. He's going to come to court, and he's going to follow the rules. And we ask that you release him.

THE COURT: Mr. Garland?

MR. GARLAND: Your Honor, on numerous occasions Mr. DeBerardinis has been confronted with an abuse prevention order. I believe that 13 of those were granted against him. On numerous occasions he violated those orders and he was convicted of violations of the Abuse Prevention Act. I believe that there are six convictions for doing that.

In addition, Your Honor has before you some of the allegations from at least one of those cases that were just as shocking, and in fact perhaps even more shocking, than the allegations in this case because they were made against at

103

least one member of his family.

So, you know from the defendant's criminal history what happened when people complain to authorities that Mr. DeBerardinis is harassing them, stalking them or whatever. And he becomes aware of that, and then he violates those orders and has gotten convicted. That's the difference between what happened between January and September and September and now.

At this point the defendant knows who the victims are, knows that he has been in jail because of them, and will likely go on and reoffend, as he has done on so many occasions before.

The conditions that the defense proposes are basically to place him back exactly where he was with a couple of differences. One of those differences --

THE COURT: Do you want to talk to your lawyer, Mr. DeBerardinis?

THE DEFENDANT: Yes, for a second, Your Honor, if I could, please.

THE COURT: Certainly. We'll put you in a breakout room.

THE DEFENDANT: Thank you.

(Off the record from 2:44 to 2:46 p.m.)

THE COURT: All right. Resuming, Mr. Garland.

MR. GARLAND: Thank you, Your Honor.

So as I was saying before, the defense is proposing that he be returned to the environment in which he committed

not only this crime but all the other crimes he committed as well, with only two real changes in status.

The first would be that he would not have access to the Internet. Well, that would still give him access to the phone and allow him to call the victims. And second of all, the question is how could that actually be enforced given that he will be in a home that has other adults, who no doubt have access to cell phones, to computers, to tablets, to phones as well, and there are other adults who go in and out of the house as well. This is not an environment in which he is likely to prosper. He has not prospered before there.

The second is the agreement to be on a bracelet. And it is true that being on a bracelet gives the Court perhaps a little more notice if he decides to go off the premises to go do something, but a bracelet is not a fail-safe. It does not actually prevent people from going out of their house usually. It only gives notice when that happens. The defendant has shown over and over again that these sort of conditions are things that he does not obey when he's outside of jail.

And for those and the other reasons that have been stated before, we believe that he should be detained. And in just closing, I just ask that the Court, once again, take a look at the threats he made in this very case. Those threats were made when the victim said that they were going to law enforcement. Well, that's exactly what happened, and now he

knows that they did that.

And it's unclear -- not that it's unclear.  It is clear from his prior record what his response is when he knows that somebody has gone to the police about him.

Thank you, Your Honor.

MS. THRALL:  Your Honor, if I could just respond quickly?

THE COURT:  Certainly.

MS. THRALL:  One of the things that Mr. DeBerardinis asked me to raise when we were in the breakout room is he does not know who these victims are.  He is denying that he sent these threats.  And the materials about their identity I think have been protected from him on purpose, appropriately, and he does not know who they are.

And I think the issue that I have is when we talk about the environment where this crime is alleged to have occurred, the environment is the Internet, and we control through Probation people's access to computers all the time. It is part of how Probation supervises people in the 21st century, and it can be done here for Mr. DeBerardinis.

THE COURT:  All right.  I would like to be in a breakout room with Probation, please.

THE CLERK:  It's possible when I open the room, Jessica, you and your client may be asked to join.

MS. THRALL:  What should I do?

THE CLERK:  It's up to you.  You can ignore it or if you want to speak with your client, you can.

MS. THRALL:  And I can go back with him, and it would be just him and I.

(Recess taken from 2:49 to 2:56 p.m.)

THE COURT:  All right.  Do we have everyone?  I think we do.

I have carefully worked through this case, this is not the first occasion, but I have given additional consideration in light of docket entry 28 and I have conferred carefully each time with Probation.  I've reviewed the defendant's criminal record, which spans over two decades.  I don't think I have ever seen a record with 13 abuse prevention orders, and at least six of them where there have been violations, as well as numerous, numerous violations of probation and default.

The conduct in this case is serious, and this Court continues to believe that the defendant presents a danger to the community and that there are no conditions or combination of conditions by clear and convincing evidence that can be established to prevent the danger to the community.

In addition, based on the numerous number of defaults, while the Court does not find that the defendant is a risk of flight, I think there is definite risk by a clear preponderance of the evidence that the defendant may not appear as required. And for that reason, docket entry 28 is denied.

107

To all, stay well and stay safe.

MS. THRALL:  Thank you.

MR. GARLAND:  Thank you, Your Honor.

(Adjourned at 2:58 p.m.)

CERTIFICATE OF OFFICIAL REPORTER


          I, Linda Walsh, Registered Professional Reporter

and Certified Realtime Reporter, in and for the United States

District Court for the District of Massachusetts, do hereby

certify that the foregoing transcript is a true and correct

transcript of the stenographically reported proceedings held in

the above-entitled matter, to the best of my skill and ability.

          Dated this 6th day of January, 2022.




              /s/ Linda Walsh

              Linda Walsh, RPR, CRR

              Official Court Reporter

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

———————————————————————

UNITED STATES OF AMERICA,

                Plaintiff,     Criminal Action
                                No. 21-cr-10292-ADB-1

v.

                                January 27, 2022

STEPHEN M. DEBERARDINIS,

                Defendant.    Pages 1 to 30

———————————————————————

TRANSCRIPT OF DETENTION HEARING

BEFORE THE HONORABLE ALLISON D. BURROUGHS

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JOAN M. DALY, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 5507
Boston, Massachusetts  02210
joanmdaly62@gmail.com

**APPEARANCES:**


**FOR THE GOVERNMENT:**

**Torey B. Cummings**
**United States Attorney's Office MA**
**1 Courthouse Way**
**Suite 9200**
**Boston, MA 02210**
**(617) 748-3281**
**Email: Torey.cummings@usdoj.gov**

Scott Garland
United States Attorney's Office
John J. Moakley U.S. Courthouse
Suite 9200
Boston, MA 02210
617-748-3290
Email: Scott.garland@usdoj.gov


**FOR THE DEFENDANT:**

Jessica P. Thrall
Federal Public Defender Office
51 Sleeper Street, 5th Flr.
Boston, MA 02110
(617) 223-8061
Email: Jessica_Thrall@fd.org

P R O C E E D I N G S

(The following proceedings were held by Zoom Videoconference before the Honorable Allison D. Burroughs, United States District Judge, United States District Court, District of Massachusetts, on January 27, 2022.

The defendant, Stephen M. Deberardinis, is present with counsel.  The Assistant U.S. Attorney is present.)

THE CLERK:  This is criminal matter 21-10292, United States versus Stephen DeBerardinis.  Will counsel identify themselves for the record.

MS. CUMMINGS:  Good morning, Your Honor.  Torey Cummings on behalf of the United States.

MR. GARLAND:  Good morning, Your Honor.  Scott Garland on behalf of the United States.

MS. THRALL:  Good morning, Your Honor.  Jessica Thrall on behalf of Steve Deberardinis.  Mr. DeBerardinis is on Zoom, and we are prepared to consent to proceed with this hearing via Zoom.

THE COURT:  I am going to colloquy him anyway just so we have a clean record if you don't object to that.

MS. THRALL:  No.

EXAMINATION

BY THE COURT:

Q.   Mr. DeBerardinis, we are obviously doing this on Zoom because of the pandemic.  You have the right to have a

112

proceeding like this done in person. If you want it done in person, we can make arrangements for that. But you also have the right to waive your right to have it done in person, and we can do it on Zoom. I'm happy to let you waive the right to be here in person, but I want to make sure that you understand that before I do that you don't have any questions about the process. Okay?

A. Yes, Your Honor. Thank you.

Q. The Zoom environment is much like the courtroom as we can make it. So you can see we have a court reporter on so everything is being taken down just like we were in the courtroom. My courtroom Deputy Karen Folan is on. She calls the case and it's all run just like we were actually in the courtroom.

Ms. Daily is here from the U.S. Probation. There's obviously two attorneys from the government and your own counsel, Ms. Thrall. If at any point during these proceedings you want to have a private discussion with Ms. Thrall, you just let us know. We'll put you back in a breakout session. If you are having trouble understanding me, if you need me to repeat a question or you need a break, whatever it is, you let me know. We can arrange for all of that, too.

And finally the courtroom would be open and your family and friends and the public would have access to the

proceeding. And you see from all the people on, we have that same kind of public access when we're on Zoom. Do you have any questions about how we're going to do this by Zoom?

A.  No.  I do not, Your Honor.  Thank you.

Q.  Are you willing to go forward by Zoom?

A.  Yes, Your Honor.

THE COURT:  I'm going to find that he's knowingly and voluntarily waiving his right to be present, and that it's in the interest of justice to do this remotely.  In fact, it would be contrary to the interest of justice to require this to be done in person during a pandemic because of the health risks and the delay.

Ms. Thrall, is that colloquy adequate for you?

MS. THRALL:  Yes.  Thank you, Your Honor.

THE COURT:  Ms. Cummings, anything else you want me to add?

MS. CUMMINGS:  No.  Thank you, Your Honor.

THE COURT:  We'll go ahead and proceed by Zoom. Have you guys talked about how you want to do this or what you were thinking?  I have all the exhibits.  I have Judge Bowler's transcripts.  I have the letters that have been submitted on behalf of the defendant.  And again the exhibits that were submitted by the government and by the defense.

Are we thinking about calling witnesses or are you proceeding on argument?  What's the plan here?

MS. CUMMINGS:  Your Honor, the government intends to proceed on argument and is happy to go first, happy to go second, as you see fit.  I have a couple administrative issues if you don't mind.

THE COURT:  Let me ask Ms. Thrall.  Ms. Thrall, are you intending on calling witnesses or proceeding by argument?

MS. THRALL:  No witnesses, Your Honor.  We are intending to proceeding by argument, and we have no objection to the government proceeding in that manner.

THE COURT:  Ms. Thrall, I'm going to give you the choice.  Do you want to go first or do you want them to go first?

MS. THRALL:  I'd like them to go first.

THE COURT:  Ms. Cummings, you're going to go first.  But what are your administrative issues?

MS. CUMMINGS:  At least one of the victims is observing today's proceedings under a pseudonym.  And also I just wanted to raise with Your Honor the government wanted to file a response yesterday, received sort of unanticipated defense filing and an unanticipated decision of the Magistrate Judge.  In the process of preparing for this hearing and handling other matters, we were unable to get something on file.

THE COURT:  It's fine.  It's fine.  Stop.  You can go ahead and file something.  What kind of timeframe are you

thinking about?

MS. CUMMINGS:  I'm happy to do it within the next few days, Your Honor.

THE COURT:  That's fine.  Why don't we say like within a week.

MS. CUMMINGS:  Of course.  Thank you, Your Honor.

THE COURT:  Ms. Thrall, if you want to respond to their response, let me know.  Otherwise we'll start digging in.  Okay?

MS. THRALL:  Thank you, Your Honor.  With respect to the exhibits, we only have an objection to Exhibit No. 8. And I'm happy to be heard on that whenever the time is appropriate.

THE COURT:  Hold on.  Let me see which one is number 8.

MS. THRALL:  It's the news article.

THE COURT:  I take it that's a hearsay objection.

MS. THRALL:  It's a hearsay objection.  It's a relevance objection.  It's editorialized.  It's not coming from any source related to the case.  I don't think it's an appropriate document for the Court to rely on in making its decision.

MS. CUMMINGS:  Your Honor, the Federal Rules of Evidence regarding hearsay don't apply at a detention hearing.  This document is relevant to the defendant

8

threatening someone else.  It's a document that is in the public eye.  It's publicly available on the Internet.  I submit to the Court it's at least as relevant as the character reference letters that the defendant has submitted.

THE COURT:  Okay.  Go ahead, Ms. Cummings.

MS. CUMMINGS:  Your Honor, this Court should affirm the Magistrate Judge's decision and continue to detain the defendant.  While this hearing is de novo, I encourage the Court to give strong deference to the Magistrate Judge's careful and thoroughly recent decision.  Magistrate Judge Bowler held three detention hearings.  She carefully considered the arguments in those hearings as well as the defendant's background, his criminal history, multiple letters from his family and friends, his medical information, and a recommendation by pretrial services.

After considering all of that, Judge Bowler was in her words, "convinced that the defendant presents a serious risk of serious danger to the community and cannot be released."  Judge Bowler also found a risk that the defendant will obstruct justice and fail to comply with the Court's orders.

In a 2004 decision, *United States v. Simone*, 317 F. Supp. 2d 38, Judge Wolf discussed the District Court's level of deference to a Magistrate Judge's detention decision.  In that case he wrote, "In reviewing the Magistrate Judge's

117

detention orders, the Court must undertake an independent review giving her decision such deference as the care and consideration manifested by the Magistrate Judge warrant. Judge Bowler's obvious care and consideration to her decision to detain this defendant warrants this Court's deference."

I would like to give this Court a brief overview of the facts alleged in the indictment. I am sure Your Honor is familiar with those facts, but I want to highlight some of them briefly to illustrate their relevance to the detention decision.

This all started when the victims posted to Facebook a photograph and some text announcing their engagement to be married. The photo clearly showed that the couple is a white woman and a black man. On January 6, 2021, the defendant harassed and threatened the victims on Facebook.

I'm going to read from the indictment some of the harassment and threats that the defendant sent. I'm not going to use the "N word" in Court today, but please know when I say "N word", the defendant actually used the full word when he sent these threats and harassment.

The defendant first wrote to the victims, "You're an N word fucker fucking dirty ass white trash." The defendant sent two additional messages with similar content, and the victims told the defendant that they were going to

report him to law enforcement. Once the victims said that, the defendant then started threatening them with violence, rape, mutilation, and death. He threatened the victims with a picture of brass knuckles surrounded by large all capital letters that said "Snitches Get Stitches".

Paragraph 13 of the indictment shows that picture. The defendant then sent the threats, "Read up more on me. LOL. You will see how me and my crew burn N word alive. And white whores like you, well, get rape and killed. Then we cut off body parts and mail them to your family. LOL."

A grand jury indicted the defendant for sending threats to injure another person in interstate commerce and obstructing justice through threats and harassment. The defendant faces up to 20 years in prison. And our preliminary calculations show a guideline range of 77 to 96 months before acceptance of responsibility and 56 to 71 months after.

I'm now going to turn to discuss the strength of the evidence against the defendant under Section 3142(g)2. Your Honor, the government's case against this defendant is strong. There are multiple pieces of evidence that confirm it was the defendant who threatened the victims. The Facebook account that sent the threats is in the defendant's name. The account's profile photo is a picture of the defendant.

For the past two years, the account has posted numerous photos of the defendant, many of which appear to be selfies.  The account is linked to phone numbers and IP addresses that appear linked to or used by the defendant.  The account contains numerous other messages of violence and racism that are consistent with the threats for which the defendant was indicted.

I ask the Court to please look at Exhibit 1 which contains excerpts from the defendant's Facebook account.  I draw Your Honor's attention to the defendant's use of a form of the N word in the second message on that exhibit, the Confederate flag on the second page, and other slurs against black people in this exhibit.  These are just some of the many similar messages of racial epithets and bias throughout the defendant's Facebook account.

Exhibit 1 is relevant not only to the strength of the evidence, but it also goes to the defendant's likelihood of retaliating against witnesses.  I ask the Court to please turn to the government's Exhibit 6.  The first page of Exhibit 6 shows photos of the defendant from a pool cam video that depict him wearing a t-shirt that on the back says "Snitches Get Stitches" with a picture of brass knuckles. It's very similar to the picture and text he threatened the victims with.

On the bottom of that page are snapshots of the

defendant's face taken around the same time as the shot of his back so that you can tell it's him wearing the brass knuckle t-shirt.

The second page of this exhibit is another excerpt from the defendant's Facebook account showing again a t-shirt saying "Snitches Get Stitches" with a picture of brass knuckles. All of this evidence shows the strength of the government's case and further supports the Grand Jury's findings that it was the defendant who threatened these victims, not somebody who took over his account.

I'm turning now to the evidence that the defendant is dangerous and likely to retaliate against the victims. First, as Judge Bowler noted in her decision, the defendant has a significant criminal history. Exhibit 7 is the defendant's criminal record. We redacted all personal information except the defendant's name.

The defendant's BOP shows that the defendant has been convicted of at least 64 separate charges. He committed the instant crimes while on pretrial release from two different state courts. He has committed crimes related to lack of veracity. In at least 18 cases he violated probation. In her decision Judge Bowler wrote, "The defendant has continuously committed crimes for over two decades. Many of the defendant's crimes have involved violence. His proclivity for violent behavior has resulted

in 13 restraining orders including two lifetime orders. One of the victims stated that she lives in fear of the defendant every day."

Judge Bowler also stated in the defendant's first detention hearing that she didn't think she'd ever seen a person with that many restraining orders before. The defendant's file provides convincing evidence that the defendant is dangerous and has a long history of failing to comply with court orders. In addition, the defendant's history of possessing weapons also indicates that he's too dangerous to be released.

I turn Your Honor's attention, please, to Exhibit 3. This exhibit contains photos of weapons that the defendant posted to his Facebook account. Pictured in this exhibit are some of the very weapons he threatened to hurt the victims with including brass knuckles and knives that could be used to cut off their body parts.

I turn the Court's attention, please, to Exhibit 4. In a search of the defendant's home, law enforcement found a number of weapons as detailed in this exhibit. The exhibit notes the FBI found over 70 knives, 22 brass knuckles and a number of other weapons. Exhibits 3 and 4 speak to the defendant's dangerousness, the strength of the evidence, and his likelihood of retaliation against victims.

I direct the Court's attention, please, to Exhibit

5. This exhibit is yet another example of the defendant's dangerousness. It also speaks to his likelihood of retaliation against the victims and his inability to comply with court orders. This exhibit is a transcript from a hearing in Suffolk County related to a restraining order against the defendant. During this hearing the plaintiff in that case testified under oath that the defendant came to her house with a gun and later told her and a very close female relative of the defendant's that they should be gang raped and kill themselves.

The trial judge found the plaintiff credible, the defendant not credible, and he gave the plaintiffs a lifetime restraining order. I direct the Court's attention specifically in Exhibit 5 to pages 5 and 6, 9, 24, and 27 through 29.

THE COURT: 5, 6, 9, 24, 27 to 29.

MS. CUMMINGS: That's correct, Your Honor.

THE COURT: Okay.

MS. CUMMINGS: Thank you. I am going to now turn specifically to the evidence that the defendant poses a risk of obstructing justice under Section 3142(f)2B. Your Honor, the defendant's record shows a clear pattern. This defendant harasses and threatens people. They complain to the authorities about him. Courts order him to stay away, and then the defendant violates those court orders. That's the

very thing he's charged with doing in this case.

After the victims said they'd report him to law enforcement, he threatens them with stitches, burning them alive, cutting off their body parts and mailing them to their families.  Indeed Judge Bowler held that the retaliatory language in the defendant's Facebook post suggest that there is a substantial risk of obstruction of justice.  Even though the victims' names have been protected in this case, Judge Bowler found that the defendant knew the identity of the couple.

The victims' names are in the defendant's Facebook account, and he has a much stronger reason to retaliate against them now because he knows they reported him to law enforcement.  The defendant has argued that the government did not arrest the defendant until September 2021, and that the defendant did not go after the victims or threaten anyone else in the meantime.

As this Court knows, investigations take time.  As I just mentioned, there is even more reason now for the defendant to retaliate against these victims because he knows they reported him, and that report resulted in these serious charges.

And the defendant, Your Honor, was not on good behavior during the government's investigation.  In fact, he did threaten someone else.  I'd like to turn your attention,

please, to Exhibit 8. Exhibit 8 is an online article from Universal Hub. The article shows a photo of the defendant at a rally. At that rally the defendant tried to punch people who were protesting, and he was restrained by the police. A Universal Hub reporter published an earlier article about that rally describing the defendant's behavior. And after that article was published, the defendant sent threats to that reporter. The threats came by email. The reporter then wrote about those threats in the article that is Exhibit 8.

Just like the defendant threatened the victims in this case and then laughed with HA HA HA HA, in all capital letters, the defendant threatened the Universal Hub reporter, "Come for you hard. HA HA HA HA HA." The government had been investigating these threats to the reporter. The emails appear to come from an account associated with the defendant and his business.

I will note, Your Honor, we did not present this information about the defendant threatening the reporter to Judge Bowler but understand that this hearing is de novo. Your Honor, any statement that the defendant was on good behavior before he was arrested is simply not accurate. He tried to engage in violence and threatened somebody else.

I want to turn now to the defendant's likelihood of compliance with court orders. First, the government does not expect the defendant to flee to another jurisdiction, and we

acknowledge he has a family who loves him.  But even with that support, the defendant has a long history of failing to comply with court orders.  Judge Bowler held that although the defendant is a lifelong resident of Boston, his criminal history is replete with defaults, and he cannot be expected to appear as required.

I direct Your Honor's attention to Exhibit 2, which provides additional evidence that the defendant is unlikely to comply with court orders.  This exhibit is an excerpt from defendant's Facebook account in which he states at the top of the second page that he "doesn't lie unless it's to the law."

THE DEFENDANT:  Can I speak?

THE COURT:  Hold on, Ms. Cummings.  The defendant, I am not going to let you speak.  But if you want to meet privately with your attorney, I can do that for you.

THE DEFENDANT:  Yes, please.

THE COURT:  Let's move them to a break-out room, please.

(Break-out session held.)

THE COURT:  Are you ready to resume the proceeding?

MS. THRALL:  Yes.  Thank you.

THE COURT:  Go ahead, Ms. Cummings.

MS. CUMMINGS:  Thank you, Your Honor.  The defendant has asked this Court to release him with conditions, but there are no conditions that reasonably

assure this defendant's appearance and the safety of the community.  The defendant has been living in the same home with many of the same family members for his entire life during which time he earned the extensive criminal record that this Court has reviewed.  And he now asks to be returned to that same home with the same family members.

It's not a suitable environment, Your Honor.  A 2010 case from the District of Utah is instructive.  It is United States v. Simpson, case number 08-7332010-WL, 129793, and that's District of Utah, January 8, 2010.  In the *Simpson* case, the defendant told the court that he helped support his parents and that his family was disadvantaged by his pretrial detention because his parents were in declining health.  The court found that this unfortunate consequence of the defendant's detention on his family did not have a material bearing on whether there were conditions of release that will assure the safety of the community.

The defendant's proposed conditions in this case are not sufficient to protect the victims and the community, nor are they sufficient to ensure his appearance before this Court.  There are a number of adults living in and visiting his home.  They likely have cell phones, computers, tablets. They could easily give the defendant access to those things. It's impossible for probation to monitor that.  An ankle bracelet would not stop the defendant from using the

127

Internet.  It doesn't stop the defendant from leaving his home or going outside the vicinity.  It simply alerts probation when that happens.

And importantly, Your Honor, for this defendant conditions of release have not worked in the past.  This Court should not send him home to the same place where he's committed so many crimes and violated so many court orders in the past.  The defense has made no new arguments in its briefing.  The Magistrate Judge already heard and very carefully considered all of those arguments, and she ordered him detained.  This Court should affirm that decision.  Thank you.

THE COURT:  Ms. Thrall?

MS. THRALL:  Thank you, Your Honor.  I think that Mr. DeBerardinis is not at the desk anymore.

THE COURT:  Why is his video black, Karen?  Is that on their end?

THE CLERK:  Yes.

THE COURT:  Are you good to go, Mr. DeBerardinis?  You're muted.

THE DEFENDANT:  Yes.  There was a technical difficulty.

THE COURT:  All right.  Did you miss anything?

THE DEFENDANT:  I missed it all.  Yes, Your Honor, I'm sorry.

THE COURT:  What was the last thing you heard?

THE DEFENDANT:  It pretty much cut off once we came back from the break-out room.

THE COURT:  Ms. Cummings, you're going to have to pick up where you left off after the break-out room and do it again.

MS. CUMMINGS:  Yes, Your Honor.  One moment, please.

MS. THRALL:  Sorry I didn't notice sooner.

MS. CUMMINGS:  Apologies.  I didn't either.

The defendant has asked this Court to release him with conditions, but there are no conditions that reasonably assure the defendant's appearance and the safety of the community.  The defendant has been living in the same home with many of the same family members his entire life during which time he earned the extensive criminal record that this Court has reviewed.

He now asks to be returned to that same home with the same family members.  It is not a suitable environment. A 2010 case from the District of Utah is instructive.  It is *United States v. Simpson*, case number 08733, January 8, 2010. In the *Simpson* case the defendant told the Court that he helped support his parents, and that his family was disadvantaged because his parents were in declining health. In that case the Court found that the unfortunate consequence

of the defendant's detention on his family did not have a material bearing on whether there were conditions of release that will assure the safety of the community.

The defendant's proposed conditions in this case, nor are there any conditions that are sufficient to protect the victims and the community or ensure his appearance before this Court.  There are a number of adults living in and visiting the home that the defendant proposes to return to. The adults have cell phones, computers, tablets, could easily give the defendant access to those things.  It's impossible for probation to monitor that.

An ankle bracelet would not stop the defendant from using the Internet.  And importantly for this defendant the record shows this conditions of release have not worked in the past.  This Court should not send him home to the same place where he's committed so many crimes and violated so many court orders.

The defense makes no new arguments in its briefing. The Magistrate Judge has already heard and carefully considered all of those arguments, and she ordered him detained.  This Court should affirm that decision.  Thank you.

THE COURT:  Go ahead, Ms. Thrall.

MS. THRALL:  Thank you, Your Honor.  We are asking that the Court override Judge Bowler's decision to detain

Mr. DeBerardinis and release him on the conditions that we have proposed to the Court.  In our memorandum that we filed yesterday, I summarized for the Court our proposal and what I feel are our most important arguments for why Mr. DeBerardinis should be released and does not pose a danger.

From our perspective, releasing Mr. DeBerardinis now puts him, the witnesses in the case, and the government in exactly the same position that Mr. DeBerardinis was in in February of 2021, March, April, May, June, July, August, and most of September when the government having already received these allegations chose not to arrest Mr. DeBerardinis.  That is tremendously strong evidence that the government cannot prove that Mr. DeBerardinis is a danger to the community.  If he was a danger to the community, he could have been arrested the day after these allegations were made.

I have raised this argument in now our fourth detention hearing.  And the government has never explained the delay other than to say investigations take time.  And that's certainly true.  But if any witness, any person was in the type of danger that the government now claims, there is no reason why Mr. DeBerardinis could not have been arrested back then, and they didn't do it.

THE COURT:  Ms. Thrall, do you know when he found out that the victims had gone to law enforcement?  Was that

prior to his arrest?

MS. THRALL: Your Honor, my understanding is -- Well, first of all, if you accept that Mr. DeBerardinis is the person who is communicating with the witnesses on January 6, the person receiving those messages is told on January 6, we're reporting this to the police.

THE COURT: But then the threats are made. And one could conclude that the threats squelched the reporting. Your argument, which I understand and you've made very consistently, is that he was out all that time between the conduct and the arrest. The government is saying that he is more of a danger now because he actually knows that they went to law enforcement.

So I'm wondering if during that time period between the conduct and the arrest if he knew that or if he did not know that until he was arrested.

MS. THRALL: My understanding is that Mr. DeBerardinis learned about all of this the morning of his arrest.

THE COURT: Okay.

MS. THRALL: And I understand that the way in which that cuts against my argument, Your Honor. But the statements in these messages is not ambivalent about whether or not the witnesses, the victims, are going to report this to police. It's quite clear. They say we're going to report

this to the police.  And if the person who is hearing that is going to have any change in their behavior, that is certainly pretty clear that they're going to the police.

And I reference this in my memorandum, the witnesses themselves were confused about why nothing happened for eight and a half months.  And I think that this is just an incredibly important factor for the Court to consider when you also combine it with the fact that there are three current or former law enforcement professionals who are on record saying that Mr. DeBerardinis is not a danger.

Two of those people wrote letters in support of Mr. DeBerardinis that we provided to the Court in the earlier detention hearings.  One of those people is on the Zoom presently, Mr. Fowler.  And the third, Your Honor, which I think is really incredibly important evidence, is that one of the task force officers who knows Mr. DeBerardinis is present the morning of his arrest for the debriefing and the plan of raiding his home tells the government and the other officers that Mr. DeBerardinis has a mental health issue and isn't dangerous.

This is a person who is there to arrest him making these statements, which really, to the extent that the Court may take the letters from the other law enforcement professionals with a grain of salt because of their personal relationships with Mr. DeBerardinis, I think it all comes

133

together to show that there is not a danger here. I want to talk about the mental health component a little bit because we have provided a list of Mr. DeBerardinis' medications, letters from his doctor, and I think that there is this piece of what we're proposing which is comprehensive mental health treatment for him.

He has participated in the West Roxbury District Court's Mental Health Court before. One of the exhibits to our previous detention hearings is an email confirming that the District Attorney's Office for West Roxbury, the people who have been responsible for prosecuting Mr. DeBerardinis many times, that office is presently recommending that he return to the Mental Health Court.

This is a small court, Your Honor. This is a court where Mr. DeBerardinis has been many times. This is a court where Mr. DeBerardinis knows the judges really well. They have a relationship with him because the Mental Health Court is like our CARE court. It's very personal and they get to know one and other very very well.

And the West Roxbury DA's office knowing about this new case, knowing that Mr. DeBerardinis is detained on this case, are still making that recommendation. I think of this as also incredibly compelling when, again, this is the same time period, spring of 2021, so after these threats are alleged to have been made by Mr. DeBerardinis, while the

134

government is taking its time with this investigation, Mr. DeBerardinis actually goes to trial in the West Roxbury District Court and is found not guilty at a bench trial by the judge.

I put this docket in as an exhibit for this hearing because I felt that the CORI didn't adequately depict what happened with the case.  Mr. DeBerardinis was released on personal recognizance in the case if 2019.  He appears on many occasions, you can see from the docket I think sometimes in person, sometimes on Zoom.  And then shows up, not just shows up, shows up for his trial and is found not guilty. All during this time period where the government has him under investigation for this case.

This dovetails into our argument that not only is he not a danger, but he's going to appear when he's supposed to appear for court.  He shows up on a trial day where not a jury of six is listening to the case but a judge, who frankly in this kind of small court knows Mr. DeBerardinis, knows his record, and finds him not guilty.  It's incredibly important -- it's an incredibly important sort of picture into what would happen if this Court were to release Mr. DeBerardinis.

The case is from 2019.  That's when he's released on a personal recognizance, but he's appearing now, right in the months leading up to his arrest in this case.

Mr. DeBerardinis' pretrial detention here has had a dramatic impact on his family. His mother Shirley, his fiancée Lindsay, they're both on the Zoom. They have been absolutely personally, physically, economically, impacted and devastated by Stephen's pretrial detention. His mom relies on him to help her in the house, to help her with car repairs, to help her with home repairs, to help her keep her appointments organized, and she is having an incredibly hard time with him detained.

His fiancée Lindsay runs her own small business. She cleans homes. And now because Mr. DeBerardinis is detained and can't be present to care for their newborn with her, she can't go to work as often. She doesn't have back up child care, and she is incredibly stressed financially and emotionally by his detention.

We believe that this package of conditions that we are proposing takes into consideration a lot of the government's concerns. Mr. DeBerardinis, if he were to be released, has to have no access to computers and the Internet. This is something that I have explained many many times to his family. They are completely prepared to support him in this. They understand the importance of it given these allegations.

Any devices that are in the home can have a password that Mr. DeBerardinis is not allowed to access.

This is the same kind of system that we use for people who have other computer-related offenses, and it is very successful.  The probation department has the ability to track these things, and they do it every day.  With that and electronic monitoring and mental healthcare, all of the concerns that are raised by the government can be alleviated.

Mr. DeBerardinis has proven that while he has a significant record, the most recent evidence that we have is good, strong evidence that he is a person who is going to come to court, collaborate with his lawyers, wants very much to get back to the Mental Health Court in West Roxbury which he found incredibly successful in the past.  And the fact that the District Attorney's Office there is recommending it really speaks to how successful he has been there and how successful he can be there in the future.

And where we have law enforcement professionals who are in agreement with our position that Mr. DeBerardinis is not a danger; that he should be released; that people are going to pay attention to his situation and help him through this, this is exactly the kind of situation where he should be released.  And we're asking that the Court do that.

THE COURT:  Okay.  I need to take this under advisement to give the government a chance to respond to Ms. Thrall's submissions from yesterday and give me a chance to read through the exhibits, especially the longer one, more

carefully. Is there anything else for today, Ms. Cummings?

MS. CUMMINGS: No, Your Honor.

THE COURT: Ms. Thrall?

MS. THRALL: No, Your Honor. I think I need to make sure that I have moved into evidence the additional exhibits. I had moved previous exhibits in, but I want to make sure -- and Ms. Folan can probably just mark our new exhibits that we filed yesterday.

THE COURT: We'll take care of marking all the exhibits. I understand that government Exhibit 8 is contested. We'll rule on that as well.

MS. THRALL: Thank you.

THE COURT: And I see Ms. Daily is on from probation. Anything from probation today?

THE PROBATION OFFICER: No, Your Honor. Thank you.

THE COURT: We're under advisement. Ms. Cummings, you have a week. Ms. Thrall, you'll let me know if you want to respond subsequent to that. In the meantime the case is recessed. Okay? Thanks, everyone.

(Court recessed at 10:58 a.m.)

138

- - - - - - - - - - - -

CERTIFICATION


        I certify that the foregoing is a correct

transcript of the record of proceedings in the above-entitled

matter to the best of my skill and ability.




/s/ Joan M. Daly                    February 25, 2022


_____               _____

Joan M. Daly, RMR, CRR              Date
Official Court Reporter

| | |
|---|---|
| **From:** | Michael Thaler |
| **To:** | Jessica Thrall |
| **Subject:** | Fwd: Comm v. Debarardinis (1906CR000660) |
| **Date:** | Thursday, October 7, 2021 8:48:14 AM |

See below.

---------- Forwarded message ---------
From: **Jones, Alexander (SUF)** <alexander.jones@state.ma.us>
Date: Thu, Oct 7, 2021 at 7:12 AM
Subject: RE: Comm v. Debarardinis (1906CR000660)
To: Michael Thaler <mike@thaler.law>

Dear Attorney Thaler:

Yes, we agree to that.  Of course, as I mentioned on the phone, I cannot guarantee that the Court would accept anyone into Recovery With Justice, but I will join in the recommendation.

Sincerely,

Alex Jones

---

**From:** Michael Thaler <mike@thaler.law>
**Sent:** Wednesday, October 6, 2021 5:29 PM
**To:** Jones, Alexander (SUF) <Alexander.Jones@mass.gov>
**Subject:** Comm v. Debarardinis (1906CR000660)

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi Alex,

I am hoping to speak to my client on Friday via the jurislink zoom application.  To confirm, you would be agreeable to the Assault case resolving with my client receiving a probationary period of 1 year and the conditions that he enter the Recovery for Justice mental health court and have some form of stay away / no abuse from the alleged victim.  Thank you.

Mike

140

--

Michael Thaler

Law Office of Michael Thaler, Esq.

858 Washington Street, Suite 103

Dedham, MA 02026

Phone: 781-366-0806

Fax: 781-281-9937

Email: mike@thaler.law

**CONFIDENTIALITY NOTICE:  THIS MESSAGE, INCLUDING ANY ATTACHMENTS, IS CONFIDENTIAL, MAY BE LEGALLY PRIVILEGED AND IS PROTECTED FROM DISCLOSURE.  IT IS SOLELY INTENDED FOR THE RECIPIENTS TO WHICH IT IS ADDRESSED.  If you are not the intended recipient, your use, distribution, dissemination, copying or printing of this message or the information contained herein (including any attachments) for any purpose is strictly prohibited.  If you have received this communication in error, please delete this message and notify the sender so that we may correct our records.**

**To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used, for the purpose of avoiding U.S. tax penalties.**

--
Michael Thaler
Law Office of Michael Thaler, Esq.
858 Washington Street, Suite 103
Dedham, MA 02026
Phone: 781-366-0806
Fax: 781-281-9937
Email: mike@thaler.law

**CONFIDENTIALITY NOTICE:  THIS MESSAGE, INCLUDING ANY ATTACHMENTS, IS CONFIDENTIAL, MAY BE LEGALLY PRIVILEGED AND IS PROTECTED FROM DISCLOSURE.  IT IS SOLELY INTENDED FOR THE RECIPIENTS TO WHICH IT IS ADDRESSED.  If you are not the intended recipient, your use, distribution, dissemination, copying or printing of this message or the information contained herein (including any attachments) for any purpose is strictly prohibited.  If you have received this communication in error, please delete this message and notify the sender so that we may correct our records.**

To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used, for the purpose of avoiding U.S. tax penalties.

## 1706CR000556 Commonwealth vs. Deberardinis, Stephen Mario AKA Deberardinis, Stephen

- Case Type:
- Criminal
- Case Status:
- Closed
- File Date
- 05/08/2017
- DCM Track:
- 
- Initiating Action:
- ABUSE PREVENTION ORDER, VIOLATE c209A §7
- Status Date:
- 08/07/2018
- Case Judge:
- 
- Next Event:
- 

| All Information | Party | Charge | Event | Docket | Disposition |

### Docket Information

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 05/08/2017 | Criminal Complaint issued from Electronic Application:<br>Originating Court: BMC West Roxbury<br>Case Number: 1706AC000749-AR<br>Receiving Court: BMC West Roxbury<br>; | | | |
| 05/08/2017 | Event Scheduled<br>Event: Arraignment<br>Date: 05/08/2017  Time: 09:00 AM<br>Result: Held-Arraignment/58A Hearing | | | |
| 05/08/2017 | Event Resulted<br>The following event: Arraignment scheduled for 05/08/2017 09:00 AM has been resulted as follows:<br>Result: Held-Arraignment/58A Hearing | | | |
| 05/08/2017 | Event Scheduled<br>Event: Pretrial Hearing<br>Date: 06/13/2017  Time: 09:00 AM | | | |
| 05/08/2017 | Appearance filed<br>On this date Helene Andrea Aylair Tomlinson, Esq. added as Appointed - Indigent Defendant for Defendant Stephen M Deberardinis<br>Appearance filed  for the purpose of Case in Chief by Judge Hon. Kathleen E Coffey. | | 1 | |
| 05/08/2017 | Appearance filed<br>On this date Helene Andrea Aylair Tomlinson, Esq. added as Appointed - Indigent Defendant for Defendant Stephen M Deberardinis | | 3 | |
| 05/08/2017 | Appearance filed<br>On this date . CPCS Boston Office added as Appointed - Indigent Defendant for Defendant Stephen M Deberardinis<br>Appearance filed  for the purpose of Case in Chief by Judge Hon. Kathleen E Coffey. | | 4 | |
| 05/09/2017 | Appearance filed<br>On this date Helene Andrea Aylair Tomlinson, Esq. dismissed/withdrawn as Appointed - Indigent Defendant for Defendant Stephen M Deberardinis | | 2 | |
| 05/09/2017 | Legal Counsel Fee Waived. | | | |
| 05/16/2017 | Event Scheduled<br>Event: Default Removal Hearing<br>Date: 05/16/2017  Time: 09:00 AM<br>Result: Held - Default Removed | | | |

143

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 05/16/2017 | Event Resulted<br>The following event: Default Removal Hearing scheduled for 05/16/2017 09:00 AM has been resulted as follows:<br>Result: Held - Default Removed | | | |
| 05/16/2017 | Event Resulted<br>The following event: RJP Hearing scheduled for 06/13/2017 11:00 AM has been resulted as follows:<br>Result: Brought Forward | | | |
| 05/16/2017 | Event Scheduled<br>Event: Pretrial Hearing<br>Date: 06/13/2017  Time: 09:00 AM<br>Result: Brought Forward | | | |
| 05/16/2017 | ..<br><br>Mittimus Without Bail (DOCKET FORM)<br>Sent On:  05/16/2017 13:01:40 | | | |
| 05/16/2017 | Defendant is ordered committed without bail because DEFENDANT'S BAIL HAS BEEN REVOKED (276 s. 58) to Suffolk County Jail returnable for 06/13/2017 09:00 AM Pretrial Hearing; mittimus issued.<br><br>Court location of next event (if not this court):<br>Further Orders: | | | |
| 06/12/2017 | Event Resulted<br>The following event: Pretrial Hearing scheduled for 06/13/2017 09:00 AM has been resulted as follows:<br>Result: Brought Forward | | | |
| 06/12/2017 | Event Scheduled<br>Event: Pretrial Hearing<br>Date: 06/21/2017  Time: 09:00 AM<br>Result: Event Continued | | | |
| 06/12/2017 | Defendant is ordered committed without bail because DEFENDANT'S BAIL HAS BEEN REVOKED (276 s. 58) to Suffolk County Jail returnable for 06/21/2017 09:00 AM Pretrial Hearing; mittimus issued.<br><br>Court location of next event (if not this court):<br>Further Orders:<br>expires 8/11/2017 | | | |
| 06/12/2017 | ..<br><br>Mittimus Without Bail (DOCKET FORM)<br>Sent On:  06/12/2017 11:21:30 | | | |
| 06/21/2017 | Event Resulted<br>The following event: Pretrial Hearing scheduled for 06/21/2017 09:00 AM has been resulted as follows:<br>Result: Event Continued | | | |
| 06/21/2017 | Event Scheduled<br>Event: Pretrial Hearing<br>Date: 07/06/2017  Time: 09:00 AM<br>Result: Event Continued | | | |
| 06/21/2017 | Defendant is ordered committed without bail because DEFENDANT'S BAIL HAS BEEN REVOKED (276 s. 58) to Suffolk County Jail returnable for 07/06/2017 09:00 AM Pretrial Hearing; mittimus issued.<br><br>Court location of next event (if not this court):<br>Further Orders:<br>revocation expires 8/11/2017 | | | |
| 06/21/2017 | ..<br><br>Mittimus Without Bail (DOCKET FORM)<br>Sent On:  06/21/2017 11:45:46 | | | |
| 07/06/2017 | Event Resulted<br>The following event: Pretrial Hearing scheduled for 07/06/2017 09:00 AM has been resulted as follows:<br>Result: Event Continued | | | |

144

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 07/06/2017 | Event Scheduled<br>Event: Pretrial Hearing<br>Date: 07/31/2017  Time: 09:00 AM<br>Result: Held-PT | | | |
| 07/06/2017 | Defendant is ordered committed without bail because DEFENDANT'S BAIL HAS BEEN REVOKED (276 s. 58) to Suffolk County Jail returnable for 07/31/2017 09:00 AM Pretrial Hearing; mittimus issued.<br><br>Court location of next event (if not this court):<br>Further Orders:<br>Bail revocation expires 8/11/2017 | | | |
| 07/06/2017 | ..<br><br>Mittimus Without Bail (DOCKET FORM)<br>Sent On:  07/06/2017 11:37:04 | | | |
| 07/31/2017 | Event Resulted<br>The following event: Pretrial Hearing scheduled for 07/31/2017 09:00 AM has been resulted as follows:<br>Result: Held-PT<br>Reason: Both Parties Request | | | |
| 07/31/2017 | Charges Disposed::<br>Charge #1 ABUSE PREVENTION ORDER, VIOLATE c209A §7<br>　　On: 07/31/2017　　Judge: Hon. David J Breen<br>　　By: Guilty Plea　　Filed - Guilty plea | | | |
| 07/31/2017 | Special Conditions of release in addition to bail or recognizance imposed:Stay away from victim/witness, No Contact with victim/witness, Compliance with present treatment plan, Evaluation for MH or Substance Abuse | | | |
| 08/29/2017 | Event Resulted<br>The following event: RJP Hearing scheduled for 08/29/2017 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 08/30/2017 | Probation requests case be advanced for issuance of warrant due to the following reasons: Violation of probation<br>8/30/17　DENIED　COFFEY, J | | | |
| 08/30/2017 | Event Resulted<br>The following event: Probation exparte review hear scheduled for 08/30/2017 10:30 AM has been resulted as follows:<br>Result: Held - NO Probation Violation Found | | | |
| 09/01/2017 | Probation violation notice filed. | | 5 | |
| 09/05/2017 | Event Resulted<br>The following event: Probation Violation First Appearance scheduled for 09/05/2017 09:00 AM has been resulted as follows:<br>Result: Defendant defaulted-FI to Appear | | | |
| 09/05/2017 | No arrest warrant to issue unless defendant before court or further order of court entered. | | | |
| 09/15/2017 | Event Resulted<br>The following event: Probation Violation First Appearance scheduled for 09/15/2017 09:00 AM has been resulted as follows:<br>Result: Held | | | |
| 09/15/2017 | Appearance filed<br>On this date Craig Scott Havel, Esq. added as Appointed - Indigent Defendant for Defendant Stephen Mario Deberardinis<br>Appearance filed  for the purpose of Probation Violation Hearing by Judge Hon. Jonathan R Tynes. | | 6 | |
| 09/15/2017 | Legal Counsel Fee Waived. | | | |
| 09/15/2017 | Event Resulted<br>The following event: RJP Hearing scheduled for 09/26/2017 11:00 AM has been resulted as follows:<br>Result: Event Cancelled<br>Reason: Brought forward | | | |
| 09/15/2017 | Habeas Corpus for prosecution issued to Norfolk County Correctional Center returnable for 10/16/2017 09:00 AM Probation Violation Hearing:<br>Further Orders: | | | |
| 09/19/2017 | Event Resulted<br>The following event: RJP Hearing scheduled for 09/26/2017 11:00 AM has been resulted as follows:<br>Result: Event Cancelled<br>Reason: Both Parties Request | | | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 10/16/2017 | Event Resulted<br>Judge: Driscoll, Hon. Mary Ann<br>The following event: Probation Violation Hearing scheduled for 10/16/2017 09:00 AM has been resulted as follows:<br>Result: Held - NO Probation Violation Found | | | |
| 10/16/2017 | No violation of probation found after hearing.<br>Judge: Driscoll, Hon. Mary Ann | | 7 | |
| 10/17/2017 | Event Resulted<br>Judge: Grant, Hon. Lisa<br>The following event: RJP Hearing scheduled for 10/17/2017 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 10/24/2017 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 10/24/2017 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 11/07/2017 | Event Resulted<br>Judge: Driscoll, Hon. Mary Ann<br>The following event: RJP Hearing scheduled for 11/07/2017 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 11/28/2017 | Event Resulted<br>Judge: Driscoll, Hon. Mary Ann<br>The following event: RJP Hearing scheduled for 11/28/2017 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 01/16/2018 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 01/16/2018 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 02/13/2018 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 02/13/2018 11:00 AM has been resulted as follows:<br>Result: Defendant defaulted-FI to Appear<br>Reason: Defendant Not Present | | | |
| 02/13/2018 | No arrest warrant to issue unless defendant before court or further order of court entered.<br>Judge: Coffey, Hon. Kathleen E | | | |
| 02/20/2018 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 02/20/2018 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 03/06/2018 | Event Resulted<br>Judge: Breen, Hon. David J<br>The following event: RJP Hearing scheduled for 03/06/2018 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 04/17/2018 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 04/17/2018 11:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Both Parties Request | | | |
| 05/04/2018 | Probation requests case be advanced for issuance of warrant due to the following reasons: VOP 5/4/18 DENIED - Breen, J.<br><br>Judge: Breen, Hon. David J | | | |
| 05/04/2018 | Event Resulted<br>Judge: Breen, Hon. David J<br>The following event: Probation exparte review hear scheduled for 05/04/2018 03:00 PM has been resulted as follows:<br>Result: Held as scheduled. | | | |
| 05/07/2018 | Probation violation notice and notice of hearing filed. | | 8 | |

146

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 05/15/2018 | Event Resulted<br>Judge: Coffey, Hon. Kathleen E<br>The following event: RJP Hearing scheduled for 05/15/2018 11:00 AM has been resulted as follows:<br>Result: Event Cancelled<br>Reason: On Order of the Court | | | |
| 05/15/2018 | Appearance filed<br>On this date Michael P Thaler, Esq. added as Appointed - Indigent Defendant for Defendant Stephen Mario Deberardinis<br>Appearance filed  for the purpose of Probation Violation Hearing by Judge Hon. Kathleen E Coffey. | | 9 | |
| 06/18/2018 | Event Resulted:  Probation Violation Hearing scheduled on:<br>    06/18/2018 09:00 AM<br>Has been: Held - NO Probation Violation Found<br>Hon. Mary Ann Driscoll, Presiding<br>Appeared:<br>Staff: | | | |
| 06/18/2018 | No violation of probation found after hearing.<br>Judge: Driscoll, Hon. Mary Ann | | 10 | |
| 07/10/2018 | Event Resulted:  RJP Hearing scheduled on:<br>    07/10/2018 11:00 AM<br>Has been: Rescheduled      For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding<br>Appeared:<br>Staff: | | | |
| 07/31/2018 | Event Resulted:  Probation Until scheduled on:<br>    07/31/2018 09:00 AM<br>Has been: Reschedule of Hearing      For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding<br>Appeared:<br>Staff: | | | |
| 07/31/2018 | Event Resulted:  RJP Hearing scheduled on:<br>    07/31/2018 11:00 AM<br>Has been: Rescheduled      For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding<br>Appeared:<br>Staff: | | | |
| 08/07/2018 | Event Resulted:  Probation Until scheduled on:<br>    08/07/2018 09:00 AM<br>Has been: Event Cancelled      For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding<br>Appeared:<br>Staff: | | | |
| 08/07/2018 | Event Resulted:  RJP Hearing scheduled on:<br>    08/07/2018 11:00 AM<br>Has been: Held      For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding<br>Appeared:<br>Staff: | | | |

147

## 1906CR000660 Commonwealth vs. Deberardinis, Stephen Mario

- Case Type:
- Criminal
- Case Status:
- Open
- File Date
- 06/12/2019
- DCM Track:
-
- Initiating Action:
- ASSAULT c265 §13A(a)
- Status Date:
- 06/03/2021
- Case Judge:
-
- Next Event:
- 10/19/2021

| All Information | Party | Charge | Event | Docket | Disposition |

### Docket Information

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 06/12/2019 | Criminal Complaint issued from Electronic Application:<br>Originating Court: BMC West Roxbury<br>Case Number: 1906AC000454-SU<br>Receiving Court: BMC West Roxbury<br>; | | | |
| 06/12/2019 | Complaint issued with a summons. | | | |
| 07/18/2019 | Event Resulted:  Arraignment scheduled on:<br>    07/18/2019 09:00 AM<br>Has been: Defendant defaulted-FI to Appear<br>Hon. Paul Treseler, Presiding | | | |
| 07/18/2019 | Default Warrant ordered to issue.<br>Judge: Treseler, Hon. Paul | | 1 | |
| 07/18/2019 | Warrant Issued:<br>Straight Warrant issued on 07/18/2019 for Deberardinis, Stephen Mario | | | |
| 07/23/2019 | Warrant recalled:<br>Straight Warrant cancelled on 07/23/2019 for Deberardinis, Stephen Mario | | | |
| 07/23/2019 | Event Resulted:  Arraignment scheduled on:<br>    07/23/2019 10:00 AM<br>Has been: Held - Personal Recog. Release<br>Hon. Debra Shopteese, Presiding | | | |
| 07/23/2019 | Defendant arraigned before Court, advised of right to counsel.<br>Judge: Shopteese, Hon. Debra | | 2 | |
| 07/23/2019 | Plea of Not Guilty entered on all charges.<br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Bail revocation warning (276/58) given to the defendant<br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Released on Personal Recognizance<br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Event Resulted:  Default Removal Hearing scheduled on:<br>    07/23/2019 10:00 AM<br>Has been: Held - Default Removed - CR<br>Hon. Debra Shopteese, Presiding | | | |
| 07/23/2019 | Defendant before Court on Warrant, Warrant recalled as served.<br>Judge: Shopteese, Hon. Debra | | | |

148

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 07/23/2019 | Warrant recalled:<br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Appearance filed<br>On this date Michael P Thaler, Esq. added as Appointed - Indigent Defendant for Defendant Stephen Mario Deberardinis<br>Appearance filed for the purpose of Case in Chief by Judge Hon. Debra Shopteese. | | 3 | |
| 07/23/2019 | Special Conditions of release in addition to bail or recognizance imposed:Stay away from victim/witness, No Contact with victim/witness<br><br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Event Resulted: Motion Hearing (CR) scheduled on:<br>07/23/2019 09:00 AM<br>Has been: Held - Motion allowed<br>Hon. Debra Shopteese, Presiding | | | |
| 07/23/2019 | Motion ALLOWED.<br>Judge: Shopteese, Hon. Debra | | | |
| 07/23/2019 | Commonwealth's motion for PROTECTIVE ORDER filed with the following, if any, supporting documents:<br>07/23/19 ALLOWED SHOPTEESE,J<br><br>Judge: Shopteese, Hon. Debra | | 4 | |
| 09/12/2019 | Event Resulted: Pretrial Hearing scheduled on:<br>09/12/2019 09:00 AM<br>Has been: Held<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 09/12/2019 | Event Resulted: Motion Hearing (CR) scheduled on:<br>09/12/2019 09:00 AM<br>Has been: Held - Motion allowed<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 09/12/2019 | Motion ALLOWED.<br>Judge: Driscoll, Hon. Mary Ann | | | |
| 09/12/2019 | Defendant's motion for exparte approval of funds $500 filed with the following, if any, supporting documents:<br>09/12/19 ALLOWED DRISCOLL,J<br><br>Judge: Driscoll, Hon. Mary Ann | | 5 | |
| 10/25/2019 | Event Resulted: Discovery Compliance & Jury Election scheduled on:<br>10/25/2019 09:00 AM<br>Has been: Reschedule of Hearing For the following reason: Both Parties Request<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 12/03/2019 | Event Resulted: Discovery Compliance & Jury Election scheduled on:<br>12/03/2019 09:00 AM<br>Has been: Reschedule of Hearing For the following reason: Both Parties Request<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 01/13/2020 | Defendant's motion to reschedule or continue scheduled court hearing filed with the following, if any, supporting documents:<br>01/13/20 ALLOWED COFFEY,J | | 6 | |
| 01/13/2020 | Event Resulted: Motion Hearing (CR) scheduled on:<br>01/13/2020 09:30 AM<br>Has been: Held - Motion allowed<br>Hon. Kathleen E Coffey, Presiding | | | |
| 01/13/2020 | Motion ALLOWED.<br>Judge: Coffey, Hon. Kathleen E | | | |
| 01/13/2020 | Event Resulted: Discovery Compliance & Jury Election scheduled on:<br>01/28/2020 09:00 AM<br>Has been: Reschedule of Hearing For the following reason: Defendant's request without objection<br>Hon. Kathleen E Coffey, Presiding | | | |
| 02/13/2020 | Event Resulted: Discovery Compliance & Jury Election scheduled on:<br>02/13/2020 09:00 AM<br>Has been: Event Cancelled For the following reason: Both Parties Request<br>Hon. Mary Ann Driscoll, Presiding | | | |

149

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 03/23/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Pretrial Hearing scheduled on:<br>  03/23/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: On Order of the Court<br>Hon. Kathleen E Coffey, Presiding | | | |
| 05/12/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Pretrial Hearing scheduled on:<br>  05/14/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: On Order of the Court<br>Hon. Kathleen E Coffey, Presiding | | | |
| 05/12/2020 | Court hearing has been changed due to COVID emergency. New hearing date and time is 07/27/2020 09:00 AM Pretrial Hearing to be held in a virtual court session. Participation in a virtual court session, will require participants to use meeting access code number 1-877-92708978 and enter meeting password 5104910. Notices sent.<br><br>Judge: Coffey, Hon. Kathleen E | | | |
| 07/27/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Pretrial Hearing scheduled on:<br>  07/27/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding | | | |
| 08/17/2020 | Event Resulted:  Discovery Compliance & Jury Election scheduled on:<br>  08/17/2020 09:00 AM<br>Has been: Held      For the following reason: COVID Emergency-Hearing held by telephone<br>Hon. Michael C Bolden, Presiding | | | |
| 08/17/2020 | Court hearing scheduled on 08/17/2020 09:00 AM Discovery Compliance & Jury Election conducted by Telephone Conference All parties via teleconference.<br><br>Judge: Bolden, Hon. Michael C | | | |
| 10/02/2020 | Event Resulted:  Bench Trial (CR) scheduled on:<br>  10/02/2020 09:00 AM<br>Has been: Not Held<br>Hon. Catherine Ham, Presiding | | | |
| 10/02/2020 | Misc Entry:  All parties present in courtroom.  Comm reports ready for trial. | | | |
| 03/17/2021 | Event Resulted:  Jury Trial (CR) scheduled on:<br>  03/18/2021 09:00 AM<br>Has been: Event Cancelled       For the following reason: On Order of the Court<br>Hon. Kathleen E Coffey, Presiding | | | |
| 03/18/2021 | Event Resulted:  Trial Readiness Conference scheduled on:<br>  03/18/2021 09:00 AM<br>Has been: Reschedule of Hearing       For the following reason: COVID Emergency-Hearing held by video<br>Hon. Catherine Ham, Presiding | | | |
| 04/02/2021 | Defendant's motion for Bill of Particulars (Rule 13b) filed with the following, if any, supporting documents:  certif. of service on opposing party | | 7 | |
| 04/15/2021 | Event Resulted:  Hearing to Review Status scheduled on:<br>  04/15/2021 09:00 AM<br>Has been: Held<br>Hon. Catherine Ham, Presiding | | | |
| 04/15/2021 | Event Resulted:  Motion Hearing (CR) scheduled on:<br>  04/15/2021 09:00 AM<br>Has been: Held - Motion allowed<br>Hon. Catherine Ham, Presiding | | | |
| 04/15/2021 | Motion ALLOWED.<br>Judge: Ham, Hon. Catherine | | | |
| 04/15/2021 | Misc Entry:  All parties present in court | | | |
| 04/15/2021 | Commonwealth's motion to Amend count 1 and 2 to Assault filed with the following, if any, supporting documents:<br>  04/15/21   ALLOWED OVER DEFT OBJECTION  HAM,J<br><br>Judge: Ham, Hon. Catherine | | 8 | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 04/15/2021 | Defendant's motion for Bill of Particulars (Rule 13b) filed with the following, if any, supporting documents:<br>04/15/21  ALLOWED  HAM,J<br><br>Judge: Ham, Hon. Catherine | | 9 | |
| 04/15/2021 | Stay of court hearing due to Covid-19 vacated - Court hearing scheduled on OPEN case. | | | |
| 04/22/2021 | Commonwealth's bill of particulars filed. | | | |
| 06/03/2021 | Case to be assigned to Jury Trial under Covid 19 plan - Defendant not in Cusotdy:  Trial Readiness Conference scheduled on:<br>    06/03/2021 09:00 AM<br>Has been: Held - JT Assign - Covid - Non-Custody      For the following reason: COVID Emergency-Hearing held by video<br>Hon. Paul Treseler, Presiding | | | |
| 06/03/2021 | Event Scheduled<br>Event: Jury Trial (CR)<br>Date: 10/19/2021  Time: 09:00 AM | | | |
| 06/03/2021 | Court hearing scheduled on 06/03/2021 09:00 AM Trial Readiness Conference conducted by ZOOM Conference Deft and atty Thaler via zoom   ADA in court.<br><br>Judge: Treseler, Hon. Paul | | | |
| 06/03/2021 | Misc Entry:<br>Discovery completed<br><br>Judge: Treseler, Hon. Paul | | | |
| 09/21/2021 | Commonwealth's motion to, for - admit registry of motor vehicle records<br>- admission of defendant's statements filed with the following, if any, supporting documents: | | 10 | |
| 09/22/2021 | Commonwealth's witness list filed | | | |

151



FILED
IN CLERKS OFFICE

Dear Judge Bowler,

2021 NOV -8 AM 10:09

My fiancé Stephen Deberardinis, ██████████ case number 21-cr-10292, was detained on September 29th suddenly. Neither I, nor our children knew that September 28th would be the last time he would hold our newborn, or lay with my 7-year-old to bed. Since September 29th, everyday has been devastating to Stephen, myself, my two children, his mother, his nieces, his sister, and friends. Our newborn, ██████ is his pride and joy. The way Stephen looks at ██████ is enough to melt even the strongest steel. When Stephen saw him on zoom a couple of weeks ago, he lost it. He started bawling his eyes out. I have never seen a man cry before, and Stephen broke down completely. Stephen is devastated to be missing ██████ first holiday. He is a very sentimental family man. He really is a sweet soul. That is one reason I have been with him for almost 8 years and chose to marry him. ██████ was born on Christmas Eve. He was a huge blessing to us. Stephen and I were making so many plans for his big first Christmas birthday. The thought of Stephen missing that is tearing his and our families' hearts apart. With Stephen not getting his medication where he is right now, this is especially ruining him. He will never get these days back of his baby. If while all of this is going on, he could be home, it would be so important and beneficial for his mental health. We would all keep him home, supply him with his medication, and keep him out of trouble. Stephen has a bad past, but we are keeping it in the past. He has been my only support in all aspects. Emotionally and financially. I am now losing money because Stephen would watch ██████ while I went to work to clean houses. I am losing hope, faith, and my mental health as well. The thought of raising my two children with no father or anyone, is frightening. The thought of baby ██████ suddenly not seeing his daddy anymore or cuddling with him to sleep when I could not get him to sleep is heart wrenching. ██████ face lights up when I show him pictures of Stephen.  He loves him so much. When he is on the phone, ██████ hears his voice and tries to grab the phone to look at him, but he is not there. I've lost a very important piece to my life. Stephen is also the man of the house at home. He helped his mother with things around the house including lawn care, plowing, bills, and repairs. Stephens step father recently passed away in February and Stephen was the only strength of the house. His mother is so worried she won't be around much longer to see Stephen. If Stephen was home during all of this, it would be such a blessing from God. My 7-year-old that misses him dearly, cries in his bed every night because Stephen is not there. He is not there to watch T.V to bed with him. He's not there to give him his favorite hair cut that I have no idea how to do. He cannot laugh with him like he always has. He loved Stephen picking him up from school as well. He thinks he sees Stephen's truck, but it's never him. He is now missing school. He would never miss school when Stephen was home. My 7-year old's father left us when my son was under 1 month old and Stephen took us under his wing with no hesitation. He has truly been the backbone of my family. As I mentioned before, I would keep Stephen home, give him his medication, and keep him out of trouble, if he could be home during all of this. He truly is suffering and I can hear it in his voice. I know he wants nothing more than to be with ██████ nd ██████ and to spend ██████ first birthday and Christmas with him.

Thank you so much for your time.

-Lindsey Walsh and Family

152

Case: 22-1123   Document: 00117870779   Page: 157   Date Filed: 05/02/2022   Entry ID: 6492869

21-cr-10292-ADB   Document 15   Filed 11/08/21   Pag

Lindsey Walsh
2 Stimson St
West Roxbury Ma, 02132

BOSTON MA  020
3 NOV 2021  PM 7  L

United States district court of Massachusetts
office of the clerk
1 courthouse way
Boston Ma, 02210

02210-302599

153



**Beth Israel Deaconess HealthCare®**
*Milton Group*

*A Primary Care Practice of*
Beth Israel Deaconess Medical Center  ⬛ HARVARD MEDICAL SCHOOL TEACHING HOSPITAL

100 Highland Street
Suite 223
Milton, MA 02186
P: (617) 696-5030
F: (617) 698-4702

Date: 11/05/2021

Shirley Deberardinis

⬛⬛⬛⬛

RE: Shirley Deberardinis, ⬛⬛⬛

To Whom It May Concern:

The above named patient, Shirley Deberadinis, is a long term patient of my practice.  She is under my care for multiple medical problems including Chronic Obstructive Pulmonary Disease (COPD) and Hypertension (HTN).
It would benefit Mrs. Deberadinis greatly if her son were allowed to return home to help her not only financially but with Activities of Daily Living (ADL's) as well.
Please do not hesitate to contact my office with any questions or if further information is needed.

Sincerely,

Electronically Signed by: JOHN LOONEY, MD

*[signature: John Looney MD]*

154

November 05, 2021

From: David Langill

RE: Stephen DeBerardinis

Greetings,

     My name is David Langill and I'm writing this letter in reference to the personal character of Stephen DeBerardinis.

     I have known Stephen for several years. During those years, Stephen and I have become friends. Regularly, we would speak on the phone and see each other at least once a week.

     Prior to knowing Stephen and for nearly eight years, I was a police officer. Amongst other qualities, I like to believe that I'm a good judgement of character. I pride myself with keeping a circle of friends who are a positive addition to their communities plus live their lives with strong moral values.

     I am aware that sometimes people, myself included, may make poor decisions and mistakes. I personally think that even when someone may make a poor decision, that does not necessarily mean that person is inherently bad or a threat to the public.

     Being friends with Stephen, spending time with him, and directly seeing how he interacts with his family and others, I do not feel that Stephen is a threat to the public. Stephen is a good father and supports his family.

     If anyone would like to further discuss Stephen, please do not hesitate to contact me. Thank you.

Respectfully,

David Langill

November 8, 2021

Re:  Stephen DeBerardinis

Dear Judge Bowler:

My name is Keith Fowler, I am a retired police officer in California.  Stephen DeBerardinis is my cousin.

Stephen and I grew up together in Dedham, MA until I moved to California, but stayed in contact and would spend time together when visiting for holidays and summers.

While I am aware of Stephen's criminal record and the mistakes he has made, I have never experienced him making any kind of racial slurs or physically assaulting any person.

Stephen has always been close and loyal to his family and friends.  I've watched him be a good father to his stepson and newborn.  Stephen has always been very close to his mother, but really stepped up and took on the responsibility of his mother's health issues and household responsibilities after the passing of his stepfather.

I personally will always be grateful to Stephen for helping me take care of my ailing parents, who lived in Dedham, when I could not be there due to living in California.

I don't feel that Stephen is a threat to the public.  If I lived in Dedham, I would have no problem having Stephen live with me and my family.  With my experience in law enforcement, I feel Stephen would benefit from getting mental health treatment.

If you have any questions, please do not hesitate to contact me.


Respectfully,


Keith Fowler

156

# Stephen M Deberardinis

11/16/2021  Letter (Out)
MRN: 00692285

Description: 45 year old male  Provider: Rahul Gupta, MD  Department: Bwp Psychiatry Out Fh

## Letters

Letter on 11/16/2021 by GUPTA, RAHUL M.D. [196969] Status: Sent

**BRIGHAM HEALTH**
**BWH** **BRIGHAM AND WOMEN'S**
Faulkner Hospital

BWH Psychiatry Outpatient
1153 CENTRE ST
BOSTON MA 02130
Dept Phone #: 617-983-7474
Dept Fax #: 617-983-7455

November 16, 2021

Stephen M. Deberardinis

Patient:     **Stephen M Deberardinis**

To Whom it May Concern:

Stephen Deberardinis is under my care at Brigham and Women's Faulkner Hospital. His diagnosis is Bipolar Disorder, ADHD Unspecified.

He has been in my care since 4/1/2019 and has been consistent in follow up and consistent with his medications. During the course of his treatment with me consistency with his medications has helped manage his psychiatric condition and he has generally done well with the same.

I was informed today by his family that he is currently incarcerated. This letter is being written to advocate that consistency with his medications is important for management of his mental health condition. In our prior meetings Stephen has informed me about inconsistencies with his medications during prior incarcerations. Inconsistency in his medication and lack of ongoing psychiatric treatment are likely to impact his mental heath condition negatively.

Please feel free to contact me for any further questions and/or clarifications.

Sincerely,

Rahul Gupta, MD

## Communication Routing History

| Recipient | Method | Sent by | Date Sent | Routed to |
|---|---|---|---|---|
| Stephen M. Deberardinis | Patient Gateway | Rahul Gupta, MD [196969] Letter from Rahul Gupta, MD created on 11/16/2021 | 11/16/2021 | Not routed |

157

Deberardinis, Stephen M (MRN 00692285) DOB: 03/03/1976

Encounter Date: 11/23/2021

Letter by Rahul Gupta, MD on 11/23/2021



BRIGHAM AND WOMEN'S
Faulkner Hospital

BWH Psychiatry Outpatient
1153 CENTRE ST
BOSTON MA 02130
Dept Phone #: 617-983-7474
Dept Fax #: 617-983-7455

November 23, 2021

Stephen M. Deberardinis

Patient:     **Stephen M Deberardinis**
Date of Birth: ▮▮▮▮▮▮

To Whom it May Concern:

Stephen Deberardinis is under my care at Brigham and Women's Faulkner Hospital.
His diagnosis is Bipolar Disorder, ADHD Unspecified. This letter was requested to verify his
current psychiatric medications.

His medications are
- Bupropion XL 150mg daily
- Adderall XR 30mg every mornings and Adderall 20mg ever afternooon
- Carbamezapine 200mg twice a day
- Trazodone 150mg PO night as needed for insomnia

He has been on this medication regimen since Mar 2020, when we had made the most recent
adjustment.
Please feel free to contact me for any further questions and/or clarifications.

Sincerely,

*Rahul Gupta* MD.
Rahul Gupta, MD

158

Page 1 of 1

| | |
|---|---|
| **From:** | Jill Sayward |
| **To:** | Jessica Thrall |
| **Subject:** | Re: FW: [EXTERNAL EMAIL]Message from "MedicalCopier" |
| **Date:** | Wednesday, December 1, 2021 1:05:54 PM |

Correct

Jill Sayward, L.I.C.S.W.
Special Management Clinical Specialist
Correctional Psychiatric Services

Plymouth County Correctional Facility

508 830 6200 ext. 504

jsayward@cpsmh.org

On Wed, Dec 1, 2021 at 1:04 PM Jessica Thrall <Jessica_Thrall@fd.org> wrote:

Hi – I am going to report to the judge the following, I just want to make sure this sounds accurate:

1. PCCF has offered Citalopram as a substitute for Wellbutrin. Mr. DeBerardinis has declined it because of the side effects (hives, rash)
2. PCCF has offered Hydroxyzine aka Vistaril as a substitute for Trazadone. Mr. DeBerardinis has declined it because of the side effects (same)
3. PCCF will not offer Adderall ever.
4. PCCF has provided Carbomezapine which Mr. DeBerardinis is taking

**From:** Jill Sayward <jsayward@cpsmh.org>
**Sent:** Wednesday, December 1, 2021 11:58 AM
**To:** Jessica Thrall <Jessica_Thrall@fd.org>
**Subject:** Re: FW: [EXTERNAL EMAIL]Message from "MedicalCopier"

Hi: So in regards to the last two pages. The places where the medications just stop mid-date mean when the medication was discontinued.

In regards to medication substitutions

Citalopram was substituted for Wellubtrin-treats depression/anxiety

Hydroxyzine (or Vistaril) was substituted for Trazodone- sleep

Thanks,

Jill

Jill Sayward, L.I.C.S.W.

Special Management Clinical Specialist

Correctional Psychiatric Services

Plymouth County Correctional Facility

508 830 6200 ext. 504

jsayward@cpsmh.org

On Wed, Dec 1, 2021 at 11:16 AM Jessica Thrall <Jessica_Thrall@fd.org> wrote:

> -----Original Message-----
> From: Pierre, Adius <apierre@pcsdma.org>
> Sent: Tuesday, November 30, 2021 10:32 AM
> To: Jessica Thrall <Jessica_Thrall@fd.org>
> Cc: Pierre, Hilaire <hpierre@pcsdma.org>; Rowan, Kimberly <krowan@pcsdma.org>;
> Pokorny, Linda <lpokorny@pcsdma.org>; Brooks, Kendra <kbrooks@pcsdma.org>
> Subject: FW: [EXTERNAL EMAIL]Message from "MedicalCopier"
>
> Good morning Jessica,
>
> Please find enclosed the medical records you have requested on behalf of Mr. Stephen
> DeBerardinis.

Regards,

Adius

To the Honorable Judge Miss: Allison Burroughs

FILED
IN CLERKS OFFICE

2022 JAN -3

U.S. DISTRICT COURT
DISTRICT OF

RE: United States Vs. Stephen DeBerardinis
Docket No: 21-CR-10292 ADB

December, 29 2021

Dear Honorable Burroughs,
My Name is Stephen DeBerardinis.
I'm A 45 year old who has
lived in Dedham, MA with my
mother in the Same house, My whole
life.
As I come before You for An
appeal on me being detained.

Honorable Burroughs, I understand
I have made Several Poor Choices
in my life. If I could turn
my life around, I would. I
have A New born Son. He is A
Christmas baby. He is also
the life of my eye's. He
means to world to me And I
Should be there for him like
A MAN.

162

②

Your Honor, There are medications that I was taking that I am now not getting while in here.

I have my mom who is Also Not well who I was taking Care of. My dad PASSed Away this year due to Covid.

I am please asking if you Please Honorable Burroughs would Allow me GPS monitor/ House Arrest. Allow me to go home And be with my New Son And to take CAre of my mom. I can promise that I will follow & Obcay Any order the Court Set's for me. I know there are ~~the~~ A lot of $defults on my record. Them defulats are a result to my address. I live on the line of Hyde park And Dedham. When Courts would Send me Notice's, they would

163

③

Send them to Dedham. I
would never receive them in
the mail. The way my home
is, we pay taxes to
Both Dedham and Boston.
Dedham being my residents
address and Hyde Park being my
mailing address. The courts can
check with the RMV.

Again your Honorable Burroughs,
please allow me to go
home so I can be with
my new son and so I
can take care of my mom
and get back on my
medications that the jail
does NOT provide.

I hope you really consider
this letter your Honor and
Also consider that I
Am being true & honest.

Thank you,
Respectfuly Submited



Case: 22-1123    Document: 00117870779    Page: 169    Date Filed: 05/02/2022    Entry ID: 6492869

165

Case: 22-1123   Document: 00117870779   Page: 170   Date Filed: 05/02/2022   Entry ID: 6492869



at Pictures. It is truly heartbreaking.
All of our lives just changed with no
warning. I am having such a hard time with
everything. I am losing money, my accounts
are in the negative, and I have no support.
Stephen would watch ███ when I would
go to work. I clean houses and I am
the business owner, so it is just me.
He would also watch ███ when there was
no school. He would also pick him up
from school when I was running late.
Now, my customers do not want me comming,
with any of my children due to covid.
Stephen was my emotional, and financial support.
None of us can understand why he cannot
be home. We all know Stephen like the back
of our hands. We know he is a family man,
a great friend, and is definitely not
dangerous by any means. I am 31 years old,
with an 8 year old, a now 1 year old, and
a business I am trying to run and I just
need Stephen home. It was such a shame we
could not have him home for the holidays, and
███ first christmas and first birthday.
we were planning ███ first birthday all
year. He was born on Christmas eve at 11:42 p.m.
No one knows how devastating it was for
Stephen to miss it. ███ is his life. He adores

him and ▮▮▮ It tears me apart to hear him cry. While he is on the phone talking to ▮▮▮▮ and it is He is missing his most important years and it is Killing Stephen. He would do anything for us and we just need him. Not only us, but his family need him. He was the man of the house and helped his mother with everything. All of his nieces and nephews miss him dearly as well as his mother. No one understands why our Stephen is where he is, and Why he is being treated like he is a bad Criminal. ~~to the~~ Not only his family is confused, but his friends and neighbors are as well. Thank you for your time and reading this.

                              -Lindsey Walsh

1/25/22, 1:38 PM                              Case Details - Massachusetts Trial Court 2

## 1906CR001273 Commonwealth vs. Deberardinis, Stephen Mario

- Case Type:
- Criminal
- Case Status:
- Closed
- File Date
- 10/22/2019
- DCM Track:
-
- Initiating Action:
- ABUSE PREVENTION ORDER, VIOLATE c209A §7
- Status Date:
- 04/15/2021
- Case Judge:
-
- Next Event:
-

| All Information | Party | Charge | Event | Docket | Disposition |

### Docket Information

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 10/22/2019 | Criminal Complaint issued from Electronic Application:<br>Originating Court: BMC West Roxbury<br>Case Number: 1906AC001042HR<br>Receiving Court: BMC West Roxbury<br>; | | | |
| 10/22/2019 | Complaint issued with a summons. | | | |
| 10/22/2019 | Event Resulted:  Arraignment scheduled on:<br>        10/22/2019 10:00 AM<br>Has been: Held - Personal Recog. Release<br>Hon. Michael C Bolden, Presiding | | | |
| 10/22/2019 | Defendant arraigned before Court, advised of right to counsel.<br>Judge: Bolden, Hon. Michael C | | 1 | |
| 10/22/2019 | Plea of Not Guilty entered on all charges.<br>Judge: Bolden, Hon. Michael C | | | |
| 10/22/2019 | Bail revocation warning (276/58) given to the defendant<br>Judge: Bolden, Hon. Michael C | | | |
| 10/22/2019 | Released on Personal Recognizance<br>Judge: Bolden, Hon. Michael C | | | |
| 10/22/2019 | Appearance filed<br>On this date . CPCS Boston Office added as Appointed - Indigent Defendant for Defendant Stephen Deberardinis<br>Appearance filed  for the purpose of Bail Only by Judge Hon. Michael C Bolden. | | 2 | |
| 10/22/2019 | Appearance filed<br>On this date Michael P Thaler, Esq. added as Appointed - Indigent Defendant for Defendant Stephen Deberardinis<br>Appearance filed  for the purpose of Case in Chief by Judge Hon. Michael C Bolden. | | 3 | |
| 10/22/2019 | Special Conditions of release in addition to bail or recognizance imposed:Stay away from victim/witness, No Contact with victim/witness, No Abuse<br><br>Judge: Bolden, Hon. Michael C | | | |
| 10/25/2019 | Event Resulted:  Pretrial Hearing scheduled on:<br>        10/25/2019 09:00 AM<br>Has been: Reschedule of Hearing      For the following reason: Both Parties Request<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 10/25/2019 | Legal Counsel Fee Waived.<br><br>Judge: Driscoll, Hon. Mary Ann | | | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 12/03/2019 | Event Resulted:  Pretrial Hearing scheduled on:<br>          12/03/2019 09:00 AM<br>Has been: Not Held<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 01/13/2020 | Defendant's motion to reschedule or continue scheduled court hearing filed with the following, if any, supporting documents:<br>01/13/20  ALLOWED   COFFEY,J | | 4 | |
| 01/13/2020 | Event Resulted:  Motion Hearing (CR) scheduled on:<br>          01/13/2020 09:30 AM<br>Has been: Held - Motion allowed<br>Hon. Kathleen E Coffey, Presiding | | | |
| 01/13/2020 | Motion ALLOWED.<br>Judge: Coffey, Hon. Kathleen E | | | |
| 01/13/2020 | Event Resulted:  Motion to Dismiss scheduled on:<br>          01/28/2020 09:00 AM<br>Has been: Reschedule of Hearing       For the following reason: Defendant's request without objection<br>Hon. Kathleen E Coffey, Presiding | | | |
| 02/12/2020 | Defendant's motion to Dismiss filed with the following, if any, supporting documents:  certif. of service on opposing party | | 6 | |
| 02/13/2020 | Event Resulted:  Motion to Dismiss scheduled on:<br>          02/13/2020 09:00 AM<br>Has been: Reschedule of Hearing       For the following reason: Both Parties Request<br>Hon. Mary Ann Driscoll, Presiding | | | |
| 02/13/2020 | Defendant's motion to Dismiss filed with the following, if any, supporting documents:<br>8/26/20 DENIED, after hearing. - Bolden, J.<br><br>Judge: Bolden, Hon. Michael C | | 5 | |
| 03/23/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Motion to Dismiss scheduled on:<br>          03/23/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: On Order of the Court<br>Hon. Kathleen E Coffey, Presiding | | | |
| 05/12/2020 | Commonwealth's opposition to defendant's motion to dismiss filed. | | | |
| 05/12/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Motion to Dismiss scheduled on:<br>          05/14/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: On Order of the Court<br>Hon. Kathleen E Coffey, Presiding | | | |
| 05/12/2020 | Court hearing has been changed due to COVID emergency. New hearing date and time is 07/27/2020 09:00 AM Motion to Dismiss to be held in a virtual court session. Participation in a virtual court session, will require participants to use meeting access code number 1-877-927-8978 and enter meeting password 5104910. Notices sent. | | | |
| 07/27/2020 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Motion to Dismiss scheduled on:<br>          07/27/2020 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: Both Parties Request<br>Hon. Kathleen E Coffey, Presiding | | | |
| 08/17/2020 | Event Resulted:  Motion to Dismiss scheduled on:<br>          08/17/2020 09:00 AM<br>Has been: Held - under advisement       For the following reason: COVID Emergency-Hearing held by telephone<br>Hon. Michael C Bolden, Presiding | | | |
| 08/17/2020 | Taken under advisement Hon. Michael C Bolden | | | |
| 08/17/2020 | Court hearing scheduled on 08/17/2020 09:00 AM Motion to Dismiss conducted by Telephone Conference All parties via teleconference.<br><br>Judge: Bolden, Hon. Michael C | | | |
| 10/02/2020 | Event Resulted:  Hearing to Review Status scheduled on:<br>          10/02/2020 09:00 AM<br>Has been: Held<br>Hon. Catherine Ham, Presiding | | | |
| 10/02/2020 | Misc Entry:<br>All parties present in courtroom. | | | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 10/02/2020 | Defendant's motion for Bill of Particulars (Rule 13b) filed with the following, if any, supporting documents:<br>10/02/20   ALLOWED   HAM,J<br><br>Judge: Ham, Hon. Catherine | | 7 | |
| 10/02/2020 | Event Resulted:  Motion Hearing (CR) scheduled on:<br>        10/02/2020 09:00 AM<br>Has been: Held - Motion allowed<br>Hon. Catherine Ham, Presiding | | | |
| 11/19/2020 | Event Resulted:  Bench Trial (CR) scheduled on:<br>        11/19/2020 09:00 AM<br>Has been: Reschedule of Hearing       For the following reason: Both Parties Request<br>Hon. Catherine Ham, Presiding | | | |
| 11/19/2020 | Misc Entry:  All parties present in courtroom.   This to be heard next date by Judge Ham | | | |
| 12/08/2020 | Event Resulted:  Bench Trial (CR) scheduled on:<br>        12/18/2020 09:00 AM<br>Has been: Event Cancelled       For the following reason: Defendant's request without objection<br>John C McDonald, Presiding | | | |
| 12/11/2020 | Defendant's motion to Dismiss filed with the following, if any, supporting documents:  affidavit in support of motion, memorandum of law<br>1/5/21 DENIED - Ham, J.<br><br>Judge: Ham, Hon. Catherine | | 8 | |
| 12/18/2020 | Event Resulted:  Motion to Dismiss scheduled on:<br>        12/18/2020 09:00 AM<br>Has been: Held - under advisement       For the following reason: COVID Emergency-Hearing held by video<br>Hon. Catherine Ham, Presiding | | | |
| 12/18/2020 | Taken under advisement Hon. Catherine Ham | | | |
| 12/18/2020 | Court hearing scheduled on 12/18/2020 09:00 AM Bench Trial (CR) conducted by ZOOM Conference deft and deft atty on zoom/ ada insession.<br><br>Judge: Ham, Hon. Catherine | | | |
| 01/13/2021 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Bench Trial (CR) scheduled on:<br>        02/04/2021 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: No court sitting<br>Hon. Kathleen E Coffey, Presiding | | | |
| 01/20/2021 | Event Resulted:  Motion Hearing (CR) scheduled on:<br>        01/20/2021 09:00 AM<br>Has been: Not Held       For the following reason: COVID Emergency-Hearing held by video<br>Hon. Kathleen E Coffey, Presiding | | | |
| 01/20/2021 | Event Resulted:  Bench Trial (CR) scheduled on:<br>        02/04/2021 09:00 AM<br>Has been: Not Held       For the following reason: COVID Emergency-Hearing held by video<br>Hon. Kathleen E Coffey, Presiding | | | |
| 01/20/2021 | Commonwealth's motion for facebook records filed and defendants opposition for facebook records filed filed with the following, if any, supporting documents:<br>1/28/2021 Motions allowed all parties notified Judge Kathleen Coffey | | 9 | |
| 01/20/2021 | Taken under advisement Hon. Kathleen E Coffey<br><br>Judge: Coffey, Hon. Kathleen E | | | |
| 01/27/2021 | Defendant's motion to compel discovery filed with the following, if any, supporting documents:  certif. of service on opposing party | | 10 | |
| 02/04/2021 | Court orders rescheduling due to State of Emergency surrounding the Covid-19 virus.:  Discovery Compliance & Jury Election scheduled on:<br>        02/04/2021 09:00 AM<br>Has been: Rescheduled-Covid-19 emergency       For the following reason: COVID Emergency-Hearing held by video<br>Hon. Catherine Ham, Presiding | | | |
| 02/24/2021 | Defendant's motion for exparte approval of funds filed with the following, if any, supporting documents:<br>NO ACTION 02/24/21<br><br>03/02/21 ALLOWED IN THE AMOUNT OF $750. Coffey, J. | | 11 | |

170

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 02/24/2021 | Misc Entry:  Atty Thaler to provide more information re: his expert<br><br>Judge: Coffey, Hon. Kathleen E | | | |
| 03/18/2021 | Event Resulted:  Discovery Compliance & Jury Election scheduled on:<br>        03/18/2021 09:00 AM<br>Has been: Held        For the following reason: COVID Emergency-Hearing held by video<br>Hon. Catherine Ham, Presiding | | | |
| 03/18/2021 | Court hearing scheduled on 03/18/2021 09:00 AM Discovery Compliance & Jury Election conducted by ZOOM Conference deft and counsel on zoom.<br><br>Judge: Ham, Hon. Catherine | | | |
| 03/22/2021 | Pretrial conference report filed. | | 12 | |
| 03/29/2021 | Business record deposited with clerk-magistrate (G.L. c.233 §79J). FACEBOOK BUSINESS RECORDS | | | |
| 04/01/2021 | Event update::  Motion Hearing (CR) scheduled on:<br>        04/01/2021 02:30 PM<br>Has been: Held as scheduled<br>Hon. Catherine Ham, Presiding | | | |
| 04/02/2021 | Misc Entry: Proposed witness list filed with certificate of service | | | |
| 04/02/2021 | Judgment received from Supreme Judicial Court - petition pursuant to G.L. c. 211, s. 3 seeking relief from an order dated 1/27/21 - DENIED. Gaziano, J. | | | |
| 04/13/2021 | Defendant's motion in Limine, in Limine for Sequestration of Witnesses<br>To redact certain ports of restraining order<br>to Prohibit Evidence of Prior or Subsequent bad acts of the deft.<br>For ADA not use term victim<br>To exclude any and all hearsay and prejudicial evidence filed with the following, if any, supporting documents:  certif. of service on opposing party | | 13 | |
| 04/13/2021 | Defendant's motion to Admit certified copy of Facebook records filed with the following, if any, supporting documents: | | 14 | |
| 04/13/2021 | Misc Entry: Deft's Opposition to Comm motion to preclude collateral attacks on Abuse Prevention order  filed | | | |
| 04/15/2021 | Event Resulted:  Bench Trial (CR) scheduled on:<br>        04/15/2021 09:00 AM<br>Has been: Held - Disposed by Bench Trial<br>Hon. Catherine Ham, Presiding | | | |
| 04/15/2021 | Charges Disposed::<br>Charge # 1 ABUSE PREVENTION ORDER, VIOLATE c209A §7<br>        On: 04/15/2021     Judge: Hon. Catherine Ham<br>        Not Guilty - Bench Finding | | | |
| 04/15/2021 | Waiver of Jury Trial found after colloquy<br>Judge: Ham, Hon. Catherine | | | |
| 04/15/2021 | Motion for required finding of Not Guilty ALLOWED.<br>Judge: Ham, Hon. Catherine | | | |
| 04/15/2021 | Commonwealth's motion in Limine To Admit in court ID of deft.<br>To admit certified copy of Abuse prevention order #12 redacted filed with the following, if any, supporting documents:<br>04/15/21   ALLOWED W/OUT OBJECTION   HAM,J<br><br>Judge: Ham, Hon. Catherine | | 15 | |
| 04/15/2021 | Commonwealth's motion in Limine To admit certified copy of Facebook inc records filed with the following, if any, supporting documents:<br>04/15/21   ALLOWED  OVER DEFT OBJECTION   HAM,J<br><br>Judge: Ham, Hon. Catherine | | 16 | |
| 04/15/2021 | Commonwealth's motion in Limine to Prohibit references charging decisions in other jurisdictions Only that alleged victim went to Dedham to charge and no charge issued. To preclude collateral attacks on the abuse prevention order filed with the following, if any, supporting documents:<br>04/15/21   DENIED    HAM,J<br><br>Judge: Ham, Hon. Catherine | | 17 | |

171

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 04/15/2021 | Misc Entry: All parties present in court<br><br>Judge: Ham, Hon. Catherine | | | |
| 04/15/2021 | Defendant's motion in Limine To exclude any and all hearsay and prejudicial evidence filed with the following, if any, supporting documents:<br>04/15/21  DENIED HAM,J<br><br>Judge: Ham, Hon. Catherine | | 18 | |
| 04/15/2021 | Defendant's motion in Limine To prohibit evidence of prior or subsequent bad acts<br>for sequestration of witnesses<br>for ADA not to use the term victim filed with the following, if any, supporting documents:<br>04/15/21   ALLOWED   HAM,J<br><br>Judge: Ham, Hon. Catherine | | 19 | |
| 04/15/2021 | Exhibits retained by Court. - List filed 1. Abuse Prevention order 1606cr0518  2. Transcript of proceeding docket 1606CR0518  3. Facebook inc records  4. Application page for Abuse prevention order.   5. Facebook notification page.  6.  Stephen Deberardinos Facebook messages<br><br>Judge: Ham, Hon. Catherine | | | |

172

*United States v. Stephen M. DeBerardinis*
Case No. 21-CR-10292

**Time** 2020-08-15 09:40:15 UTC
**Message** 🔲🔲🔲🔲🔲🔲🔲🔲🔲 I THINK ITS TIME FOR THE WHITES TO START A FUCKING RIOT!!!!!!!!!! G9 TO THE BLACKS COMMUNITY AND DESTROY THEIR SHIT!!!!!!!!!!!!!!!! FUCKING COCK SUCKERS AND PEOPLE WANT TO KNOW WHY SO MANY WHITES HATE THEM PAAAAAAAAA.... FUCKING COCK ROCH, BALL SNIFFING FUCKERS

**Time** 2020-06-25 23:55:34 UTC
**Type** Comments
**Summary** Stephen M DeBerardinis commented on a post from June 25, 2020. `A NIGG@@$ ASS HAHAHAHAHAHAHAHAHA`
**Object Id** S: I100014013756476:2836446479954803:51

**Time** 2020-06-25 21:45:45 UTC
**Type** Comments
**Summary** Stephen M DeBerardinis commented on a post from June 25, 2020. `No not Marshall Law... lock his black ass in a cage with 12 MC members or members of the KKK and see how long he last`
**Object Id** S:_I100014013756476:2836446479954803:49

**Time** 2020-03-30 10:58:54 UTC
**Type** Comments
**Summary** Stephen M DeBerardinis commented on a post from March 29, 2020. `That's gross... why a white girl picks to date out side of her own color. Just pure NASTY`
**Object Id** S:_I100014013756476:817934065350378:38

**GOVERNMENT EXHIBIT**

**Exhibit 1**

21-CR-10292-ADB

173

*United States v. Stephen M. DeBerardinis*
Case No. 21-CR-10292



**Photo ID** 873924236418027

**Posted** 2020-06-12 01:53:20 UTC
**Status**
**Mobile** true
**Id** 871416833335434

GOVERNMENT
EXHIBIT

**Exhibit 1**

21-CR-10292-ADB

174

**Author** ███████ (Facebook: ███████)
**Sent** 2021-01-28 00:22:10 UTC
**Body** Love ya

**Author** Stephen M DeBerardinis (Facebook: 100014013756476)
**Sent** 2021-01-28 00:22:21 UTC
**Body** Love you too brother....

**Author** ███████ (Facebook: ███████)
**Sent** 2021-01-28 00:22:53 UTC
**Body** I did it because it was the right thing to do bro

**Author** ███████ (Facebook: ███████)
**Sent** 2021-01-28 00:24:30 UTC
**Body** You never stirred me wrong and you been upfront and honest about everything

GOVERNMENT
EXHIBIT

**Exhibit 2**

21-CR-10292-ADB

## Facebook Business Record                Page 1857

**Author**

Stephen M DeBerardinis (Facebook: 100014013756476)
**Sent** 2021-01-28 00:47:39 UTC
**Body** Honest is the best policy. I don't need to lie UNLESS it's to the law lol I was born with balls so. I was ALWAYS told, if you make a mistake, own up to it and be honest so

**Author** ███████ (Facebook: ███████)
**Sent** 2021-01-28 00:48:11 UTC
**Body** Well said bro

GOVERNMENT
EXHIBIT

**Exhibit 2**

21-CR-10292-ADB



**Photo ID**

876433352833782

| | |
|---|---|
| **Id** | 876433352833782 |
| **Title** | |
| **Link** | https://www.facebook.com/photo.php?fbid=876433352833782&set=a.109204192890039&type=3 |
| **Upload Ip** | 2600:1000:b022:1b:4018:ca56:55e3:ba7f |
| **Album Name** | Mobile Uploads |
| **Uploaded** | 2020-06-18 23:16:01 UTC |
| **Author** | Stephen M DeBerardinis (100014013756476) |
| **Taken** | 2020-06-18 15:34:30 UTC |
| **Modified** | 2020-06-18 15:34:30 UTC |
| **Camera Make** | samsung |
| **Camera Model** | SM-N975U |
| **Orientation** | 6 |
| **Original Width** | 4032 |
| **Original Height** | 3024 |
| **Exposure** | 1/59 |
| **Fstop** | 240/100 |
| **Iso Speed** | 200 |
| **Focal Length** | 430/100 |
| **Tags** | |

GOVERNMENT EXHIBIT

**Exhibit 3**

21-CR-10292-ADB



**Photo ID** 998930510584065
**Id** 998930510584065
**Title** ALLLI cleaned, waxed, buffed, and polished. Ready for opening shotgun on Monday morning.
**Link** https://www.facebook.com/photo.php?fbid=998930510584065&set=a.109204192890039&type=3
**Upload Ip** 2600:1000:b05a:43c3:703b:875e:3e15:68b3
**Album Name** Mobile Uploads
**Uploaded** 2020-11-25 02:16:31 UTC
**Author** Stephen M DeBerardinis (100014013756476)
**Taken** 2020-11-25 00:40:13 UTC
**Modified** 2020-11-25 00:40:13 UTC
**Camera Make** samsung
**Camera Model** SM-N981U
**Orientation** 1
**Original Width** 4032
**Original Height** 3024
**Exposure** 1/20
**Fstop** 180/100
**Iso Speed** 1600
**Focal Length** 5400/1000
**Tags**
**Comments** **User** Stephen M DeBerardinis (100014013756476)
**Text** ████████████████████

**GOVERNMENT EXHIBIT**

**Exhibit 3**

21-CR-10292-ADB

FD-597 (Rev 8-11-94)

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # ▓▓▓▓▓▓▓▓▓▓▓▓

On (date) _29 September 2021_

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name) ▓▓▓▓▓▓▓▓▓▓▓

(Street Address) ▓▓▓▓▓▓▓▓

(City) ▓▓▓▓▓▓▓▓

Description of Item(s): Off person of Stephen DeBeradinis:
iPhone pro 12 Max in a black case.

Search of house:

Item 1: 1 badge in leather holder, 3 badges one gold, 2 silver, 2 patches

Item 2: black knit cap "support outlaws fall river"

Item 3: black switchblade in black box

Item 4: blue utility knife

Item 5: black HP laptop with thumb drive inserted

Item 6: knife on black plastic handle

Item 7: gold colored badge

Item 8a: 14 bullets in plastic cases, 2 red boxes 44 cel .451 black powder

Item 11: 3 black handled knives and 1 silver handled knife in black canvas

Item 12: Plastic box containing 4 bullets with black plastic casing

Item 13: Manila folder containing documents; folder labeled Michelle Difazio

Item 14: Wood handled silver knife with black canvas case

Received By: _[signature] Jensen_
(Signature)

Received From: ▓▓▓▓▓▓▓▓
(Signature)

GOVERNMENT EXHIBIT
**Exhibit 4**
21-CR-10292-ADB

FD-597 (Rev. 4-13-2015)                                                    Page ___1___ of ___1___

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: ▮▮▮▮▮▮▮▮▮▮▮▮▮

On (date) __29 September 2021__        item (s) listed below were:
☑ Collected/Seized
☐ Received From
☐ Returned To
☐ Released To

(Name) ▮▮▮▮▮▮▮▮▮▮▮▮_____

(Street Address) ▮▮▮▮▮▮▮▮▮▮▮_____

(City) ▮▮▮▮▮▮▮▮▮_____

Description of Item (s): _____

Item 15: Knife with silver & dark-colored handle in black canvas case

Item 16: Camo design buck stalker muzzle loaded rifle with scope and trigger lock

Item 17: .44 caliber black powder pistol with holster and revolver

Item 18: Two black stun guns

Item 19: Four black switchblades, two knives with wooden handles in brown leather sheaths, and two black-handled knives in black sheaths

Item 21: black ballcap with "support outlaws Fall River"

Item 22: Three "Tactical Force" stun guns; two "The Punisher" stun guns; seven "Azan Spring Assist 'Assault Knives'" in boxes; five knives in black cases in black boxes; three Tac-Force "Speedster" knives in boxes; six miscellaneous knives in boxes; five miscellaneous loose knives; one knife in black case; one loose black brass knuckles; shipping box addressed to Stephen DeBerardinis with 21 brass knuckles in boxes; one concealed knife in black comb

Received By: ___D.J.S.B___ (Signature)        Received From: _____ (Signature)

Printed Name/Title: _David S. Bell, FBI SA_    Printed Name/Title: ▮▮▮▮▮▮▮▮

GOVERNMENT EXHIBIT
**Exhibit 4**
21-CR-10292-ADB

File # (Rev. 8-11-94)    Case Document: 00129870779 Document 84-3    Date Filed: 08/02/2023 Page 23 of Entry ID: 0492869

### UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # ████████████████████

On (date) __29 September 2021__

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name) ████████████████

(Street Address) ████████████

(City) ██████████

Description of Item(s): _____

Item 23: Five black knives in white boxes; nine Defender Xtreme knives in boxes; one Razor Tactical knife in box; three black knives with dragon·styling in white boxes; one silver knife in black case in black box

Item 24: 21 assorted knives

Item 25: black Toshiba laptop

Item 26: silver Asus laptop, model TP401M

Item 27: HP Pavilion Entertainment PC laptop with missing plastic piece on back; Model SN: CNF7200ZRJ

Item 28: HP Pavilion Entertainment PC laptop, serial # CNF7420F1Y

Item 29: black LG phone

Item 30: black iPhone

Item 31: silver iPhone

Item 32: silver 16GB iPad

Item 33: silver iPad

Item 34: black Compaq laptop

Item 35: two swords with black taped handles in sheaths

Item 36: HP Elitebook 8440P SN: CND0390774

Item 37: Muzzle loaded rifle

Received By: ___J.S.B.___
(Signature)

Received From: ████████
(Signature)

GOVERNMENT
EXHIBIT
**Exhibit 4**
21-CR-10292-ADB

FD-597 (Rev. 8-11-94)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # ████████████████████████

On (date) 29 September 2021

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name) ████████████████████████████

(Street Address) ████████████████████

(City) ████████████████

Description of Item(s):

Item 38: black Samsung cell phone

Item 39: black Second Amendment t-shirt

Item 40: black and silver Zebra phone

Item 41: Pellet rifle - brown and black - DPMS Panther Arms with magazine

Item 42: The Punisher stun gun in box

Item 43: Camouflage switchblade with box

Item 44: Acer black PC tower

Item 45: HP 5700 black computer tower

Item 46: blue gray HP laptop  SN: 5CD248VVX

Item 47: Western Digital 3TB Hard drive  SN: WCAWZ2604344

Item 48: black BB magazine with BBs

Item 49: black USB drive

Item 50: blue/black flash drive - OBS thin client

Item 51: black 4GB HP thumb drive

Item 52: light-colored thumb drive

Item 53: black Kingston flashdrive

Item 54: black Airsoft rifle

Item 55: Crossbow

Received By: _____
(Signature)

Received From: ████████████████

GOVERNMENT EXHIBIT
Exhibit 4
21-CR-10292-ADB

FD-597 (Rev 8-11-94)                                                             Page _____ of _____

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # ███████████████████████

On (date) __29 September 2021__                    item(s) listed below were:
    ☐ Received From
    ☐ Returned To
    ☐ Released To
    ☑ Seized

(Name) ████████████████████

(Street Address) ████████████████████

(City) ███████████

Description of Item(s): _____

Item 56: Pellet pistol and magazine - black Glock replica

Item 57: Wild outdoors carved knife in display style wooden box

Item 58: black Dell harddrive  SN: 1C41Q52

Item 59: white Western Digital external drive

Item 60: black Lenovo Think Centre tower

Item 61: black "Support Outlaws Fall River" shirt

Item 62: gray t-shirt "Snitches get Stitches" on back

Item 63: Four "Punisher" stun guns, four tactical force stun guns

Item 64: Two Knives

*Also taken: Gardall safe

Item 65: silver and carved wood style knife

Nothing further

Received By: _____     Received From: ███████████
(Signature)                                                    (Signature)

GOVERNMENT
EXHIBIT

Exhibit 4

21-CR-10292-ADB

Volume:     I
Pages:      1-33
Exhibits:

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                        MUNICIPAL COURT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
███████████                    \*
                               \*
v.                             \*Docket No. 1606RO000518
                               \*
STEPHEN MARIO DEBERARDINIS     \*
                               \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


HEARING

        BEFORE THE HONORABLE PAUL J. MCMANUS


APPEARANCES:

For the Plaintiff, ████████████████
PRO SE

BY:  PRO SE


For the Defendant, Stephen Mario Deberardinis:
PRO SE

BY:  PRO SE


                    Jamaica Plains, Massachusetts
                    Courtroom 01
                    October 11, 2017


Sherri L. Breach Approved Court Transcriber

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

2

I N D E X

PAGE

Argument by Ms. ██████
4

Argument by Mr. Deberardinis
11

Court's Findings
26

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

3

(Court called to order.)

(Plaintiff & Defendant present)

(9:56 a.m.)

THE CLERK: ███████████ Stephen Deberardinis, 16RO518. This is on for an extension today.

THE COURT OFFICER: Sir, can you please come here? Over here to the left.

THE CLERK: Both parties raise your right hands, please. PARTIES, Sworn

THE COURT: All right. Ms. ██████

MS. █████ Yes.

THE COURT: Good morning. And Mr. Deberardinis?

MR. DEBERARDINIS: Good morning, Your Honor.

THE COURT: Good morning. All right. So what's before me, Ms. █████ you're seeking an extension of a restraining order that issued and that was continued last -- on October 11th -- wait. Oh, no. I'm sorry. On September 27th. Yeah. All right.

Now can I just make clear, Ms. █████ what's your -- what was your relationship with Mr. Deberardinis?

MS. █████ We were in a relationship for 16 years.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

4

THE COURT:  Okay.  And --

MS. ████    And we share a daughter.

THE COURT:  And you have a daughter together? All right.

MS. ████    Yes.

THE COURT:  And this is your affidavit?

MS. ████    Yes.

THE COURT:  All right.  Have you seen the affidavit?

MR. DEBERARDINIS:  If it's the one that she filed when she first got the restraining order, yes, I did, Your Honor.

THE COURT:  Okay.  All right.  I'm just going to review it right now, and I just want to take a look at the papers and then I'll hear from you, Ms. ████ and then I'll hear from you.

MR. DEBERARDINIS:  Thank you.

THE COURT:  Okay.

(Pause)

THE COURT:  All right.  So -- I'm sorry.  I just wanted to review all of the papers.

So, Ms. ████ can you just tell me why it is that you're before the Court seeking the extension of the restraining order?

MS. ████    Well, the past year that I've

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

had the restraining order he's broken it numerous times, pled guilty actually in this courthouse to breaking the restraining order.  There's an open case in Dorchester and an open case in Dedham.  I fear -- I live in fear every day.

THE COURT:  And tell me, I was looking at your affidavit.  You said that back in July of 2016, Mr. Deberardinis came to your home with a gun because he thought your daughter was dating older men.

MS. ███████  Yeah.  That was two years prior to July of 2016.

THE COURT:  All right.  And tell me what happened at that point?  How did you find out about it?

MS. ███████  My sister had called me (indiscernible - not utilizing microphone).  He was sleeping on the couch.

THE COURT:  At whose house?

MS. ███████  His house.

THE COURT:  Okay.

MS. ███████  His mom's.  My sister called me and let me know that my daughter was talking to older guys online.  I had her tell him because I was afraid to because when it came to ███████ (phonetic), his anger is outrageous.

THE COURT:  Uh-huh.

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

MS. ▮▮▮    So she -- I put him on the phone. She told -- my sister told him and he automatically got up, got in his truck.  I went in my car and I followed him. Then he proceeded to go in my house because my daughter was in the house with two of her friends --

THE COURT:  How long have you two been separated?

MS. ▮▮▮    Almost four years.  And he came in. My daughter was standing in the living room.  I was standing right here and he was right here holding it down.

THE COURT:  Holding?

MS. ▮▮▮    The weapon, the gun.

THE COURT:  What did he have?

MS. ▮▮▮    I don't know what type of gun it was. I just know it was a gun.  It was a, I believe, a hunting gun because he has hunting -- he gets a hunting license every year.

THE COURT:  All right.  Now you said that you have been harassed by him saying he's going to DCF to have your child removed from your home?

MS. ▮▮▮    DCF twice.

THE COURT:  And tell me about those incidents.

GOVERNMENT EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

MS. ▮        When -- with the gun incident, my daughter, she had received a text from him saying that her ass is grass, so my daughter lives in fear. She went to Hyde Park Police Station.  And when she went to the police station she said the gun incident happened two months prior, not two years.  So they automatically filed a 51A on him.

So I had gone to the police station and they said, you know, everything's already done.  The 51A has been filed.  Then he filed one on me saying that my daughter's neglected, my brother gives her drugs, my sister gives her drugs, which is not true.

THE COURT:  Tell me about your daughter.  She's 16?

MS. ▮        She's 17.

THE COURT:  She's 17 now.  And she's -- where is she in school?

MS. ▮        I would prefer not to say because he doesn't know my new address.

THE COURT:  Oh, okay.  All right.  But what grade is she in?

MS. ▮        11th.

THE COURT:  How is she doing in school?

MS. ▮        She's actually doing great.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

8

THE COURT: Yeah.

MS. ███████ Yeah, she is.

THE COURT: Okay. Tell me, has Mr. Deberardinis ever physically assaulted you?

MS. ███████ No.

THE COURT: Has he threatened to use physical violence against you?

MS. ███████ Just that incident with the -- I mean, he always used to say, I'll kick your ass or, you know what I mean, but he's never -- he was emotionally abusive.

THE COURT: Emotionally abusive how?

MS. ███████ (Indiscernible - not utilizing microphone), putting me down.

THE COURT: Now you blocked his phone number; is that right?

MS. ███████ Correct.

THE COURT: And has he tried to contact you despite that?

MS. ███████ Through various numbers, yes, he has.

THE COURT: Tell me about that.

MS. ███████ He uses unknown numbers. I mean, I have proof from a year ago when I originally blocked his number --

GOVERNMENT EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

THE COURT: Uh-huh.

MS. ███████ -- and he came through my phone with an unknown number and it said -- the first text said, why did you block my number, and the second text said, why, it's me, Stephen. Call me. And just throughout the year he's been sending -- I mean, I have the texts because they're very (indiscernible - not utilizing microphone), me and my daughter should be raped. He sent my daughter a link and when she opened it --

THE COURT: Wait. So he sent you a text saying that you should be raped?

MS. ███████ Me and my daughter. My daughter should be gang-banged and she should kill herself because she does have suicidal attempts in the past.

THE COURT: When was that text sent?

MS. ███████ Those, I believe, were back in May.

THE COURT: May of 2017?

MS. ███████ 2017.

THE COURT: And where are those texts now?

MS. ███████ I have them.

THE COURT: Do you have a screenshot of them?

MS. ███████ I have a printout.

THE COURT: All right. Where is the phone?

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

10

MS. ██████    In my pocket.

THE COURT:  And would those texts be on the phone?

MS. ██████    Those ones I believe so because I had an original phone and it was so old that I (indiscernible - not utilizing microphone), but I do have recent texts from different phone numbers with threatening --

THE COURT:  Okay.  Tell me -- I would like to see the printout that you have.

(Pause)

MS. ██████    Do you want the original ones from when he said about blocking his number?

THE COURT:  Yeah.  Have you seen those, Mr. Deberardinis?

MR. DEBERARDINIS:  No, I have not, Your Honor.

THE COURT:  All right.  I'm going to take a look at them and I'll give you a chance to look at them.

MR. DEBERARDINIS:  No problem.

(Pause)

THE COURT:  Who is ██████?

MS. ██████    I am.

THE COURT:  Oh, oh.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

MS. ████ ████ is my daughter.

THE COURT: Okay. I'm reading one of the texts. It's -- it ends with saying, must make you and her daddy proud.

MS. ████ Yeah. He knows how to manipulate.

THE COURT: Okay. But he's the father of ████

(Pause)

THE COURT: All right. Mr. Deberardinis, why don't you take a look at those?

MR. DEBERARDINIS: Sure. Thank you, Your Honor.

(Pause)

THE COURT: Okay. Could I have them back?

MR. DEBERARDINIS: Sure.

THE COURT: Thank you.

I wanted to ask you, Ms. ████ is there anything pending in the Probate Court?

MS. ████ Regarding the violation of the restraining order?

THE COURT: Regarding -- well, regarding anything?

MS. ████ In Dorchester I have to appear on November 1st, and on Dedham I know he has a pretrial

GOVERNMENT EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

hearing on October 23rd.

THE COURT: But those are in criminal court, right?

MS. ███████  Yeah.

THE COURT: But in Probate Court is there a visitation?

MS. ███████  Oh, no.

THE COURT: So you two have never been to Probate Court with respect to visitation?

MS. ███████  No.

THE COURT: All right. Mr. Deberardinis, you have an opportunity now. You are opposing the extension of the order?

MR. DEBERARDINIS: Yes, I am, Your Honor.

THE COURT: All right. I would like to hear from you.

MR. DEBERARDINIS: Okay. First thing, Your Honor, one of the phone numbers in there is my phone number, which is the ███████ number. That is my phone number.

THE COURT: Uh-huh.

MR. DEBERARDINIS: All the other numbers are not mine.

Now I just had a violation of probation hearing out of Dedham District Court which was denied

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

and there is -- and also another violation here as well on the 16th.

THE COURT:  Uh-huh.

MR. DEBERARDINIS:  The transcript from that court will be brought in because she was caught lying on the stand.

THE COURT:  I am looking at your Board of Probation record.  It appears there's an open matter in the Dedham District Court.

MR. DEBERARDINIS:  That is correct for the 23rd of this month.

THE COURT:  Yeah.

MR. DEBERARDINIS:  And just one other thing I would like to point out, Your Honor.  In the second half of the affidavit where she said -- the first half when she said that I went to the house with a gun because she thought or I thought, and you can see where she crossed out and put, found out, that my daughter was dating older people.

THE COURT:  Uh-huh.

MR. DEBERARDINIS:  Then she said charges were filed against me.  Charges were never filed against me so that was a lie right there.  Now she's saying all these derogatory messages that I'm sending to her about my daughter, but yet she's claiming in her affidavit

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

14

that I went to her house with a gun because I found out my daughter was dating older guys.  And she admitted herself that my daughter admitted that she was talking to older gentlemen online.  That's one thing I wanted to point out.

THE COURT:  Okay.  Well, the question I have for you is --

MR. DEBERARDINIS:  Sure.

THE COURT:  -- did you show up at her house with a gun?

MR. DEBERARDINIS:  No, I did not.  And honestly, Your Honor, I'm not insulting anybody's intelligence. Believe me, I'm not.  But if I was to show up at my own child's house with a gun, why wouldn't 911 be called, whether they called them right then and there while I was there.  Now she said her sister was home.  She was home.  My daughter was home with two of her friends.  And nobody had a cell phone to run outside and call 911?  They waited months and months and months later to report this to DCF. Somebody came into my home --

THE COURT:  Hold on for one second.

MR. DEBERARDINIS:  Sure.

THE COURT:  Ms. ████  was a report made with respect to that incident where he showed up with

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

the gun?

MS. █████ (Indiscernible - not utilizing microphone), but I did communicate with her therapist at the time (indiscernible - not utilizing microphone). So there should be a note or something in her file at the (indiscernible - not utilizing microphone) that this had happened.

THE COURT:  And I would like you to tell me, why didn't you contact the police at that time?

MS. █████ Because I was afraid of what he would do.

THE COURT:  Okay.  All right.

MR. DEBERARDINIS:  Your Honor, it states right here charges were filed.  So it's obvious that she went to some authority.  Charges were never filed, Your Honor. Charges were never filed.

THE COURT:  No.  She says since charges were filed I have been harassed by you --

MR. DEBERARDINIS:  Right.

THE COURT:  -- saying -- she doesn't specify what charges.

MR. DEBERARDINIS:  No, she doesn't.

THE COURT:  And there are pending charges for violation of the abuse prevention order.

MR. DEBERARDINIS:  Yes, there is.

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

16

THE COURT: Okay. So that could be a reference to that.

MR. DEBERARDINIS: Okay. Another thing I would like to point out, the -- with this last violation, they gave a police report stating that I was spotted at a Dunkin' Donuts in Dedham where she was staying. I'm on GPS. Here's a report from a GPS probation of the GPS department as well as my probation department. She lied about that. I was not --

THE COURT: All right. Can I see that?

MR. DEBERARDINIS: You sure can.

THE COURT: Can I see that report?

MR. DEBERARDINIS: The highlighted paragraph, Your Honor, is where they said that I was at the Dunkin' Donuts and that's from the probation department here and as well in Dedham.

MS. ███████ I didn't file that report.

THE COURT: All right. Let me just take a look at the report.

MR. DEBERARDINIS: And if there's one other --

THE COURT: Hold on one second.

MR. DEBERARDINIS: Okay.

(Pause)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

THE COURT:  All right.  It does indicate on the history for electronic monitoring no zone violations.  What was the zone that you were permitted from being in?

MR. DEBERARDINIS:  There is certain -- a number of addresses on my GPS.  One of them is her Milton Street resident (sic).  One is her resident (sic) in Hyde Park, which she doesn't live in Bolton.  She lives in Middleborough now.  So the probation department in Dedham just added the Middleborough address where she's staying with her brother.

THE COURT:  How do you know where she lives now?

MR. DEBERARDINIS:  Say that again.

THE COURT:  How do you know where she lives now?

MR. DEBERARDINIS:  Because she -- her sister was talking to a friend on Facebook and she put it on Facebook that they're living in Middleborough at her brother's house.

THE COURT:  So you were on Facebook?

MR. DEBERARDINIS:  I was incarcerated at the time, and that was another thing I wanted to --

THE COURT:  No.  No.  No.  How did you find out?

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

MR. DEBERARDINIS:  I found out through my sister. But it's -- honestly, Your Honor, it's better off that I know because now the probation department knows as well so they put that on my exclusion zone as well, which I cannot go within 150 feet to her Middleborough address, her address in Dedham which she's no longer living there, her address in Hyde Park which she's no longer living there, and there was a school.  I don't know what the address was to the school. The address was not given to me.  The probation department found that out on their own and put that on my exclusion zone.  But the address, I guess, was withheld.  So I don't know what the address was to the school.

THE COURT:  Okay.

MR. DEBERARDINIS:  And another thing, Your Honor, she said on May 1st that I was -- of 2017 that I was sending her all types of messages.  This Court had me incarcerated on May 1st until July 31st.

And another thing, if I can read out --

THE COURT:  And the significant -- why is that significant?

MR. DEBERARDINIS:  Because she just -- she said a few minutes ago on May 1st of 2017 I sent her some type of a message.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

19

THE COURT: Okay.

MR. DEBERARDINIS: But I was incarcerated.

THE COURT: But you were incarcerated. That was the date --

MR. DEBERARDINIS: On May 1st.

THE COURT: On May 1st.

MR. DEBERARDINIS: Correct.

THE COURT: So was it before you were incarcerated?

MR. DEBERARDINIS: No, because she even said herself May 1st, 2017.

THE COURT: But -- and you were in -- you went to jail on May 1st?

MR. DEBERARDINIS: On May 1st I was in this court and got held for 90 days.

THE COURT: All right. So was it before you were held? There are 24 hours in a day.

MR. DEBERARDINIS: Right. No. I never sent her any messages either that day or the day before or the week prior or anything.

THE COURT: All right. Hold on one second.

MR. DEBERARDINIS: Sure.

THE COURT: Ms. █████

MS. █████ On May 11th he tried to file a restraining order against me, so he was not

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

incarcerated on May 11th.

THE COURT: And what do you say to that?

MR. DEBERARDINIS: Your Honor, I mean, the court should have the record. I was held May 1st to July 31st, 2017. It should be on my Board of Probation when I --

THE COURT: All right. Hold on one second. I'll take a look at the Board of --

MR. DEBERARDINIS: And can I bring up one other thing?

THE COURT: Not quite yet. I --

MR. DEBERARDINIS: Okay.

THE COURT: -- want to take a look at the Board of Probation.

MR. DEBERARDINIS: Sure. No problem.

(Pause)

THE COURT: I might have been mistaken, Your Honor. I think it might have been --

THE COURT: Yeah.

MR. DEBERARDINIS: -- the 15th.

MS. ███████ It was May 5th (sic) to May 8th.

THE COURT: Right.

MR. DEBERARDINIS: May 15th I might -- it might have been when I was incarcerated.

THE COURT: Okay.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

21

MR. DEBERARDINIS:  I apologize.

THE COURT:  Yeah.  All right.

MR. DEBERARDINIS:  To July 31st.

THE COURT:  All right.  So May 1st is wide open.

MR. DEBERARDINIS:  Right.  Correct.  Yes, it is.

Can I read something?  I mean, the language in it's not really a hundred percent appropriate, but --

THE COURT:  It's your --

MR. DEBERARDINIS:  On June 9th --

THE COURT:  The ball is in your court.

MR. DEBERARDINIS:  On June 19th, now if my daughter was afraid of me on June 19th of this year it said:

"Fuck Father's Day and all days.  Today was a fucking depressed because I don't have a fucking father in my life to be able to spend my time with and to be fucking loved.  Dude, like shit, I hate this.  It's so fucking much. I wish I -- he wasn't a piece of shit and actually wanted me."

I never said I didn't want my daughter.  This whole restraining order as she's going back to her affidavit

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

affidavit --

THE COURT:  I'm sorry.  You just read that and that's a text from your daughter?

MR. DEBERARDINIS:  That is a Facebook post from my daughter.

MS. ▮▮▮▮  (Indiscernible - not utilizing microphone).

MR. DEBERARDINIS:  And --

THE COURT:  Hold on one second.

And tell me how do you -- your position is that that assists your defense in this case?

MR. DEBERARDINIS:  No.  But I'm just saying, I mean, my daughter's also listed on this restraining order as well --

THE COURT:  Uh-huh.

MR. DEBERARDINIS:  -- to keep away from my child because she -- she just said it herself, when my daughter went to DCF or her counseling or whoever she went to, that she was so afraid of me.  But if she's afraid of me, why is she saying, I wish my father actually cared.

THE COURT:  Okay.  I guess we have a different interpretation of that message.

MR. DEBERARDINIS:  Okay.  And there's something that I would like to -- for you to see if you

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

don't mind. And this is one of the reasons with --

THE COURT: Jen, could I see that?

MR. DEBERARDINIS: I mean, I know that's kind of irrelevant, but, I mean, I think any father would get upset with something like that.

And the last time when we were in court, I believe it was in front of Judge Coffey.

THE COURT: Hold on one second. Did you see these, Ms. ▮▮▮▮

MS. ▮▮▮▮ No.

THE COURT: Just let her take a look.

MR. DEBERARDINIS: Sure.

(Pause)

MS. ▮▮▮▮ I mean, I don't understand --

THE COURT: No. That's okay. I just wanted you to see what I was looking at.

What else would you like to tell me?

MR. DEBERARDINIS: When we were in here back in May, when we -- I believe I was in front of Judge Coffey, I'm not sure, but her and my daughter both agreed with my daughter's pot smoking habit and drinking. Again, that is something I'm quite sure for a ▮▮▮▮-year-old that would upset a father. But I never once threatened my daughter with that, to do anything in any way whatsoever.

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

24

THE COURT:  Uh-huh.  All right.  So I do want to ask you about these texts.

MR. DEBERARDINIS:  Sure.

(Pause)

THE COURT:  All right.  On Friday, March 31st, "Listen, you little fucking whore" --

MR. DEBERARDINIS:  Yeah.

THE COURT:  -- "you, your child and your retard sister to watch your mouths.  I had ███ fired once, and now that she's at Dedham House of Pizza I'll work on that next.  I'm telling you now, better watch every move you all make.  Your daughter fucks anything with a dick.  We all know it.  How many guys have had her?"

(Pause)

THE COURT:  And you go on to say that -- what should happen to your daughter.

MR. DEBERARDINIS:  I'm sorry.  Say that again, Your Honor.

THE COURT:  You go on to say that "She should be gangbanged and fucking killed.  Do this world a favor.  I'll be watching.  Trust me.  I'll be watching."

Tell me, how would you like to explain those texts.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

25

MR. DEBERARDINIS: Those texts did not come from me and those were the texts that were just presented into the Dedham Court which she said under oath when Judge Pomarole asked her, do you know if these texts came from Stephen, her response was no. He asked her, how do you know these texts came from Stephen. Her response was, Your Honor, I assume. The violation of probation, which is the same violation, Your Honor, that's going on in this court right now was thrown out. It was denied.

Your Honor, it -- in her affidavit she's saying that I went to the house with a gun because I thought my daughter was talking to older guys. Why would any father in their right mind sit there and send messages like that about their own child? Prior -- days prior to her getting this restraining order my daughter spent a few days with me in Mansfield camping, went home and told her mother that I bought her alcohol. I don't drink myself, Your Honor. I sure than heck not going to buy my ██ year-old child alcohol regardless of what -- anything, nothing at all.

She's lied on police. Now she said that she didn't file the police report that I just showed you with them saying that I was at Dunkin' Donuts. If there's another ████████ and another ████████

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

███████████ in this world, she filed that police report, Your Honor. Her name is on that police report. I got a call from the officer that night that she was in the police station stating this.

THE COURT:  Uh-huh.

MR. DEBERARDINIS:  She lives in Middleborough.  I have not had any contact with her. She said it.  We broke up three years ago.  She found out I have a new girlfriend. My new girlfriend is pregnant.  That's what set Ms. ████ off.

MS. ████  Just for the record we were sleeping

sleeping --

THE COURT:  Okay.

MS. ████  -- together this whole relationship.

THE COURT:  Hold on for one second.  Is -- ████ is in the courtroom?

MS. ████  Yes.

THE COURT:  All right.  And now this restraining order is not filed on behalf of ████ is that right?

MS. ████  It's on behalf of both of us.

THE COURT:  Jen, I just see ████ name.

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

27

THE CLERK:  Yeah.

THE COURT:  Oh, she -- okay.  All right.

MR. DEBERARDINIS:  You know, and I understand --

THE COURT:  Hold on one second.

MR. DEBERARDINIS:  Sure.

THE COURT:  ████████ is here?

MS. ██████  Yes.

THE COURT:  Ms. -- ████████ would you come on up?

THE COURT OFFICER:  Right this way.

MS. ████████  ████████

(Pause)

THE COURT:  Good morning, ████████ I know this is very difficult for you. But I just want to ask, I'm considering extending this restraining order.  What would you like to tell me?

MS. ████████:  My whole life has really (indiscernible - not utilizing microphone) I was out of the picture.  I mean --

THE COURT:  All right.  But I'm particularly interested in the incident with the gun.

MS. ████████:  He did come into the house with a gun and my friends were there, and I'm too scared of him to call the cops because I don't know

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

what he's capable of. I mean, he's had me in corners screaming at me, threatening to hit me with his hand up to me. And I just -- I'm scared of him. I don't know what to do. Every time I hear a noise from a truck I jump because I don't know if it's him or not.

THE COURT: All right. Now since this restraining order first issued about a year ago, is that right?

MS. ████  Yes.

THE COURT: In the past year have you had any contact, has he had any contact with you?

MS. ████████:  I did get text messages from him one night asking how my sexy fat ass is doing, asking how my tight pussy is, saying there's enough for me and my mother, for me and him and my mom can all get together.

THE COURT: All right. Thank you.

Mr. Deberardinis, anything you would like to tell me before I make my decision?

MR. DEBERARDINIS: I think I said everything that I needed to say, Your Honor.

THE COURT: Okay.

All right. I am going to extend this restraining order.

Ms. ████  and  ████  I do believe what you

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

told me. And the order will be extended.

Jen, I don't --

(Pause)

THE COURT: I will ask this, would you like a lifetime restraining order?

MS. ███████ Yes.

MS. ████████████: Yes, please.

THE COURT: Okay. I'm going to -- I'm certainly going to make that restraining order a lifetime restraining order, Mr. Deberardinis.

So I just want to make clear what my findings are. I believe what your -- Ms. ██████ and your daughter have told me. I don't accept much of what you told me. In terms of what those texts say, I credit Ms. ██████ statement that they came from you. And those texts are the basis of my decision. Anybody -- you made a point. What father in his right mind would send texts like that? And I actually believe that. No father in his right mind would send texts like that, and yet you did.

And the wages for that will be a lifetime restraining order. You are to have no contact with Ms. ██████ or with your daughter until she reaches adulthood. At that point, if she wants to continue the restraining order, it would be continued.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

Case: 22-1123 Case: 22-1123 Document: 00127870779 Document: 2964 Date Filed: 05/02/2023 Page: 30 of 47 Entry ID: 6492869

30

When I say no contact, I mean no contact.

MR. DEBERARDINIS: Okay.

THE COURT: I mean, phone, in person, text, Facebook, and you're not to enlist anybody to have any contact with them on your behalf. That includes any family member or friend. You're to stay a hundred yards away from them at all times, from now until the end.

MR. DEBERARDINIS: Okay. And now the address that she has listed which she no longer lives there, can that address be dropped? I mean, it's interfere -- I mean, they're saying no. They no longer live there. The house was sold. They don't even live in Hyde Park anymore, Your Honor.

THE COURT: I --

MR. DEBERARDINIS: And they're going to keep --

THE COURT: The address where they're living at right now is secret; is that right? It's been impounded?

MS. ███████ Yes. Yes.

THE COURT: What is the Hyde Park address?

MS. ███████ ████████████.

THE COURT: All right. Is that an address that you're not using anymore?

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

MS. ⬛ We don't use it.  My house was sold, my old house was sold.

THE COURT:  Okay.

MS. DEBERARDINIS:  But in Dedham, ⬛ (Indiscernible - not utilizing microphone) Street --

MS. ⬛ I go there on the weekends.

MS. DEBERARDINIS:  -- I am there on the weekends.

THE COURT:  All right.  No.  No.  It would just be the Hyde Park address.

MS. ⬛ Okay.

MS. DEBERARDINIS:  Yeah.

MR. DEBERARDINIS:  And I also gave the police report with the probation thing.  Can I get that back as well?

THE COURT:  You can.

(Pause)

THE COURT:  The work address that's used is ⬛, that --

MS. ⬛ Yeah.  That's my work address.

THE COURT:  All right.  And that will be continued.

MS. ⬛ Okay.  (Indiscernible - not utilizing microphone) ⬛ in Dedham.

THE COURT:  All right.

GOVERNMENT EXHIBIT

Exhibit 5

21-CR-10292-ADB

MR. DEBERARDINIS:  Your Honor, I work right across the street.  I mean, we're getting ridiculous with this now. My probation --

THE COURT:  No. Mr. --

MR. DEBERARDINIS:  --  is right there.

THE COURT:  Mr. Deberardinis, we're not getting ridiculous with this.  All right.  You're going to stay a hundred yards away from them.  If you're working at a street across from the ███████████ ███████████ --

MR. DEBERARDINIS:  Yes, and my probation department is right there, Your Honor.  I mean --

MS. ████  She's only there on the weekends.

MS. DEBERARDINIS:  I'm only there on the weekends, Your Honor.

MS. ████  She's not there during the week.

MR. DEBERARDINIS:  I'm not --

THE COURT:  All right.  While she's working, Mr. Deberardinis, you're to stay a hundred yards away from her.

MR. DEBERARDINIS:  Fine.

THE COURT:  Okay.  And a violation of this order is a criminal offense.

MR. DEBERARDINIS:  I understand, Your Honor.

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

THE COURT: You should. And --

MR. DEBERARDINIS: I do.

THE COURT: -- it subjects you to two and a half years in the House of Corrections.

MR. DEBERARDINIS: That's fine, Your Honor. Thank you.

THE COURT: Excuse me.

(Pause)

MR. DEBERARDINIS: And, Your Honor, that restraining order is going to work both ways, correct, which means she can't keep driving by my place -- my street that I live on?

THE COURT: The order is directed at you.

MR. DEBERARDINIS: So it's -- so --

THE COURT: It's not directed at them.

MR. DEBERARDINIS: Okay. So when my daughter is hanging down at the end of my street that I live on, a dead end street, and I go to leave my street I've got to worry if my daughter's there or not --

MS. ███████ She doesn't --

MR. DEBERARDINIS: -- and violate the --

MS. ███████ -- hang out there.

MS. DEBERARDINIS: Your Honor --

MS. ███████ She doesn't hang out.

MS. DEBERARDINIS: -- I don't --

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

34

THE COURT:  All right.

MR. DEBERARDINIS:  Can I just go to the clerk's office and pick the order up when you're done? I think I'm all set in here now.

THE COURT:  No.  Just hold on one second. We're going to announce the findings of the Court.

(Pause)

THE COURT:  Also, I don't know if you have a weapon or not, or if you're licensed to carry a weapon or not.  You have to turn in any weapon that you have.

MR. DEBERARDINIS:  I don't have any weapons, Your Honor.  I haven't had my gun license in --

THE COURT:  No need to --

MR. DEBERARDINIS:  -- 20 some odd years.

THE COURT:  Okay.  No need to give me any information I don't need.  I just want to make sure that you're aware of the terms of this order.

MR. DEBERARDINIS:  I am aware.

(Pause)

THE CLERK:  Okay.  After hearing, this order is extended permanently.  Ms. ███ (indiscernible - not utilizing microphone) seat in the courtroom and we'll get you both copies.

(Proceedings concluded at 10:37 a.m.)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

C E R T I F I C A T I O N

I, SHERRI L. BREACH, DO HEREBY CERTIFY THAT

THE

FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT

FROM THE RECORD

OF THE COURT PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

I, SHERRI L. BREACH, FURTHER CERTIFY THAT THE FOREGOING

IS

IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF THE

TRIAL

COURT DIRECTIVE ON TRANSCRIPT FORMAT.

I, SHERRI L. BREACH, FURTHER CERTIFY THAT I NEITHER AM

COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE

PARTIES

TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND

FURTHER

THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN

THE

OUTCOME OF THE ACTION.

_____                08/12/20

SHERRI L. BREACH                          DATE

HUNT REPORTING COMPANY

12 CRAIN HIGHWAY, #2

GLEN BURNIE, MD 21061

410-766-4868

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

36

The Commonwealth of Massachusetts OFFICE OF COURT MANAGEMENT, Transcription Services

AUDIO ASSESSMENT FORM

For court transcribers:  Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.

TODAY'S DATE:___08/12/20___TRANSCRIBER NAME:___Sherri L. Breach_____

CASENAME:_▮▮▮▮▮▮▮▮▮ v Stephen Mario Deberardinis

DOCKET NUMBER: _1606RO000518

RECORDING DATE:__10/11/17_____TRANSCRIPT

VOLUME:_1_____OF__1____

TYPE:  FTR QUALITY:  EXCELLENT  GOOD FAIR POOR

ISSUES (include time stamp): background noise time stamp:___a little bit low audio  low audio at sidebar simultaneous speech  speaking away from microphone  _10:01:33; 10:04:19; 10:05:04; 10:05:53; 10:13:21; 10:13:26; 10:13:32; 10:20:57; 10:28:06; 10:31:57; 10L33:46; 10:36:54____ other: _not speaking clearly__  time stamp:_____

COMMENTS: Overall the audio was good.  The

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

parties utilized the microphones and spoke clearly.

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

INDEX

38

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

INDEX                                                        39



HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB



HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT EXHIBIT

**Exhibit 5**

21-CR-10292-ADB



GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

INDEX                                                                                                    42



HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

**GOVERNMENT EXHIBIT**

**Exhibit 5**

21-CR-10292-ADB



HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB



HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB

GOVERNMENT
EXHIBIT

Exhibit 5

21-CR-10292-ADB



GOVERNMENT
EXHIBIT

**Exhibit 5**

21-CR-10292-ADB

*United States v. Stephen M. DeBerardinis*
Case No. 21-CR-10292






GOVERNMENT
EXHIBIT

**Exhibit 6**

21-CR-10292-ADB

230



**Photo ID**
  990626124747837

**Posted** 2021-01-14 18:01:22 UTC
**Status** $25.00 Small to 3XL.
**Mobile** true
  **Id** 1032322207244895

231



**GOVERNMENT EXHIBIT**

**Exhibit 6**
21-CR-10292-ADB



Hey, there! Log in / Regi ter

Today's Refinance Rates

15 YEAR FIXED | $400K

**1.75%** **2.03%**
Rate        APR

Select Loan Amount

$

**$400,000**

Neighborhoods | Crime | Covid-19 | The T | Development | Fire | Boston English | Boston Answers |

  

*Home* » *Boston* » *Hyde Park*

## Feds arrest local right-winger on charges he threatened to kill and chop up a mixed-race couple

By ▇▇▇▇ on *Wed, 09/29/2021 - 12:52pm*



*Stephen DeBerardinis being pulled away from protesters he was trying to punch at West Roxbury rally earlier this month.*

GOVERNMENT
EXHIBIT

**Exhibit 8**

21-CR-10292-ADB

1/16

A federal grand jury has indicted a man who lives on the Hyde Park/Dedham line on charges of sending racially offensive Facebook messages to a White woman who'd just announced her engagement to a Black man and of threatening the couple with dismemberment.

Stephen DeBerardinis, 45, was arrested today on one count of transmitting in interstate commerce threats to injure a person, one count of tampering with a witness and victim by intimidation, threats, and corrupt persuasion and one count of tampering with a witness and victim by harassment. He faces up to 28 years in prison if found guilty on the three charges. He is scheduled for arraignment at 3 p.m. on Monday.

DeBerardinis, who lives in his mother's house, was a prominent participant in a "Back the Blue" rally in front of the West Roxbury police station earlier this month, at which police had to pull him out of a scrum with protesters after he tried to punch some of them. He responded to Universal Hub coverage of the event, which included two photos of him, with e-mail threats to "COME FOR YOU HARD HAHAHAHAHAHA."

According to the indictment, filed yesterday in US District Court in Boston, DeBerardinis felt compelled on Jan. 6 to use Facebook messenger to send racial epithets to a White woman who had posted photos on Facebook of her and her newly engaged Black fiance. The indictment says that DeBerardinis did not know either the woman or the man, but saw the photos because he was Facebook friends with some of the woman's friends.

The woman showed the messages to her fiance, who used her Facebook Messenger account to try to call DeBerardinis. He did not answer the call, but replied a minute later in text: DON'T FUCKING CALL ME!!!!! YOUR WHITE TRASH AND A DIRTY COCK SUCKER."

Not long after, he allegedly sent the woman another obscenity-laden message, to which she replied, "Don't worry, I'm reporting you to the cops." According to the indictment, he replied ith:

233



The couple told him to leave him alone and that repeated that they were reporting him to police. DeBerardinis continued to message them:

*"Read up more on me lol ... you will see how me and my crew burn niggers alive,"* *followed by "And white whores like you well.... get rape and killed THAN we cut off body parts and mail them to your family lol."*

*Innocent, etc.*

[Complete indictment](#) (4.6M PDF).

**Neighborhoods:** Hyde Park    Dedham

**Topics:** Crime

FACEBOOK        TWITTER        EMAIL        PRINT

Ad:                                                                                         Reply



**GOVERNMENT EXHIBIT**

**Exhibit 8**

21-CR-10292-ADB

234

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                              )
      v.                     )        CRIMINAL NO. 21-10292-ADB
                              )
STEPHEN DEBERARDINIS     )

## **DEFENDANT'S APPEAL OF ORDER OF DETENTION**

Defendant Stephen DeBerardinis, by his attorney, hereby appeals the Order of Detention

entered by Judge Bowler on December 22, 2021, pursuant to 18 U.S.C. § 3145.   Transcripts of

the prior proceedings will be ordered.

Defendant requests an opportunity to be heard at the Court's convenience after the

transcript is received.

                             STEPHEN DEBERARDINIS
                             By his attorney,

                             */s/ Jessica P. Thrall*
                             Jessica P. Thrall #670412
                             Federal Defender Office
                             51 Sleeper Street, 5th Floor
                             Boston, MA 02210
                             617 – 223- 8061

235

CERTIFICATE OF SERVICE

I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 31, 2021.

/s/ Jessica P. Thrall
Jessica P. Thrall

236

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) Docket No.:  21-cr-10292-ADB | |
| | ) | |
| | ) | |
| STEPHEN DEBERARDINIS | ) | |

## **NOTICE OF APPEAL**

Notice is hereby given that the defendant, Stephen DeBerardinis, appeals to the United

States Court of Appeals for the First Circuit from the Memorandum and Order on the

Defendant's Appeal of Detention Order (DE #51) entered on February 17, 2022.

Respectfully submitted,
STEPHEN DEBERARDINIS
By his Attorney,

*/s/ Jessica Thrall*
Jessica Thrall,
 B.B.O.: 670412
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing (NEF) on February
18, 2022.

*/s/ Jessica Thrall*
Jessica Thrall

237

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served upon all parties as indicated on the Notice of Electronic Filing (NEF) on April 30, 2022.

*/s/ Zainabu Rumala*
Zainabu Rumala
Assistant Federal Public Defender
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
Identification No.: 1177048
